FILED
2024 Jul-22  AM 09:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **DON BUTLER; DAVID GLIDEWELL; NATIONAL RIFLE ASSOCIATION OF AMERICA,** | ) ) ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **MERRICK GARLAND, in his official capacity as Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,** | ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| **Defendants.** | ) |

Civil Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.     Plaintiffs Don Butler, David Glidewell, and the National Rifle Association of America bring this lawsuit to challenge the administrative and constitutional legality of—and to seek immediate and permanent relief from—the Executive Branch's Final Rule unlawfully redefining when a private citizen is "engaged in the business" as a dealer in firearms. *See* Definition of "Engaged in the Business" as a Dealer in Firearms, 89 Fed. Reg. 28968 (Apr. 19, 2024) (the "Final Rule").

2.     The Constitution vests "[a]ll legislative powers" exclusively in Congress, U.S. Const. Art. I, § 1, and it vests "[t]he Executive power" in the President, whom it directs to "take Care that the Law be faithfully executed," *id.* Art. II, §§ 1, 3. Under this system of government, the Executive Branch cannot step into Congress's shoes and write laws for our nation. Nor can it,

by regulation, rewrite unambiguous statutory enactments under the guises of administration, implementation, and enforcement. It instead must operate within the statutory text's existing limits.

3.     Congress has, by legislative enactment, regulated firearms dealers who are "engaged in the business" of selling firearms since 1938. The phrase "engaged in the business" remained undefined until 1986 when Congress amended the Gun Control Act of 1968 to ensure that law-abiding citizens could engage in private, unregulated transactions involving firearms without fear of prosecution. Although Congress slightly broadened the definition of "engaged in the business" in 2022, Congress's clear legislative will has always been—and still is—that private buyers and sellers of firearms fall outside the scope of federal statutory restrictions on dealers.

4.     The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") violated our nation's fundamental principles of separation of powers, Congress's manifest legislative will, and other provisions of the Constitution by issuing the "engaged in the business" Final Rule. Claiming merely to "implement[]" legislation and "provide clarity," the Final Rule eviscerates congressional and constitutional protections for private firearms transactions. 89 Fed. Reg. at 28968. The Final Rule redefines when a citizen is "engaged in the business" as a dealer and, by doing so, both violates unambiguous statutory limitations and drastically expands the scope of federal criminal liability. It even creates vague presumptions of unlawfulness that doubtlessly will infect administrative, civil, and criminal proceedings. The Executive Branch's circumvention of congressional and constitutional protections by executive fiat will make felons out of countless thousands of law-abiding American citizens. The Final Rule cannot be tolerated: it should be set aside and permanently enjoined.

5.     The "Engaged in the Business" Final Rule is the ATF's latest attempt to rewrite unambiguous congressional enactments governing firearms under the guises of administration,

implementation, and enforcement. *See, e.g.*, *Garland v. Cargill*, 602 U.S. 406, 415 (2024) (holding that the ATF "exceeded its statutory authority by issuing a Rule that classifies bump stocks as machineguns" under the National Firearms Act); *VanDerStok v. Garland*, 86 F.4th 179, 187–88 (5th Cir. 2023) (holding that the ATF exceeded its statutory authority by redefining "firearm" and "frame or receiver" under the Gun Control Act), *cert. granted* (U.S. Apr. 22, 2024) (No. 23-852). But as in those cases, "the statutory text is clear," and courts "must follow it." *Cargill*, 602 U.S. at 429 (Alito, J., concurring). "There is a simple remedy": "Congress can amend the law." *Id.*

6.      The Final Rule has already been held to violate the Administrative Procedure Act. The United States District Court for the Northern District of Texas recently held that the ATF exceeded its statutory authority by promulgating the Final Rule and preliminarily enjoined its application against certain states, membership organizations, and an individual. *See Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 2:24-CV-089-Z, 2024 WL 2967340 (N.D. Tex. June 11, 2024), *appeal docketed*, No. 24-10612 (5th Cir. July 9, 2024).

7.      Plaintiffs respectfully request that this Court issue: (1) a temporary restraining order and/or preliminary injunction barring Defendants from enforcing the Final Rule against Plaintiffs, their members, and those with whom Plaintiffs and their members engage in protected private transactions; (2) an order under the Administrative Procedure Act holding unlawful and setting aside the Final Rule; and (3) a declaratory judgment and permanent injunction barring Defendants from enforcing the Final Rule.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction under 5 U.S.C. § 702 and 28 U.S.C. § 1331.

9.      This Court has authority to grant the remedies Plaintiffs seek under 5 U.S.C. § 706, 28 U.S.C. §§ 2201–02, and its equitable powers.

10.     Venue is proper in this district under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1)(B)–(C) because at least one plaintiff resides in this district, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, and a substantial part of the property that is the subject of the action is situated in this district.

**PARTIES**

11.     Plaintiff Don Butler is a firearms owner and a member of the National Rifle Association. Mr. Butler resides in Talladega, Alabama, within this district.

12.     Mr. Butler, who is eligible to purchase firearms under state and federal law, is a firearms hobbyist and possesses a large collection of firearms. Over the years, Mr. Butler has occasionally, and as finances allowed, purchased, traded, and sold various firearms through unlicensed private sales to enhance his personal collection.

13.     One of Mr. Butler's principal motivations to enhance his collection is and has been personal protection. Firearms technology rapidly changes, resulting in new firearms models frequently coming to market. Mr. Butler has often changed the type or model of firearms that he carries for personal protection and that he keeps for self-defense purposes. To offset the costs of new firearms purchased for self-defense purposes, Mr. Butler will occasionally sell older firearms from his collection that have become outdated due to changes in technology.

14.     Mr. Butler has never held a federal firearms license and has never been "engaged in the business" of dealing firearms.

15.     Mr. Butler wishes to continue to lawfully purchase, trade, and sell firearms through unlicensed private sales to enhance his personal collection, and he would do so but for the "Engaged in the Business" Final Rule. Mr. Butler reasonably fears that the continued enhancement of his personal firearms collection through private sales, which he has lawfully done for decades,

4

would be presumptively felonious under the Final Rule and would subject him to a substantial threat of enforcement by the ATF and corresponding civil, regulatory, and even criminal penalties.

16. Mr. Butler is aware of the ATF's public announcements of its intention to enforce the Final Rule.

17. Mr. Butler is also aware of past ATF enforcement against individuals for being "engaged in the business" without a license.

18. Plaintiff David Glidewell is a firearms owner and a member of the National Rifle Association. Mr. Glidewell resides in Ragland, Alabama, within this district.

19. Mr. Glidewell, who is eligible to purchase firearms under state and federal law, is a firearms hobbyist and possesses a large collection of firearms. Over the years, Mr. Glidewell has occasionally, and as finances allowed, purchased, traded, and sold various firearms through private sales to enhance his personal collection.

20. One of Mr. Glidewell's principal motivations to enhance his collection is and has been personal protection. Firearms technology rapidly changes, resulting in new firearms models frequently coming to market. Mr. Glidewell has often changed the type or model of firearms that he carries for personal protection and that he keeps for self-defense purposes. To offset the costs of new firearms purchased for self-defense purposes, Mr. Glidewell will occasionally sell older firearms from his collection that have become outdated due to changes in technology.

21. Mr. Glidewell has never held a federal firearms license and has never been "engaged in the business" of dealing firearms.

22. Mr. Glidewell wishes to continue to lawfully purchase, trade, and sell firearms through private sales to enhance his personal collection, and he would do so but for the "Engaged in the Business" Final Rule. Mr. Glidewell reasonably fears that the continued enhancement of his

5

personal firearms collection through private sales, which he has lawfully done for decades, would be presumptively felonious under the Final Rule and would subject him to a substantial threat of enforcement by the ATF and corresponding civil, regulatory, and even criminal penalties.

23.    Mr. Glidewell is aware of the ATF's public announcements of its intention to enforce the Final Rule.

24.    Mr. Glidewell is also aware of past ATF enforcement against individuals for being "engaged in the business" without a license.

25.    Plaintiff National Rifle Association of America ("NRA") is a nonprofit corporation organized under the laws of the State of New York with its principal place of business in Fairfax, Virginia. The NRA is America's oldest civil rights organization and is widely recognized as the largest and foremost defender of Second Amendment rights. The NRA was founded in 1871 by Union generals who, based on their experiences in the Civil War, sought to promote firearms marksmanship and expertise among the citizenry. Today the NRA is a traditional membership association and America's leading provider of gun-safety and marksmanship education for civilians and law-enforcement alike.

26.    The NRA has roughly four million members across the nation, including Mr. Butler, Mr. Glidewell, and thousands more in the State of Alabama, including many who reside in this district. These millions of law-abiding members rely on the NRA to protect their fundamental rights, including through litigation on behalf of its members. And safeguarding members' rights and interests regarding firearms aligns with the mission of the NRA: "[t]o protect and defend the Constitution of the United States."

27.     Many of the NRA's law-abiding members wish to engage in private, unregulated transactions involving firearms that are legal under congressional enactment but prohibited by the Final Rule.

28.     Those members will be impacted by the Final Rule in substantially the same way as Mr. Butler and Mr. Glidewell. For example, NRA members wish to engage in occasional sales, exchanges, and/or purchases of firearms to enhance their personal collections that they accumulate for lawful purposes including personal protection and self-defense, and also to sell all or part of their personal collections. But for fear of being subjected to administrative, civil, and criminal enforcement proceedings, those members would continue to engage in such conduct protected by the Constitution and Congress but prohibited by the Final Rule.

29.     Since the ATF announced the Final Rule in 2023, a primary and overwhelming concern of the NRA's non-FFL members has been their continued ability to engage in conduct that is legal under the BSCA and integral to the continued maintenance of their collections—that is, collecting firearms for personal protection and self-defense and disposing of firearms to make room for new ones—without incurring unrecoverable compliance costs or living in constant fear of regulatory enforcement or criminal prosecution.

30.     The NRA brings this action on behalf its members whose constitutional and statutory rights will be significantly infringed by, among other things, the immediate threat of administrative, civil, and criminal enforcement proceedings in the absence of immediate and permanent relief from the Final Rule. The NRA's members face irreparable harm arising from the Final Rule.

31.     Defendant Merrick Garland is the Attorney General of the United States and head of the United States Department of Justice, which oversees the ATF. He is sued in his official capacity.

32.     Defendant United States Department of Justice ("DOJ") is an executive agency of the United States that administers and enforces federal firearms laws, including the Gun Control Act of 1968. *See* 18 U.S.C. § 926(a). DOJ is headquartered at 950 Pennsylvania Avenue N.W., Washington, D.C. 20530.

33.     Defendant Steven Dettelbach is the Director of the ATF and is responsible for overseeing the agency's promulgation of the Final Rule challenged herein. He is sued in his official capacity.

34.     Defendant ATF is an executive agency and component of the DOJ. The ATF is delegated authority to administer and enforce federal firearms laws pursuant to 28 U.S.C. § 599A(b)(1), (c)(1); 28 C.F.R. § 0.130(a)(1)–(2). The ATF is headquartered at 99 New York Avenue N.E., Washington, D.C. 20226.

## STATEMENT OF FACTS

### I.   STATUTORY AND REGULATORY HISTORY

#### A.   The Federal Firearms Act of 1938

35.     Congress began to regulate firearms dealers shortly after the Supreme Court began to take an expansive view of Congress's powers over commerce. *See, e.g.*, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937) (holding that Congress can regulate intrastate activities that "have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions").

36.     In 1938, Congress enacted the Federal Firearms Act, which made it unlawful for any "dealer" lacking "a license issued under the provisions of this Act, to transport, ship, or receive

any firearm or ammunition in interstate or foreign commerce." Federal Firearms Act, Ch. 850, Pub. L. 75-785, § 2(a), 52 Stat. 1250, 1250 (1938) (repealed 1968) ("FFA").

37. The FFA defined "dealer" as including "any person engaged in the business of selling firearms . . . at wholesale or retail." *Id.* § 1(5). But Congress did not define what it meant to be "engaged in the business of selling firearms."

**B.     Repeal of the FFA and enactment of the Gun Control Act of 1968**

38. Congress repealed the FFA in 1968 shortly before incorporating the FFA's definition of a firearms dealer into new legislation. *See* Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. 90-351, tit. IV, § 906, 82 Stat. 197, 234 (repealing the FFA). In repealing the FFA, Congress expressed its concern "that the existing licensing system under the Federal Firearms Act does not provide adequate license fees or proper standards for the granting or denial of licenses, and that this has led to licenses being issued to persons not reasonably entitled thereto, thus distorting the purposes of the licensing system." *Id.* § 901(9), 82 Stat. at 226.

39. A few months later, Congress passed the Gun Control Act of 1968, which imposed strict requirements on firearms dealers, manufacturers, and importers. *See* Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213 ("GCA"). The GCA made it unlawful "to engage in the business of . . . dealing in firearms," 82 Stat. at 1217 (codified at 18 U.S.C. § 922(a)), and imposed strict rules for obtaining "a license to do so," *id.* at 1221 (codified at 18 U.S.C. § 923).

40. The GCA—largely adopting the same definition as in the FFA—defined "dealer" as "(A) any person engaged in the business of selling firearms or ammunition at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker. The term 'licensed dealer' means any dealer who is licensed under the provisions of this chapter." 82 Stat.

at 1216 (codified at 18 U.S.C. § 921(a)(11)). The ATF promulgated a regulation that incorporated the same definition of "dealer" as the GCA. *See, e.g.*, 33 Fed. Reg. 18555, 18558 (Dec. 14, 1968). Neither the GCA nor any ATF regulation defined the phrase "engaged in the business."

41.     Today, the GCA imposes strict requirements on firearms dealers related to licensing, record-keeping, and background checks. *See* 18 U.S.C. §§ 922(b)(5) and (t), 923(a) and (g)(1)(A). Under the GCA, a person who willfully engages in the business of dealing in firearms without a federal firearms license faces five years of imprisonment, a fine of up to $250,000, or both. *See* 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D), 3571(b)(3). The GCA also authorizes administrative and civil forfeiture of firearms involved in those violations. *Id.* § 924(d)(1).

**C.     The ATF's 1979 Notice of Proposed Rulemaking**

42.     In 1979, the ATF published an Advance Notice of Proposed Rulemaking that sought "to develop a workable, commonly understood definition of ['engaged in the business']." *See* Definition of the Phrase "Engaged in the Business," 44 Fed. Reg. 75186, 75186–87 (Dec. 19, 1979). The Notice acknowledged that "courts have continually found that the current situation [*i.e.*, use of the undefined phrase 'engaged in the business'] is adequate for enforcement purposes." *Id.* at 75187. The ATF also acknowledged that "[t]he phrase clearly connotes an element of continual or habitual practice" and cited some varying federal judicial interpretations. *Id.* at 75186.

43.     As noted in the Final Rule challenged here, the ATF received 844 comments but ultimately "decided not to proceed further with rulemaking at that time." 89 Fed. Reg. at 28970.

**D.     The Firearms Owners' Protection Act**

44.     In 1986, Congress enacted the Firearms Owners' Protection Act "to correct existing firearms statutes and enforcement policies" and "to reaffirm" that Congress had no intention to unduly burden "the acquisition, possession, or use of firearms" for, among other things, "personal

protection, or any other lawful activity." Firearms Owners' Protection Act, Pub. L. 99-308, § 1(b), 100 Stat. 449, 449 (1986) ("FOPA").

45.     The FOPA modified the GCA by adding a statutory definition of "engaged in the business" as applied to dealers: "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." *Id.* § 101, 100 Stat. at 450 (codified at 18 U.S.C. § 921(a)(21)(C)).

46.     The FOPA also statutorily defined "with the principal objective of livelihood and profit" to "mean[] that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection." *Id.* (codified at 18 U.S.C. § 921(a)(22)). A few months later, Congress amended this definition by inserting the following at the end of Section 921(a)(22):

> "*Provided,* That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism. For purposes of this paragraph, the term 'terrorism' means activity, directed against United States persons, which—
>
> > (A) is committed by an individual who is not a national or permanent resident alien of the United States;
> >
> > (B) involves violent acts or acts dangerous to human life which would be a criminal violation if committed within the jurisdiction of the United States; and
> >
> > (C) is intended—
> >
> > > (i) to intimidate or coerce a civilian population;
> > >
> > > (ii) to influence the policy of a government by intimidation or coercion; or

11

(iii) to affect the conduct of a government by assassination or kidnapping

47.     Prior to the FOPA's enactment, federal courts had interpreted "engaged in the business" in one of two ways. A majority of circuits to address the issue defined the phrase to require "the purposes of livelihood and profit."[1] A minority permitted conviction on lesser proof, including in the absence of a profit motive or based on a single transaction.[2] Congress's enactment of the FOPA manifested congressional codification of the majority rule and outright rejection of the minority position.

48.     The ATF again followed Congress's express intent and adopted the FOPA's definitions of "engaged in the business" and "principal objective of livelihood and profit." Commerce in Firearms and Ammunition, 53 Fed. Reg. 10480, 10491 (Mar. 31, 1988) (codified at 27 C.F.R. § 178.2). In doing so, the ATF expressly declined to "list examples illustrating when a license is required" because "the definition adequately addresses this concern by expressly

---

[1] *See United States v. Gross*, 451 F.2d 1355, 1357 (7th Cir. 1971); *United States v. King*, 532 F.2d 505, 510 (5th Cir. 1976) ("'Business' is commonly understood to mean an activity engaging some of one's time, attention and effort and performed in expectation of profit or other benefit; 'Dealing in firearms' is commonly understood as selling and/or trading in firearms, as well as acquiring firearms for sale by purchase and/or trade."); *United States v. Huffman*, 518 F.2d 80, 81 (4th Cir. 1975) ("a willingness to deal, a profit motive, and a greater degree of activity than occasional sales by a hobbyist"); *United States v. Williams*, 502 F.2d 581, 583 (8th Cir. 1974) ("there should be no doubt in the minds of men of common intelligence that 'dealer' means one that is engaged in any business of selling firearms and that 'business' is that which occupies the time, attention and labor of men for the purpose of livelihood or profit"); *United States v. Day*, 476 F.2d 562, 567 (6th Cir. 1973) (following *Gross*); *see also United States v. Van Buren*, 593 F.2d 125, 126 (9th Cir. 1979) ("transactions of sale, purchase or exchange of firearms are regularly entered into in expectation of profit").

[2] *United States v. Swinton*, 521 F.2d 1255, 1258 (10th Cir. 1975) (declining to follow majority, holding that conviction "does not necessitate proof that a defendant's primary business is dealing in firearms is on a profit-making basis," and affirming conviction based on a single sale); *United States v. Wilkening*, 485 F.2d 234, 235 (8th Cir. 1973) (similar).

delineating the activity requiring licensing from that of a firearms collector not subject to licensing." *Id.* at 10481.

### D.    The Bipartisan Safer Communities Act

49.    These definitions remained unchanged until 2022, when Congress modified the operative statutory text within the Bipartisan Safer Communities Act, Pub. L. 117-159, 136 Stat. 1313 (2022) ("BSCA"). The BSCA revised the definition of "engaged in the business" within 18 U.S.C. § 921(a)(22)(C) by replacing the phrase "with the principal objective of livelihood and profit" with "to predominantly earn a profit." *Id.* § 12002, 136 Stat. at 1324.

50.    To reflect this subtle change, Congress also replaced the definition of "with the principal objective of livelihood and profit" with a slightly different definition for "to predominantly earn a profit"—it changed merely the title of the provision and replaced the language "obtaining livelihood and pecuniary gain" with "obtaining pecuniary gain." *Id.*, 136 Stat. at 1325.

51.    The BSCA's only modification—for all purposes relevant to this lawsuit—was to remove reference to "livelihood." Even the ATF conceded, in the Final Rule, that this modification "constitute[s] only a modest congressional expansion of the previous FFL licensing requirements." 89 Fed. Reg. at 29009. Congress did not alter the safe-harbor provision, which expressly exempts from the scope of licensing requirements "a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." *See* 18 U.S.C. § 921(a)(21)(C).

52.    The statutory text today continues to reflect Congress's manifest intent to ensure that law-abiding citizens could engage in private, unregulated transactions involving firearms without fear of prosecution. That constitutionally and congressionally protected conduct falls outside the scope of federal restrictions applicable to dealers:

- The term "dealer" means a "person engaged in the business of selling firearms at wholesale or retail." 18 U.S.C. § 921(a)(11).

- The term "engaged in the business" for dealers means "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." *Id.* § 921(a)(21)(C).

- The term "to predominantly earn a profit" means "the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided,* That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism." *Id.* § 921(a)(22).

53.     The Final Rule challenged in this lawsuit contradicts this clear statutory text, exceeds the ATF's statutory authority, constitutes unlawful arbitrary and capricious agency action, and violates the Constitution. The Final Rule must be set aside, and its enforcement must be permanently enjoined.

## II.     THE FINAL RULE

### A.     Delegation of Statutory Authority

54.     Congress granted to the Attorney General power to "prescribe only such rules and regulations as are necessary to carry out the provisions" of the GCA. 18 U.S.C. § 926. The Attorney General then delegated authority to the ATF to administer and enforce federal firearms laws. 28 U.S.C. § 599A(b)(1), (c)(1); 28 C.F.R. § 0.130(a)(1)–(2).

### B.     Executive Branch Statements and the Rulemaking Process

55.     On March 14, 2023, following the BSCA's enactment, President Biden issued an Executive Order directing the Attorney General to "develop and implement a plan to: (i) clarify the definition of who is engaged in the business of dealing in firearms, and thus required to become Federal firearms licensees (FFLs), in order to increase compliance with the Federal background

14

check requirement for firearm sales, including by considering a rulemaking, as appropriate and consistent with applicable law; [and] (ii) prevent former FFLs whose licenses have been revoked or surrendered from continuing to engage in the business of dealing in firearms." Executive Order 14092, §§ 2, 3(a)(i)–(ii).

56.     On August 31, 2023, President Biden issued a press release claiming that his administration intended "to move as close to universal background checks as possible within existing law."[3] Just over a week later, the ATF published a Notice of Proposed Rulemaking that would do just that, in a blatant attempt to circumvent Congress's repeated rejection of bills that would broadly expand background check requirements. *Definition of "Engaged in the Business" as a Dealer in Firearms*, 88 Fed. Reg. 61993 (proposed Sept. 8, 2023) ("Proposed Rule"). The ATF claimed that the Proposed Rule sought "[t]o implement the new statutory language" of the BSCA, *id.* at 61996, and "to clarify[] the criteria for determining when a person is 'engaged in the business,'" *id.* at 62007, but it amounts to little more than legislation by executive fiat.

57.     As the NRA voiced in its public comment opposing the Proposed Rule, the ATF exploited the BSCA's "modest" changes to statutory text "to broadly redefine what it means to be 'engaged in the business' as a dealer in firearms." *See* Public Comment of the National Rifle Association on ATF's Proposed Rule 2022R-17 (Dec. 9, 2023) [link].

**C.     The Unlawful and Unconstitutional Final Rule's Core Provisions**

58.     The core provisions of the Final Rule contradict unambiguous statutory text and Congress's manifest will to protect private transactions among law-abiding individuals from the requirements of federal dealer licensing laws.

---

[3] *Fact Sheet: Biden-Harris Administration Takes Another Life-Saving Step to Keep Guns Out of Dangerous Hands*, White House (Aug. 31, 2023) [link].

59.     The ATF issued the Final Rule on April 19, 2024. 89 Fed. Reg. 28968. Like the Proposed Rule, the Final Rule purports to "implement the [BSCA's] statutory change" and "to provide additional guidance on what it means to be engaged in the business as a 'dealer.'" *Id.* at 28968, 28973. The Final Rule took effect on May 20, 2024. *Id.* at 28968.

60.     Absent immediate relief, the Final Rule threatens to make felons out of law-abiding citizens who would—but for the unlawful Final Rule—exercise their constitutionally and statutorily protected right to engage in private, non-commercial, and unregulated transactions involving firearms. But for the reasonable fear of being unlawfully subjected to administrative, civil, and criminal proceedings for violations of the GCA as "administered" by the Final Rule, Plaintiffs and their members could and would engage in conduct protected by the Constitution and federal statutory enactments but made unlawful by the Final Rule.

61.     The Final Rule will also force law-abiding citizens seeking to engage in protected conduct to obtain a federal firearms license and comply with the GCA's strict requirements regarding licensing, record-keeping, and background checks. *See* 18 U.S.C. §§ 922(b)(5) and (t), 923(a) and (g)(1)(A). At the same time, the ATF intends to **deny** license applications "on the basis that the applicant was presumed under [the Final Rule] to have willfully engaged in the business of dealing in firearms **without a license**." 89 Fed. Reg. at 28980 n.85 (emphasis added); *see also id.* at 28975 (explaining that the ATF has and will "deny licenses to persons who willfully engaged in the business of dealing in firearms without a license"). The Final Rule's Catch-22 will diminish attendance at all—and even destroy the existence of some—gun shows and clubs where law-abiding citizens engage in the protected conduct barred by the Final Rule.

### 1.     The Final Rule's Unlawful Redefinition and Added Definitions

62.     The Final Rule revises and adds definitions that are already unambiguously defined by the BSCA, in excess of the ATF's statutory authority.

16

63.    The ATF has the authority to prescribe only "such rules and regulations as are **necessary** to carry out the provisions" of the BSCA. 18 U.S.C. § 926(a) (emphasis added). And "the need to rewrite clear provisions of the statute should have alerted [the ATF] that it had taken a wrong interpretive turn." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014).

64.    As defined by Congress, the term "dealer" means a "person engaged in the business of selling firearms at wholesale or retail." 18 U.S.C. § 921(a)(11).

65.    The Final Rule amends the definition of "dealer" to mean:

Any person engaged in the business of selling firearms at wholesale or retail; any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms; or any person who is a pawnbroker. The term shall include any person who engages in such business or occupation on a part-time basis. **The term shall include such activities wherever, or through whatever medium, they are conducted, such as at a gun show or event, flea market, auction house, or gun range or club; at one's home; by mail order; over the internet (*e.g.*, online broker or auction); through the use of other electronic means (*e.g.*, text messaging service, social media raffle, or website); or at any other domestic or international public or private marketplace or premises.**

89 Fed. Reg. at 29090 (emphasis added) (amending 27 C.F.R. § 478.11 (definition of "Dealer")).

66.    As defined by Congress, the term "engaged in the business" for dealers means "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." 18 U.S.C. § 921(a)(21)(C).

67.    By amending 27 C.F.R. § 478.11 and adding § 478.13, the Final Rule changes the definition of "engaged in the business" to mean:

> A person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms. The term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of the person's personal collection of firearms. In addition, the term shall not include an auctioneer who provides only auction services on commission to assist in liquidating firearms at an estate-type auction; provided, that the auctioneer does not purchase the firearms, or take possession of the firearms for sale on consignment.

89 Fed. Reg. at 29091 (codified at 27 C.F.R. § 478.13(a)); *see also id.* at 29090 (amending 27 C.F.R. § 478.11's definition of "engaged in the business" to incorporate § 478.13).

68.    The Final Rule then adds several new definitions for several unambiguous terms that Congress left undefined.

69.    The Final Rule adds a definition for "purchase" (and derivative terms thereof) to mean "the act of obtaining a firearm in an agreed exchange for something of value." 89 Fed. Reg. at 29090 (codified at 27 C.F.R. § 478.11(7)(i)).

70.    The Final Rule adds a definition for "sale" (and derivative terms thereof) to mean "the act of disposing of a firearm in an agreed exchange for something of value, and the term 'resale' means selling a firearm, including a stolen firearm, after it was previously sold by the original manufacturer or any other person." 89 Fed. Reg. at 29090 (codified at 27 C.F.R. § 478.11(7)(ii)).

71.    The Final Rule adds a definition for "something of value" to "include[] money, credit, personal property (*e.g.*, another firearm or ammunition), a service, a controlled substance, or any other medium of exchange or valuable consideration, legal or illegal." 89 Fed. Reg. at 29090 (codified at 27 C.F.R. § 478.11(7)(iii)).

72.    The Final Rule replaces the former definition of "principal objective of livelihood and profit" with a new definition for "predominantly earn a profit":

The intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided*, that proof of profit, including the intent to profit, shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism. For purposes of this section, a person may have the intent to profit even if the person does not actually obtain the intended pecuniary gain from the sale or disposition of firearms.

89 Fed. Reg. at 29091 (codified at 27 C.F.R. § 478.13(d)(1))); *see also id.* at 29090 (amending 27 C.F.R. § 478.11 to add a definitional provision for "predominantly earn a profit" that incorporates § 478.13(d)).

73.    The Final Rule adds a definition of "personal collection (or personal collection of firearms, or personal firearms collection)" that, among other things, excludes "personal protection" and nullifies Congress's safe-harbor provision in 18 U.S.C. § 921(a)(21)(C):

*Personal collection (or personal collection of firearms, or personal firearms collection)*—(1) *General definition*. Personal firearms that a person accumulates for study, comparison, exhibition (*e.g.*, collecting curios or relics, or collecting unique firearms to exhibit at gun club events), or for a hobby (*e.g.*, noncommercial, recreational activities for personal enjoyment, such as hunting, skeet, target, or competition shooting, historical re-enactment, or noncommercial firearms safety instruction). The term shall not include any firearm purchased for the purpose of resale with the predominant intent to earn a profit (*e.g.*, primarily for a commercial purpose or financial gain, as distinguished from personal firearms a person accumulates for study, comparison, exhibition, or for a hobby, but which the person may also intend to increase in value). **In addition, the term shall not include firearms accumulated primarily for personal protection:** *Provided*, that nothing in this definition shall be construed as precluding a person from lawfully acquiring firearms for self-protection or other lawful personal use.

(2) *Personal collection of licensee*. In the case of a firearm imported, manufactured, or otherwise acquired by a licensed manufacturer, licensed importer, or licensed dealer, the term shall include only a firearm described in paragraph (1) of this definition that was—

(i) Acquired or transferred without the intent to willfully evade the restrictions placed upon licensees under 18 U.S.C. chapter 44;

(ii) Recorded by the licensee as an acquisition in the licensee's acquisition and disposition record in accordance with § 478.122(a), § 478.123(a), or § 478.125(e) (unless acquired prior to licensure and not intended for sale);

(iii) Recorded as a disposition from the licensee's business inventory to the licensee's personal collection or otherwise as a personal firearm in accordance with § 478.122(a), § 478.123(a), or § 478.125(e) (unless acquired prior to licensure and not intended for sale);

(iv) Maintained in such personal collection or otherwise as a personal firearm (whether on or off the business premises) for at least one year from the date the firearm was so transferred, in accordance with 18 U.S.C. 923(c) and 27 CFR 478.125a; and

(v) Stored separately from, and not commingled with the business inventory. When stored or displayed on the business premises, the personal collection and other personal firearms shall be appropriately identified as ''not for sale'' (*e.g.*, by attaching a tag).

89 Fed. Reg. at 29090 (codified at 27 C.F.R. § 478.11) (emphasis added).

74.    The Final Rule adds a definition for "former licensee inventory" to mean "[f]irearms that were in the business inventory of a licensee at the time the license was terminated. Such firearms differ from a personal collection and other personal firearms in that they were purchased repetitively before the license was terminated as part of a licensee's business inventory with the predominant intent to earn a profit." 89 Fed. Reg. at 29090 (codified at 27 C.F.R. § 478.11 (definition of "Former licensee inventory")).

## 2.    The Final Rule's Atextual Presumptions

75.    Without any basis in statutory text, the Final Rule creates two sets of "rebuttable" presumptions and another presumption of lawfulness based on hopelessly vague, "non-exhaustive" criteria. 89 Fed. Reg. 29091–92. These provisions trigger presumptions (1) "that a person is engaged in the business as a dealer," (2) "that a person has intent to predominantly earn a profit," or (3) that a person "shall not be presumed to be engaged in the business of dealing in firearms."

Such presumptions unlawfully shift the burden from the ATF to law-abiding citizens to prove their

innocence.

76.     First, the Final Rule lists five circumstances creating a presumption that a person is

engaged in the business as a dealer:

> In civil and administrative proceedings, a person shall be presumed to be engaged
> in the business of dealing in firearms as defined in paragraph (a) of this section,
> absent reliable evidence to the contrary, when it is shown that the person—
>
> > (1) Resells or offers for resale firearms, and also represents to potential
> > buyers or otherwise demonstrates a willingness and ability to purchase and
> > resell additional firearms (*i.e.*, to be a source of additional firearms for
> > resale);
> >
> > (2) Repetitively purchases for the purpose of resale, or repetitively resells
> > or offers for resale, firearms—
> >
> > > (i) Through straw or sham businesses, or individual straw purchasers
> > > or sellers; or
> > >
> > > (ii) That cannot lawfully be purchased, received, or possessed under
> > > Federal, State, local, or Tribal law, including:
> > >
> > > > (A) Stolen firearms (*e.g.*, 18 U.S.C. 922(j));
> > > >
> > > > (B) Firearms with the licensee's serial number removed,
> > > > obliterated, or altered, or not identified as required by law
> > > > (*e.g.*, 18 U.S.C. 922(k) or 26 U.S.C. 5861(i));
> > > >
> > > > (C) Firearms imported in violation of law (*e.g.*, 18 U.S.C.
> > > > 922(l), 22 U.S.C. 2778, or 26 U.S.C. 5844, 5861(k)); or
> > > >
> > > > (D) Machineguns or other weapons defined as firearms
> > > > under 26 U.S.C. 5845(b) that cannot lawfully be possessed
> > > > (*e.g.*, 18 U.S.C. 922(o); 26 U.S.C. 5861(d));
> >
> > (3) Repetitively resells or offers for resale firearms—
> >
> > > (i) Within 30 days after the person purchased the firearms; or

(ii) Within one year after the person purchased the firearms if they are—

    (A) New, or like new in their original packaging; or

    (B) The same make and model, or variants thereof;

(4) As a former licensee (or responsible person acting on behalf of the former licensee), resells or offers for resale to a person (other than a licensee in accordance with § 478.57 or § 478.78) firearms that were in the business inventory of the former licensee at the time the license was terminated (*i.e.*, license revocation, denial of license renewal, license expiration, or surrender of license), whether or not such firearms were transferred to a responsible person of the former licensee after the license was terminated in accordance with § 478.57(b)(2) or § 478.78(b)(2); or

(5) As a former licensee (or responsible person acting on behalf of the former licensee), resells or offers for resale firearms that were transferred to the licensee's personal collection or otherwise as personal firearms in accordance with 18 U.S.C. 923(c) and 27 CFR 478.125a(a) prior to the time the license was terminated, unless:

    (i) The firearms were received and transferred without any intent to willfully evade the restrictions placed on licensees by 18 U.S.C. chapter 44; and

    (ii) One year has passed from the date of transfer to the licensee's personal collection or otherwise as personal firearms.

89 Fed. Reg. 29091 (codified at 27 C.F.R. § 478.13(c)).

    77.    Second, the Final Rule lists seven circumstances creating a presumption that a person has intent to predominantly earn a profit:

In civil and administrative proceedings, a person shall be presumed to have the intent to predominantly earn a profit through the repetitive purchase and resale of firearms as defined in paragraph (d)(1) of this section, absent reliable evidence to the contrary, when it is shown that the person—

    (i) Repetitively or continuously advertises, markets, or otherwise promotes a firearms business (e.g., advertises or posts firearms for resale, including through the internet or other digital means, establishes a website to offer

their firearms for resale, makes available business cards, or tags firearms with sales prices), regardless of whether the person incurs expenses or only promotes the business informally;

(ii) Repetitively or continuously purchases, rents, or otherwise exchanges (directly or indirectly) something of value to secure permanent or temporary physical space to display firearms they offer for resale, including part or all of a business premises, a table or space at a gun show, or a display case;

(iii) Makes and maintains records to document, track, or calculate profits and losses from firearms repetitively purchased for resale;

(iv) Purchases or otherwise secures merchant services as a business (e.g., credit card transaction services, digital wallet for business) through which the person intends to repetitively accept payments for firearms transactions;

(v) Formally or informally purchases, hires, or otherwise secures business security services (*e.g.*, a central station monitored security system registered to a business, or guards for security) to protect firearms assets and repetitive firearms transactions;

(vi) Formally or informally establishes a business entity, trade name, or online business account, including an account using a business name on a social media or other website, through which the person makes, or offers to make, repetitive firearms transactions; or

(vii) Secures or applies for a State or local business license to purchase for resale or to resell merchandise that includes firearms.

89 Fed. Reg. 29091–92 (codified at 27 C.F.R. § 478.13(d)(2)).

78.    The Final Rule provides that "[t]he rebuttable presumptions in paragraphs (c) and (d)(2) of this section"—that is, the presumptions of unlawfulness—"shall not apply to any criminal case, although they may be useful to courts in criminal cases, for example, when instructing juries regarding permissible inferences." 89 Fed. Reg. 29092 (codified at 27 C.F.R. § 478.13(h)). This provision self-evidently represents the ATF's half-hearted attempt to avoid "[t]he presumption of innocence," which is a "basic component of a fair trial under our system of government." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). The ATF then immediately backtracks by inviting courts

to use these presumptions in the criminal prosecution of many thousands of law-abiding citizens. The Final Rule also violates the "chameleon" canon barring construction of a statute that "acquire[s] different meanings when presented in different contexts," *Maryland v. EPA*, 958 F.3d 1185, 1202 (D.C. Cir. 2020), and the void for vagueness doctrine for lack of fair notice, *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).

79.    Third, the Final Rule lists six circumstances that, if the citizen proves exist "by reliable evidence," can either trigger a presumption that the person is not "engaged in the business of dealing in firearms" or be used "to rebut any presumption" of unlawfulness:

A person shall not be presumed to be engaged in the business of dealing in firearms when reliable evidence shows that the person is only reselling or otherwise transferring firearms—

(1) As bona fide gifts;

(2) Occasionally to obtain more valuable, desirable, or useful firearms for the person's personal collection;

(3) Occasionally to a licensee or to a family member for lawful purposes;

(4) To liquidate (without restocking) all or part of the person's personal collection; or

(5) To liquidate firearms—

(i) That are inherited; or

(ii) Pursuant to a court order; or

(6) To assist in liquidating firearms as an auctioneer when providing auction services on commission at an estate-type auction.

89 Fed. Reg. at 29092 (codified at 27 C.F.R. § 478.13(e)); *see also* 27 C.F.R. § 478.13(f) (providing that "reliable evidence of the conduct set forth in paragraph (e) of this section may be used to rebut any presumptions in paragraphs (c) or (d)(2) of this section that a person is engaged

in the business of dealing in firearms, or intends to predominantly earn a profit through the repetitive purchase and resale of firearms").

80.     These presumptions, which a citizen may rebut only with so-called "reliable" evidence, cannot be squared with the clear statutory text providing that a "dealer in firearms . . . **shall not include** a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." 18 U.S.C. § 921(a)(21)(C) (emphasis added).

81.     The Final Rule also provides that "[t]he activities set forth in the rebuttable presumptions in paragraphs (c) and (d)(2) of this section, and the activities and rebuttal evidence set forth in paragraphs (e) and (f) of this section, are not exhaustive." 89 Fed. Reg. 29092 (codified at 27 C.F.R. § 478.13(g)). This open-ended indeterminacy purports to grant the ATF authority to concoct ad hoc presumptions, but it actually magnifies the Final Rule's contravention of Congress's unambiguous statutory text and the unconstitutional vagueness of the Final Rule itself.

### 3.     The Final Rule's Disregard for Other Statutory Limitations

82.     The Final Rule violates Congress's clear statutory text by declaring that there is no minimum number of firearms moved or transactions completed to be "engaged in the business":

> *Fact-specific inquiry*. Whether a person is engaged in the business as a dealer under paragraph (a) of this section is a fact-specific inquiry. Selling large numbers of firearms or engaging or offering to engage in frequent transactions may be highly indicative of business activity. However, there is **no minimum threshold number of firearms purchased or sold** that triggers the licensing requirement. Similarly, there is **no minimum number of transactions** that determines whether a person is "engaged in the business" of dealing in firearms. For example, **even a single firearm transaction or offer to engage in a transaction**, when combined with other evidence (*e.g.*, where a person represents to others a willingness and ability to purchase more firearms for resale), may require a license; whereas, a single isolated firearm transaction without such evidence would not require a license. At all times, the determination of whether a person is engaged in the business of dealing in firearms is based on the totality of the circumstances.

25

89 Fed. Reg. at 29091 (codified at 27 C.F.R. § 478.13(b)) (emphasis added). In other words, "no actual sales are required." *Id.* at 29021. This provision cannot be squared with Congress's command that a person is engaged in the business only if that person "deal[s] in firearms as a **regular** course of trade" through "the **repetitive** purchase **and** resale" of plural "**firearms**." 18 U.S.C. § 921(a)(21)(C). Nor can it be squared with Congress's safe-harbor provision, which protects engaging in "sales, exchanges, or purchases of firearms" without a federal firearms license. *Id.* The ATF is reversing Congress's rejection of the pre-FOPA minority rule where even sale of a single firearm could trigger the licensing provisions.

83.    The Final Rule also contradicts unambiguous statutory text by stating: "actual profit is not a requirement of the statute—it is only the predominant intent to earn a profit through the repetitive purchase and resale of firearms that is required." 89 Fed. Reg. at 29045. The ATF says, by way of example, that a person may be "engaged in the business" if the person "repeatedly advertise[s] and display[s] firearms for sale, and therefore demonstrate[s] a predominant intent to earn a profit from repeatedly reselling the firearms purchased, but never actually find a buyer," or otherwise displays such intent merely from their "words or conduct." *Id.* But Congress excluded the need to show "proof of profit" for those "who engage[d] in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism," 18 U.S.C. § 922(a)(22), which demonstrates that Congress has "intentionally and purposely" manifested an intent to *require* proof of profit for all other cases, *see, e.g.*, *Collins v. Yellen*, 141 S. Ct. 1761, 1782 (2021).

84.    The Final Rule exceeds the ATF's statutory authority to "prescribe only such rules and regulations as are necessary to carry out the provisions" of the GCA, 18 U.S.C. § 926, contradicts the statutory texts, constitutes unlawful arbitrary and capricious agency action, and violates the Constitution.

**CLAIMS FOR RELIEF**
**COUNT I**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**5 U.S.C. § 706(2)(A)**
**(Exceeds the ATF's Statutory Jurisdiction and Authority)**

85.    Plaintiffs incorporate paragraphs 1 through 84 as if fully set forth herein.

86.    Under 5 U.S.C. § 706(2)(C), a "reviewing court" must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

87.    Congress delegated to the ATF through the Attorney General the authority to "prescribe only such rules and regulations as are necessary to carry out the provisions" of the GCA. 18 U.S.C. § 926; *see also* 28 U.S.C. § 599A(b)(1), (c)(1); 28 C.F.R. § 0.130(a)(1)–(2). The ATF has no congressional authorization to promulgate regulations that contradict the plain language of the statute it purports to administer. *See Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 328 (2014) ("An agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms."); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."); *see also VanDerStok*, 86 F.4th at 187–88 (5th Cir. 2023).

88.    The Final Rule constitutes final "agency action" pursuant to 5 U.S.C. § 551(13) for purposes of review under the APA.

89.    The Final Rule exceeds ATF's statutory authority because it conflicts with the unambiguous statutory text of the GCA as amended by the FOPA and BSCA, including by:

    (a)    promulgating definitions for undefined statutory terms that have unambiguous meanings, including "purchase," "sale," and "something of value," 27 C.F.R. § 478.11;

(b)    promulgating definitions for terms that Congress has defined by statute and that contradict Congress's enacted definition, such as "dealer," "engaged in the business," and "to predominantly earn a profit," 27 C.F.R. §§ 478.11, 478.13;

(c)    promulgating regulatory provisions providing "there is no minimum threshold number of firearms purchased or sold that triggers the licensing requirement" and "there is no minimum number of transactions that determines whether a person is 'engaged in the business' of dealing in firearms," 27 C.F.R. § 478.13(b), and that "a single firearm transaction, or offer to engage in a transaction," could be sufficient to require a license, 89 Fed. Reg. at 28976, which independently and collectively contradict Congress's manifest intent that only repeated and repetitive conduct can trigger the license requirement, 18 U.S.C. § 921(a)(21)(B), (C);

(d)    promulgating regulatory provisions suggesting that "actual profit is not a requirement of the statute," 89 Fed. Reg. at 29045, and that mere "intent to earn a profit" is enough to require a license, *id.*, which independently and collectively contradict Congress's manifest intent that "proof of profit" is required for all cases but those involving "the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism," 18 U.S.C. § 921(a)(22);

(e)    promulgating regulatory provisions that contradict the plain meaning of 18 U.S.C. § 921(a)(21)(C)'s safe-harbor provision, including by excluding "firearms accumulating primarily for personal protection" from the definition of "personal collection," 27 C.F.R. § 478.11;

(f)    promulgating sets of "presumptions" that require a citizen to prove their innocence, which violates Congress's manifest intent that the government must prove guilt, *see* 27 C.F.R. § 478.13(c)–(h), and which will undoubtedly apply in administrative, civil, **and** criminal proceedings;

(g)    promulgating sets of "presumptions" that have no basis in the statutory text and that otherwise conflict with governing statutory text, such as by:

(i) triggering presumptive liability based on mere "willingness and ability to purchase and resell firearms," 27 C.F.R. § 478.13(c)(1), despite Congress's manifest insistence on prohibited acts, *i.e.*, "repetitive purchase and resale," 18 U.S.C. § 921(a)(21)(C);

(ii) triggering presumptive liability based on disjunctive acts despite Congress's requirement of conjunctive acts, *contrast, e.g.*, 27 C.F.R. § 478.13(c)(1) ("[r]esells or offers for resale"; *id.* § 478.13(c)(2) ("purchases . . . or . . . resells or offers"), *with* 18 U.S.C. § 921(a)(21)(C) ("through the repetitive purchase and resale of firearms").

90.    The ATF has identified no ambiguities that support the application of anything but the plain language of Congress's statutory enactments.

91.     But even if the GCA were ambiguous, the rule of lenity would require the court "to construe ambiguous statutes against imposing criminal liability," rather than in favor of criminal liability. *VanDerStok*, 86 F.4th at 196 n.26; *see also United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518 n.10 (1992) (explaining that the rule of lenity applies in "civil litigation" involving a statute that would trigger the rule of lenity "in criminal cases").

92.     The Final Rule expands the scope of federal criminal law by making potential felons out of countless thousands of law-abiding citizens by subjecting them to administrative, civil, and criminal enforcement proceedings unless they obtain a federal firearms license. It also expands the scope of federal criminal law by forcing law-abiding citizens to comply with the GCA's strict requirements for regulated transfers, even though ATF has expressed an intent to deny federal firearms licenses to such individuals, and even though Congress has expressly protected such conduct from the scope of federal firearms law.

93.     Furthermore, even if the statute were ambiguous, the unlawful Final Rule provisions are entitled to no deference. "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (overruling *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). The ATF has no authority to expand the scope of federal criminal law beyond what Congress has expressly and clearly legislated as unlawful.

94.     The Final Rule exceeds the ATF's statutory and jurisdictional authority because it conflicts with the plain language of the GCA as amended by the FOPA and BSCA. It should be "h[e]ld unlawful and set aside." 5 U.S.C. § 706(2).

**COUNT II**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**5 U.S.C. § 706(2)(A)**
**(Final Rule is Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law)**

95.     Plaintiffs incorporate paragraphs 1 through 84 as if fully set forth herein.

96.     Under 5 U.S.C. § 706(2)(A), a "reviewing court" must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

97.     The Final Rule constitutes final "agency action" pursuant to 5 U.S.C. § 551(13) for purposes of review under the APA, 5 U.S.C. § 702.

98.     Agency action is arbitrary and capricious if a federal agency failed to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choices made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 462 U.S. 29, 43 (1983).

99.     Departure from prior practice also renders agency action arbitrary and capricious unless the agency demonstrates (1) "awareness that it is changing [its] position," (2) that "the new policy is permissible under the statute," (3) that the agency "*believes*" the new position is better, and (4) "good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009).

100.     Agency action is similarly arbitrary and capricious if the agency fails to account for legitimate interests in reliance on the legal framework it altered. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 32–33 (2020).

101.     The Final Rule is a clear change in position regarding the legality of private, non-commercial transactions involving firearms and the circumstances in which a private citizen must

30

obtain a federal firearms license. For example, the ATF's prior position was that Congress's "definition" of "engaged in the business" in the FOPA needed no "examples" because the statute itself "expressly delineat[ed] between the activity requiring a license from that of a firearms collector not subject to licensing." 53 Fed. Reg. at 10481 (Mar. 31, 1988). Even before the FOPA, the ATF's position was that the undefined use of the phrase "engaged in the business" was "adequate for enforcement purposes." 44 Reg. Reg. at 75187 (Dec. 19, 1979). The ATF has now retracted its position that Congress's enactments adequately defined the scope of federal licensing requirements, and the ATF failed to provide a sufficiently reasoned explanation for this arbitrary shift.

102.   The ATF also failed to account for legitimate interests in reliance on the existing legal landscape, under which law-abiding citizens were free to engage in occasional transfers of firearms as part of a personal collection accumulated for the purpose of personal protection. American citizens have relied on the ATF's prior position—and the clear mandates of Congress's enactments—in exercising their fundamental rights to keep and bear arms and to engage in private, non-commercial, unregulated transactions involving firearms.

103.   The ATF failed to demonstrate that its new policy is permissible under the statute.

104.   The Final Rule is arbitrary and capricious. It should be "h[e]ld unlawful and set aside." 5 U.S.C. § 706(2).

## COUNT III
### Violation of the Constitution
### U.S. Const. amend. V
### (Void for Vagueness)

105.   Plaintiffs incorporate paragraphs 1 through 84 as if fully set forth herein.

106.   A criminal statute is void for vagueness if it fails to give "fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*,

576 U.S. 591, 595 (2015); *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983) ("[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."). The "void for vagueness doctrine . . . serves as a faithful expression of ancient due process and separation of powers principles the framers recognized as vital to ordered liberty under our Constitution." *Sessions v. Dimaya*, 584 U.S. 148, 176 (2018) (Gorsuch, J., concurring in part and concurring in the judgment).

107.    Numerous aspects of the Final Rule independently and collectively render it unconstitutionally vague.

108.    The Final Rule acknowledges that, under the regulatory framework adopted by the ATF, the question of "[w]hether a person is engaged in the business as a dealer . . . is a fact-specific inquiry." 27 C.F.R. § 478.13(b). The same provision lists certain circumstances "may be" relevant to the issue or "may require a license." *Id.* At the end of the provision, the ATF retreats to the position that "whether a person is engaged in the business of dealing in firearms is based on the totality of the circumstances." *Id.*

109.    The Final Rule's ***three*** sets of presumptions based on indeterminate and "not exhaustive" factors give the ATF and other enforcement officials virtually unlimited and unpredictable discretion. *See id.* § 478.13(c)–(h). The ATF also tries to toe both sides of the line in regulating the application of those presumptions in criminal proceedings: the presumptions "shall not apply to any criminal case" but still can be "useful to courts in criminal cases, for example, when instructing juries regarding permissible inferences." *Id.* § 478.13(h).

110.    An ordinary person cannot understand, under the Final Rule, when a federal firearms license is required.

111.    The Final Rule is so standardless that it invites arbitrary enforcement.

112.    The Final Rule is unconstitutionally vague, and its enforcement must be enjoined.

**COUNT IV**
**Violation of the Constitution**
**U.S. Const. amend. II**
**(Second Amendment)**

113.    Plaintiffs incorporate paragraphs 1 through 84 as if fully set forth herein.

114.    The Second Amendment's text provides a clear command: "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

115.    The Supreme Court has established a straightforward standard for applying the Second Amendment: "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct"; thus, a law burdening protected conduct is unconstitutional unless the government "demonstrate[s] that the regulation is consistent with the Nation's historical tradition of firearms regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022).

116.    The individual Plaintiffs, as well as the NRA's members are part of "the people" whose rights are protected by the Second Amendment.

117.    The Final Rule burdens conduct protected by the Second Amendment's plain text because it prohibits American citizens from purchasing, selling, and/or exchanging firearms for lawful purposes including self-defense unless they obtain a federal firearms license and comply with the GCA's strict requirements governing firearms dealers. For example, the Final Rule criminalizes the unlicensed acquisition of firearms for purposes of enhancement of a personal collection of firearms that is accumulated and kept for personal protection. *See* 27 C.F.R. §§ 473.11 (definition of "Personal Collection"), 487.13(a). The Final Rule thus burdens the right to keep arms, the right to bear arms, the right to acquire arms, and/or the right to sell arms.

118.    The Final Rule is not consistent with this Nation's historical tradition of firearms regulation.

119.    The Final Rule violates the Second Amendment facially and as applied to Plaintiffs and the NRA's members, and its enforcement must be enjoined.

**COUNT V**
**Violation of the Constitution**
**U.S. Const. Arts. I, II**
**(Separation of Powers, Non-Delegation, and the Take Care Clause)**

120.    Plaintiffs incorporate paragraphs 1 through 84 as if fully set forth herein.

121.    Article I, § 1 of the Constitution provides that "All legislative Powers herein granted shall be vested in a Congress of the United States."

122.    Article I, § 7, Clauses 2 and 3 of the Constitution require that "Every Bill" shall be passed by both the House of Representatives and the Senate and signed by the President "before it [may] become a Law."

123.    Article II, § 3 of the Constitution directs that the President "shall take Care that the Law be faithfully executed."

124.    The Final Rule violates these provisions by usurping legislative powers and prohibiting lawful conduct by executive fiat.

125.    The Final Rule directly and deliberately conflicts with the GCA, FOPA, and BSCA's enactments governing when a citizen is "engaged in the business" as a dealer and must obtain a federal firearms license.

126.    5 U.S.C. § 706(2)(B) provides that a "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity."

127.    The Executive Branch cannot create new policies to be enforced with the force and effect of law under the guise of administering and enforcing a congressional enactment. The Final Rule is not a faithful execution of congressionally enacted law. Rather, it is an executively created law that violates fundamental tenets of separation of powers, and its enforcement must be enjoined. It similarly should be held unlawful and set aside under 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

(a)    Hold unlawful and set aside the Final Rule, including but not limited to vacatur, under 5 U.S.C. § 706(2);

(b)    Declare that the Final Rule violates the Fifth Amendment;

(c)    Declare that the Final Rule violates the Second Amendment;

(d)    Declare that the Final Rule violates Article I and Article II of the Constitution of the United States;

(e)    Issue a temporary restraining order and/or preliminary injunction prohibiting Defendants from enforcing the Final Rule against Plaintiffs and their members;

(f)    Issue a permanent injunction prohibiting Defendants from enforcing the Final Rule against Plaintiffs, their members, and those with whom Plaintiffs and their members engage in protected private transactions;

(g)    Award Plaintiffs the costs of this action and reasonable attorneys' fees; and

(h)    Award Plaintiffs such other relief as is just and appropriate.


Dated: July 19, 2024                    Respectfully submitted,

                                        **BRADLEY ARANT BOULT CUMMINGS LLP**

                                        */s/  James W. Porter, III*
                                        James W. Porter, III
                                        W. Chadwick Lamar, Jr.
                                        Brenton L. Thompson
                                        Bradley Arant Boult Cummings LLP
                                        1819 5th Avenue N.
                                        Birmingham, AL 35203

Telephone: (205) 521-8000
Facsimile: (205) 488-6285
jporter@bradley.com
clamar@bradley.com
bthompson@bradley.com

*/s/  John Parker Sweeney*
John Parker Sweeney (*pro hac vice* forthcoming)
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Telephone: (202) 393-7150
Facsimile: (202) 719-8316
jsweeney@bradley.com

*Counsel for Plaintiffs*