FILED

2024 Aug-15  PM 01:46
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **DON BUTLER; DAVID GLIDEWELL; NATIONAL RIFLE ASSOCIATION OF AMERICA,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**MERRICK GARLAND, in his official capacity as Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,**<br><br>**Defendants.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>**Civil Action No. 1:24-cv-975-CLM** |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ...................................................................................... 1

BACKGROUND ........................................................................................ 4

I.     Statutory History ................................................................................ 4

      A.    The Federal Firearms Act of 1938 ......................................... 4

      B.    The Gun Control Act of 1968 ................................................. 6

      C.    The ATF's 1979 Notice of Proposed Rulemaking .................. 7

      D.    The Firearm Owners Protection Act ...................................... 7

      E.    The Bipartisan Safer Communities Act ............................... 10

II.    The "Engaged in the Business" Final Rule ................................... 12

      A.    Delegation of Statutory Authority, Executive Branch Statements, and the Rulemaking Process ...................................................... 12

      B.    The Unlawful and Unconstitutional Final Rule's Core Provisions .... 14

            1.    The Final Rule's Unlawful Definitions ..................... 14

            2.    The Final Rule's Atextual Presumptions ................... 18

      C.    The Final Rule's Other Unlawful Provisions ...................... 24

III.   The Plaintiffs ................................................................................. 26

LEGAL STANDARD ............................................................................. 29

ARGUMENT .......................................................................................... 30

I.     Plaintiffs are likely to succeed on the merits. ............................... 30

      A.    Plaintiffs have Article III standing to pursue each of their claims. .... 30

            1.    The individual Plaintiffs have standing. ................... 30

2.      The NRA has associational standing. .......................................35

B.      Plaintiffs are likely to succeed on the merits of their APA claim that the ATF exceeded its statutory authority (Count I). .................................36

C.      The Plaintiffs are likely to succeed on the merits of their APA claim that the Final Rule is arbitrary and capricious (Count II). .................46

D.      The Plaintiffs are likely to succeed on the merits of their claim that the Final Rule violates the void-for-vagueness doctrine (Count III) ........48

E.      The Plaintiffs are likely to succeed on the merits of their claim that the Final Rule violates the Second Amendment (Count IV). ...................50

F.      Plaintiffs are likely to succeed on the merits of their claim that the Final Rule violates Article I and Article II of the Constitution (Count V). .57

II.     Plaintiffs face irreparable harm in the absence of immediate relief..............58

III.    The balance of the equities and public interest favor granting Plaintiffs' requested relief..................................................................................62

IV.     Relief should be issued to Plaintiffs, their customers, and their members....63

CONCLUSION ...........................................................................................64

CERTIFICATE OF SERVICE ....................................................................66

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Ass'n of Realtors v. HHS*,
  594 U.S. 758 (2021)........................................................................4, 62

*Arevalo v. Hennessy*,
  882 F.3d 763 (9th Cir. 2018) ................................................59

*Baird v. Bonta*,
  81 F.4th 1036 (9th Cir. 2023) ................................................59

*Baughcum v. Jackson*,
  92 F.4th 1024 (11th Cir. 2024) ................................................*passim*

*BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs.,
  LLC*,
  425 F.3d 964 (11th Cir. 2005) ................................................61

*Boland v. Bonta*,
  662 F. Supp. 3d 1077 (C.D. Cal. 2023) ................................................56

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988)........................................................................37

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
  408 F.3d 1349 (11th Cir. 2005) ................................................31

*Christian Coal. of Fla. Inc. v. United States*,
  662 F.3d 1182 (11th Cir. 2011) ................................................32

*City of Arlington v. FCC*,
  569 U.S. 290 (2013)........................................................................37

*Collins v. Yellen*,
  594 U.S. 220 (2021)........................................................................26, 39

*Common Cause/Georgia v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) ................................................34

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020)......................................................................47, 48

*Dig. Realty Tr., Inc. v. Somers*,
   583 U.S. 149 (2018)..........................................................................44

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)..............................................51, 52, 53, 54, 56

*Drummond v. Robinson*,
   9 F.4th 217 (3d Cir. 2021) ...............................................................51

*Elrod v. Burns*,
   427 U.S. 347 (1976)....................................................................29, 60

*Estelle v. Williams*,
   425 U.S. 501 (1976)....................................................................22, 42

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) .....................................................51, 60

*Farmworker Ass'n of Fla., Inc. v. Moody*,
   --- F. Supp. 3d ----, 2024 WL 2310150 (S.D. Fla. 2024) ...................59

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)....................................................................46, 47

*FCC v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012)..........................................................................48

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024)....................................................................30, 34

*Fla. State Conf. of N.A.A.C.P. v. Browning*,
   522 F.3d 1153 (11th Cir. 2008) .......................................................35

*Ga. Latino All. for Human Rights v. Gov. of Ga.*,
   691 F.3d 1250 (11th Cir. 2012) .......................................................59

*Ga. v. President of the United States*,
   46 F.4th 1283 (11th Cir. 2022) ....................................................4, 60

iv

*Garland v. Cargill*,
    602 U.S. 406 (2024)................................................................1, 36, 44

*Greater Birmingham Ministries v. Sec'y of State*,
    992 F.3d 1299 (11th Cir. 2021) ...............................................35, 36

*Hirschfeld v. ATF*,
    5 F.4th 407 (4th Cir. 2021) ..............................................................54

*Hunt v. Wash. State Apple Advertising Comm'n*,
    432 U.S. 333 (1977)...............................................................35, 63

*Jacobson v. Fla. Sec'y of State*,
    974 F.3d 1236 (11th Cir. 2020) ....................................................30

*Johnson v. U.S. Dep't of Agric.*,
    734 F.2d 774 (11th Cir. 1984) .......................................................62

*Johnson v. United States*,
    576 U.S. 591 (2015)...............................................................48, 50

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016)......................................................4, 62

*Levi Strauss & Co. v. Int'l Trading Inc.*,
    51 F.3d 982 (11th Cir. 1995) .........................................................29

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2244 (2024)................................................3, 37, 41, 46

*Louisiana v. Biden*,
    55 F.4th 1017 (5th Cir. 2022) .......................................................60

*Md. Shall Issue, Inc. v. Hogan*,
    971 F.3d 199 (4th Cir. 2020) .........................................................35

*Maryland v. EPA*,
    958 F.3d 1185 (D.C. Cir. 2020).....................................................43

*Mock v. Garland*,
    75 F.4th 563 (5th Cir. 2023) .......................................................1, 64

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022) ........................................................................................ *passim*

*Nat'l Ass'n for Gun Rights, Inc. v. Garland*,
  --- F. Supp. 3d ----, 2024 WL 3517504 (N.D. Tex. July 23, 2024) ...................... 1

*Nat'l Ass'n for Gun Rights, Inc. v. Garland*,
  697 F. Supp. 3d 601 (N.D. Tex. 2023) ................................................................ 63

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
  583 U.S. 109 (2018) ........................................................................................... 32

*Nken v. Holder*,
  556 U.S. 418 (2009) ..................................................................................... 29, 62

*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937) ................................................................................................. 4

*NRA v. Comm'r, Fla. Dep't of Law Enforcement*,
  61 F.4th 1317 (11th Cir. 2023) ........................................................................... 52

*Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*,
  715 F.3d 1268 (11th Cir. 2013) ........................................................................... 60

*Schiaevo ex rel. Schindler v. Schiavo*,
  403 F.3d 1223 (11th Cir. 2005) ........................................................................... 29

*Sessions v. Dimaya*,
  584 U.S. 148 (2018) ............................................................................................ 49

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)) ........................................................................................... 35

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ........................................................................... 3, 31, 32, 33

*Teixeira v. Cnty. of Alameda*,
  873 F.3d 670 (9th Cir. 2017) (*en banc*) ........................................................ 51, 55

*Texas v. Biden*,
  10 F.4th 538 (5th Cir. 2021) ........................................................................... 4, 62

*Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
No. 2:24-CV-089-Z, 2024 WL 2967340 (N.D. Tex. June 11, 2024).......2, 33, 37

*Texas v. United States*,
945 F.3d 355 (5th Cir. 2019) .................................................................34

*Thole v. U.S. Bank, N.A.*,
590 U.S. 538 (2020)..............................................................................34

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994)..............................................................................60

*Trump v. Int'l Refugee Assistance Project*,
582 U.S. 571 (2017)..............................................................................63

*Tsao v. Captiva MVP Rest. Partners, LLC*,
986 F.3d 1332 (11th Cir. 2021) ............................................................34

*United States v. Bogle*,
855 F.2d 707 (11th Cir. 1988) ...........................................................4, 58

*United States v. Butler*,
297 U.S. 1 (1936)..................................................................................39

*United States v. Davis*,
588 U.S. 445 (2019)..................................................................45, 49, 58

*United States v. Day*,
476 F.2d 562 (6th Cir. 1973) ..................................................................9

*United States v. Dubois*,
94 F.4th 1284 (11th Cir. 2024) .............................................................55

*United States v. Focia*,
869 F.3d 1269 (11th Cir. 2017) .............................................................54

*United States v. Gross*,
451 F.2d 1355 (7th Cir. 1971) ................................................................9

*United States v. Huffman*,
518 F.2d 80 (4th Cir. 1975) ....................................................................9

*United States v. Jimenez-Shilon*,
   34 F.4th 1042 (11th Cir. 2022) ........................................................52

*United States v. King*,
   532 F.2d 505 (5th Cir. 1976) ............................................................9

*United States v. Phifer*,
   909 F.3d 372 (11th Cir. 2018) ........................................................45

*United States v. Rahimi*,
   144 S. Ct. 1889 (2024)....................................................50, 54, 55

*United States v. Rozier*,
   598 F.3d 768 (11th Cir. 2010) ........................................................55

*United States v. Swinton*,
   521 F.2d 1255 (10th Cir. 1975) ................................................10, 38

*United States v. Van Buren*,
   593 F.2d 125 (9th Cir. 1979) ............................................................9

*United States v. Wilkening*,
   485 F.2d 234 (8th Cir. 1973) ..........................................................10

*United States v. Williams*,
   502 F.2d 581 (8th Cir. 1974) ............................................................9

*Univ. of Tex. v. Camenisch*,
   451 U.S. 390 (1981)........................................................................29

*Util. Air Regul. Grp. v. EPA*,
   573 U.S. 302 (2014)........................................................................36

*VanDerStok v. Garland*,
   86 F.4th 179 (5th Cir. 2023) ..............................................1, 46,, 50

*West Virginia v. EPA*,
   597 U.S. 697 (2022)........................................................................44

*Villano v. City of Boytnton Beach*,
   254 F.3d 1302 (11th Cir. 2001) ......................................................62

*Wollschlaeger v. Governor of Fla.*,
   848 F.3d 1293 (11th Cir. 2017) (*en banc*) ..........................................................33

**Regulations**

27 C.F.R. § 178.2 .........................................................................................10

27 C.F.R. § 478.11 .................................................................................*passim*

27 C.F.R. § 478.13 .................................................................................*passim*

27 C.F.R. § 478.57 .........................................................................................20

27 C.F.R. § 478.78 .........................................................................................20

27 C.F.R. § 478.122 .......................................................................................17

27 C.F.R. § 478.123 .......................................................................................17

27 C.F.R. § 478.125 .......................................................................................17

27 C.F.R. § 478.125a ...............................................................................17, 20

28 C.F.R. § 0.130 .....................................................................................12, 34

33 Fed. Reg. 18555 (Dec. 14, 1968) ..............................................................6

44 Fed. Reg. 75186 (Dec. 19, 1979) ....................................................7, 44, 47

53 Fed. Reg. 10480 (Mar. 31, 1988) ..................................................10, 44, 47

88 Fed. Reg. 61993 (proposed Sept. 8, 2023)....................................13, 14

"Definition of 'Engaged in the Business' as a Dealer in Firearms,"
   89 Fed. Reg. 28968 (Apr. 19, 2024) ............................................*passim*

**Statutes and Constitutional Provisions**

5 U.S.C. § 706 ......................................................................................36, 46

18 U.S.C. § 921 ....................................................................................*passim*

18 U.S.C. § 922 ............................................... 6, 7, 11, 19, 20, 54, 59

18 U.S.C. § 923 ..............................................................................6, 17, 20

18 U.S.C. § 924 ................................................................................7, 59

18 U.S.C. § 926 ........................................................................12, 26, 34

18 U.S.C. § 3571 .............................................................................7, 59

22 U.S.C. § 2778 ..................................................................................19

26 U.S.C. § 5844 ..................................................................................19

26 U.S.C. § 5845 ..................................................................................20

26 U.S.C. § 5861 .............................................................................19, 20

28 U.S.C. § 599A ...........................................................................12, 34

Bipartisan Safer Communities Act, Pub. L. 117-159, 136 Stat. 1313
    (2022) ................................................................................10, 11, 43

Federal Firearms Act, Ch. 850, Pub. L. 75-785, 52 Stat. 1250 (1938) .....................5

Firearms Owners' Protection Act, Pub. L. 99-308, 100 Stat. 449
    (1986) ....................................................................................*passim*

Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213 ................................*passim*

Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. 90-351,
    tit. IV, 82 Stat. 197 ........................................................................5

U.S. Const. Art. I, § 1 ....................................................................44, 57

U.S. Const. Art. II, § 1 ........................................................................57

U.S. Const. Art. II, § 3 ........................................................................57

## Other Authorities

1 Noah Webster, American Dictionary of the English Language
    (1828) ....................................................................................52

1 Samuel Johnson, Dictionary of the English Language (4th ed. 1773) .................52

Antonin Scalia & Bryan Garner, Reading Law (2012) .................32, 33, 38, 39, 42

*A Brief History of the NRA*, Nat'l Rifle Ass'n .......................................28

*Collection*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY
    (1993) .................................................................................................... 41

*Commercial*, Black's Law Dictionary (12th ed. 2024) ........................... 54

Fact Sheet: Biden-Harris Administration Takes Another Life-Saving
    Step to Keep Guns Out of Dangerous Hands, White House (Aug.
    31, 2023) ............................................................................................. 13

Public Comment of Gun Owners of America, *et al.*, on the ATF's
    Proposed Rule 2022R-17 (Dec. 11, 2023) ...................................... 45, 61

Public Comments of the National Rifle Association on the ATF's
    Proposed Rule 22R-17 (Dec. 9, 2023) ................................................ 14

## INTRODUCTION

Plaintiffs Don Butler, David Glidewell, and the National Rifle Association of America ("NRA") seek a preliminary injunction to protect Plaintiffs and the NRA's members from enforcement of the administratively unlawful and unconstitutional Final Rule promulgated by the Department of Justice ("DOJ") and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") entitled "Definition of 'Engaged in the Business' as a Dealer in Firearms," 89 Fed. Reg. 28968 (Apr. 19, 2024) ("Final Rule").

The Final Rule is the ATF's latest attempt to rewrite unambiguous congressional firearms laws under the guise of administration, implementation, and enforcement.[1] Purporting merely "to implement" Congress's modest amendments within the 2022 Bipartisan Safer Communities Act, 89 Fed. Reg. at 28968, the Final Rule radically expands when a private citizen is "engaged in the business" as a firearms dealer and makes felons out of countless thousands of Americans for

---

[1] *See Garland v. Cargill*, 602 U.S. 406, 416 (2024) (holding that the ATF "exceeded its statutory authority by issuing a Rule that classifies bump stocks as machineguns" under the National Firearms Act); *VanDerStok v. Garland*, 86 F.4th 179, 187–88 (5th Cir. 2023) (holding that the ATF exceeded its statutory authority by redefining "firearm" and "frame or receiver" under the Gun Control Act), *cert. granted* (U.S. Apr. 22, 2024) (No. 23-852); *Mock v. Garland*, 75 F.4th 563, 578 (5th Cir. 2023) (holding that the ATF's pistol-brace rule "fails the logical-outgrowth test and violates the APA); *Nat'l Ass'n for Gun Rights, Inc. v. Garland*, --- F. Supp. 3d ----, 2024 WL 3517504, at *22 (N.D. Tex. July 23, 2024) (holding that the ATF exceeded its statutory authority by redefining "machinegun" to include a forced reset trigger).

conduct that Congress unambiguously protected by statute and the Founders protected through the Second Amendment's "unqualified command." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022) (citation omitted). The Northern District of Texas recently enjoined the same Defendants from enforcing the Final Rule against certain states, membership organizations, and an individual. *See Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 2:24-CV-089-Z, 2024 WL 2967340 (N.D. Tex. June 11, 2024), *appeal docketed*, No. 24-10612 (5th Cir. July 9, 2024). This Court should enter the same relief.

Congress has long ensured that private citizens could engage in private, unregulated transactions involving firearms without fear of prosecution. Although Congress slightly broadened the definition of "engaged in the business" in 2022, Congress's clear legislative will has always been—and still is—that private buyers and sellers of firearms fall outside the scope of federal statutory restrictions on dealers. But the ATF's Final Rule eviscerates congressional and constitutional protections for private firearms transactions. 89 Fed. Reg. at 28968. In doing so, the Final Rule violates unambiguous statutory language and drastically expands the scope of federal administrative, civil, and criminal liability. It also creates vague presumptions of unlawfulness that will infect administrative, civil, and criminal proceedings. The ATF's goals are obvious: to make felons out of ordinary, law-abiding citizens and effectuate gun-control legislation by executive fiat.

The Plaintiffs have standing. Individual Plaintiffs Butler and Glidewell would engage in protected private firearms transactions to enhance their personal collections maintained for personal protection but are prohibited from doing so by the Final Rule and face credible threats of enforcement proceedings. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). The NRA represents millions of members, including Plaintiffs Butler and Glidewell, who are prohibited from engaging in private firearms transactions for fear of being subjected unlawfully and unconstitutionally to enforcement proceedings under the Final Rule. *See Baughcum v. Jackson*, 92 F.4th 1024, 1031 (11th Cir. 2024). Protecting its members' statutory and constitutional firearms rights is the NRA's most important endeavor, and this suit does not require its individual members' participation. *Id.*

The Plaintiffs are likely to succeed on the merits. The Final Rule exceeds the ATF's statutory authority because it radically expands the scope of federal law governing firearms dealers in violation of Congress's unambiguous statutory text. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires."). It also constitutes arbitrary and capricious agency action. It is unconstitutionally void for vagueness. It violates the Second Amendment's protection of private firearms transactions. And it flouts the Constitution's separation of powers.

Immediate relief is necessary. The Defendants' unlawful and unconstitutional conduct irreparably harms the Plaintiffs and the NRA's members by subjecting them to "unnecessary deprivation[s] of liberty," *United States v. Bogle*, 855 F.2d 707, 710 (11th Cir. 1988), as well as "unrecoverable costs of compliance," *Ga. v. President of the United States*, 46 F.4th 1283, 1302 (11th Cir. 2022). And the equities and public interest factors favor immediate relief because there is no cognizable interest in continuing unlawful and unconstitutional agency action. *See, e.g.*, *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021); *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *Texas v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021). Plaintiffs respectfully request that the Court grant Plaintiffs' motion.

## BACKGROUND

### I.    Statutory History

Congress has regulated firearms dealers "engaged in the business" of selling firearms since 1938. Since then, and as recently as 2022, Congress has repeatedly manifested its legislative will to protect the rights of ordinary, law-abiding citizens to engage in private, unregulated transactions involving firearms without fear of prosecution or other enforcement under federal law governing firearms "dealers."

### A.    The Federal Firearms Act of 1938

Congress began to regulate firearms dealers shortly after the Supreme Court began to take an expansive view of Congress's powers over commerce. *See, e.g.*,

*NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937) (holding that Congress can regulate intrastate activities that "have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions").

The Federal Firearms Act of 1938 made it unlawful for any "dealer" lacking "a license issued under the provisions of this Act, to transport, ship, or receive any firearm or ammunition in interstate or foreign commerce." Federal Firearms Act, Ch. 850, Pub. L. 75-785, § 2(a), 52 Stat. 1250, 1250 (1938) (repealed 1968) ("FFA"). The FFA defined "dealer" as including "any person engaged in the business of selling firearms . . . at wholesale or retail." *Id.* § 1(5). But Congress did not define what it meant to be "engaged in the business of selling firearms."

Congress repealed the FFA in 1968 shortly before it passed the Gun Control Act. *See* Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. 90-351, tit. IV, § 906, 82 Stat. 197, 234 (repealing the FFA). In repealing the FFA, Congress expressed its concern "that the existing licensing system under the Federal Firearms Act does not provide adequate license fees or proper standards for the granting or denial of licenses, and that this has led to licenses being issued to persons not reasonably entitled thereto, thus distorting the purposes of the licensing system." *Id.* § 901(9), 82 Stat. at 226.

### B.   The Gun Control Act of 1968

Soon after repealing the FFA, Congress passed the Gun Control Act of 1968, which imposed strict requirements on firearms dealers, manufacturers, and importers. *See* Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213 ("GCA"). The GCA made it unlawful "to engage in the business of . . . dealing in firearms" without a license, 82 Stat. at 1216–17 (codified at 18 U.S.C. § 922(a)), and imposed strict rules for obtaining a license, *id.* at 1221 (codified at 18 U.S.C. § 923).

The original text of the GCA—largely adopting the same definition as in the FFA—defined "dealer" as "(A) any person engaged in the business of selling firearms or ammunition at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker. The term 'licensed dealer' means any dealer who is licensed under the provisions of this chapter." 82 Stat. at 1216 (codified at 18 U.S.C. § 921(a)(11)). The ATF promulgated a regulation that incorporated the same definition of "dealer" as the GCA. *See, e.g.*, 33 Fed. Reg. 18555, 18558 (Dec. 14, 1968). Neither the GCA nor any ATF regulation defined the phrase "engaged in the business."

Today, the GCA provides harsh penalties for any person who willfully engages in the business of dealing in firearms without a federal firearms license: five

years of imprisonment, a fine of up to $250,000, or both. *See* 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D), 3571(b)(3).

### C.      The ATF's 1979 Notice of Proposed Rulemaking

In 1979, the ATF published an Advance Notice of Proposed Rulemaking that sought "to develop a workable, commonly understood definition of ['engaged in the business']." *See* Definition of the Phrase "Engaged in the Business," 44 Fed. Reg. 75186, 75186–87 (Dec. 19, 1979). The Notice acknowledged that "courts have continually found that the current situation [*i.e.*, use of the undefined phrase 'engaged in the business'] is adequate for enforcement purposes." *Id.* at 75187. The ATF also acknowledged that "[t]he phrase clearly connotes an element of continual or habitual practice" and cited some varying federal judicial interpretations. *Id.* at 75186. As noted in the Final Rule challenged here, the ATF received 844 comments but ultimately "decided not to proceed further with rulemaking at that time." 89 Fed. Reg. at 28970.

### D.      The Firearms Owners' Protection Act

In 1986, Congress enacted the Firearms Owners' Protection Act "to correct existing firearms statutes and enforcement policies" and "to reaffirm" that Congress had no intention to unduly burden "the acquisition, possession, or use of firearms" for, among other things, "personal protection, or any other lawful activity." Firearms Owners' Protection Act, Pub. L. 99-308, § 1(b), 100 Stat. 449, 449 (1986)

("FOPA"). The FOPA manifests Congress's express legislative will—which continues today—that private buyers and sellers of firearms "for personal protection, or any other lawful activity," fall outside the scope of federal statutory restrictions on dealers.

The FOPA modified the GCA by defining, for the first time, the phrase "engaged in the business" as applied to dealers: "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." *Id.* § 101, 100 Stat. at 450 (codified at 18 U.S.C. § 921(a)(21)(C)). The FOPA also defined "with the principal objective of livelihood and profit" to "mean[] that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection." *Id.* (codified at 18 U.S.C. § 921(a)(22)). A few months later, Congress amended this definition by inserting the following at the end of Section 921(a)(22):

> "*Provided,* That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism. For purposes of this paragraph, the term 'terrorism' means activity, directed against United States persons, which—

(A) is committed by an individual who is not a national or permanent resident alien of the United States;

(B) involves violent acts or acts dangerous to human life which would be a criminal violation if committed within the jurisdiction of the United States; and

(C) is intended—

(i) to intimidate or coerce a civilian population;

(ii) to influence the policy of a government by intimidation or coercion; or

(iii) to affect the conduct of a government by assassination or kidnapping.

Prior to the FOPA's enactment, federal courts had interpreted "engaged in the business" in one of two ways. A majority of circuits to address the issue defined the phrase to require "the purposes of livelihood and profit."[2] A minority permitted

---

[2] *See United States v. Gross*, 451 F.2d 1355, 1357 (7th Cir. 1971); *United States v. King*, 532 F.2d 505, 510 (5th Cir. 1976) ("'Business' is commonly understood to mean an activity engaging some of one's time, attention and effort and performed in expectation of profit or other benefit; 'Dealing in firearms' is commonly understood as selling and/or trading in firearms, as well as acquiring firearms for sale by purchase and/or trade."); *United States v. Huffman*, 518 F.2d 80, 81 (4th Cir. 1975) ("a willingness to deal, a profit motive, and a greater degree of activity than occasional sales by a hobbyist"); *United States v. Williams*, 502 F.2d 581, 583 (8th Cir. 1974) ("there should be no doubt in the minds of men of common intelligence that 'dealer' means one that is engaged in any business of selling firearms and that 'business' is that which occupies the time, attention and labor of men for the purpose of livelihood or profit"); *United States v. Day*, 476 F.2d 562, 567 (6th Cir. 1973) (following *Gross*); *see also United States v. Van Buren*, 593 F.2d 125, 126 (9th Cir.

conviction without requiring proof of profit motive or more than one transaction.[3] Congress's enactment of the FOPA manifested congressional codification of the majority rule and outright rejection of the minority position.

The ATF again followed Congress's express intent and adopted the FOPA's definitions of "engaged in the business" and "principal objective of livelihood and profit." Commerce in Firearms and Ammunition, 53 Fed. Reg. 10480, 10491 (Mar. 31, 1988) (codified at 27 C.F.R. § 178.2). In doing so, the ATF expressly declined to "list examples illustrating when a license is required" because "the definition adequately addresses this concern by expressly delineating the activity requiring licensing from that of a firearms collector not subject to licensing." *Id.* at 10481.

### E.     The Bipartisan Safer Communities Act

For several decades, the FOPA's definition of "engaged in the business" remained unchanged by statute or regulation. In 2022, Congress slightly modified the operative statutory text by enacting the Bipartisan Safer Communities Act, Pub. L. 117-159, 136 Stat. 1313 (2022) ("BSCA"). The BSCA revised the definition of

---

1979) ("transactions of sale, purchase or exchange of firearms are regularly entered into in expectation of profit").

[3] *United States v. Swinton*, 521 F.2d 1255, 1258 (10th Cir. 1975) (declining to follow majority, holding that conviction "does not necessitate proof that a defendant's primary business is dealing in firearms is on a profit-making basis," and affirming conviction based on a single sale); *United States v. Wilkening*, 485 F.2d 234, 235 (8th Cir. 1973) (similar).

"engaged in the business" within 18 U.S.C. § 921(a)(21)(C) by replacing the phrase "with the principal objective of livelihood and profit" with "to predominantly earn a profit." *Id.* § 12002, 136 Stat. at 1324. To reflect this subtle change, Congress altered 18 U.S.C. § 922(a)(22), which now defines the term "to predominantly earn a profit," to focus on "obtaining pecuniary gain" and no longer reference "livelihood." *Id.*, 136 Stat. at 1325.

The BSCA's only substantive modification—for all purposes relevant to this lawsuit—was to remove reference to "livelihood." Even the ATF conceded, in the Final Rule, that this modification "constitute[s] only a modest congressional expansion of the previous FFL licensing requirements." 89 Fed. Reg. at 29009. Congress did not alter the safe-harbor provision, which expressly exempts from the scope of licensing requirements "a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." *See* 18 U.S.C. § 921(a)(21)(C).

The statutory text today continues to reflect the legislative will that Congress expressed in 1986: ordinary citizens can engage in private, unregulated transactions involving firearms without fear of prosecution. Such congressionally and constitutionally protected conduct falls outside the scope of federal restrictions applicable to dealers, summarized in relevant part below:

- The term "dealer" means a "person engaged in the business of selling firearms at wholesale or retail." 18 U.S.C. § 921(a)(11).

- The term "engaged in the business" for dealers means "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." *Id.* § 921(a)(21)(C).

- The term "to predominantly earn a profit" means "the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided*, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism." *Id.* § 921(a)(22).

The Final Rule challenged in this lawsuit contradicts Congress's clear statutory text, exceeds the ATF's statutory authority, constitutes unlawful arbitrary and capricious agency action, and violates the Constitution several times over.

## II.    The "Engaged in the Business" Final Rule

### A.    Delegation of Statutory Authority, Executive Branch Statements, and the Rulemaking Process

Congress granted the Attorney General power to "prescribe only such rules and regulations as are necessary to carry out the provisions" of the GCA. 18 U.S.C. § 926. The Attorney General then delegated authority to the ATF to administer and enforce federal firearms laws. 28 U.S.C. § 599A(b)(1), (c)(1); 28 C.F.R. § 0.130(a)(1)–(2).

On March 14, 2023, following the BSCA's enactment, President Biden issued an Executive Order directing the Attorney General to "develop and implement a plan to: (i) clarify the definition of who is engaged in the business of dealing in firearms, and thus required to become Federal firearms licensees (FFLs), in order to increase compliance with the Federal background check requirement for firearm sales, including by considering a rulemaking, as appropriate and consistent with applicable law; [and] (ii) prevent former FFLs whose licenses have been revoked or surrendered from continuing to engage in the business of dealing in firearms." Executive Order 14092, §§ 2, 3(a)(i)–(ii).

On August 31, 2023, President Biden issued a press release claiming that his administration intended "to move as close to universal background checks as possible within existing law."[4] Just over a week later, the ATF published a Notice of Proposed Rulemaking that would do just that, in a blatant attempt to circumvent Congress's repeated rejection of bills that would broadly expand background check requirements. "Definition of 'Engaged in the Business' as a Dealer in Firearms," 88 Fed. Reg. 61993 (proposed Sept. 8, 2023) ("Proposed Rule"). The ATF claimed that the Proposed Rule sought "[t]o implement the new statutory language" of the BSCA, *id.* at 61996, and "to clarify[] the criteria for determining when a person is 'engaged

---

[4] Fact Sheet: Biden-Harris Administration Takes Another Life-Saving Step to Keep Guns Out of Dangerous Hands, White House (Aug. 31, 2023) [link].

in the business,'" *id.* at 62007; but the Final Rule actually legislates by executive fiat.

As the NRA voiced in its public comment opposing the Proposed Rule, the ATF exploited the BSCA's "modest" changes to statutory text "to broadly redefine what it means to be 'engaged in the business' as a dealer in firearms." *See* Public Comments of the National Rifle Association on ATF's Proposed Rule 22R-17 at 5 (Dec. 9, 2023) [link].

**B.    The Unlawful and Unconstitutional Final Rule's Core Provisions**

The ATF issued the Final Rule on April 19, 2024. 89 Fed. Reg. 28968. Like the Proposed Rule, the Final Rule purports to "implement the [BSCA's] statutory change" and "to provide additional guidance on what it means to be engaged in the business as a 'dealer.'" *Id.* at 28968, 28973. The Final Rule took effect on May 20, 2024. *Id.* at 28968. The core provisions of the Final Rule contradict unambiguous statutory text and Congress's manifest will to protect private transactions among law-abiding individuals from the requirements of federal dealer licensing laws.

**1.    The Final Rule's Unlawful Definitions**

As defined by Congress, the term "dealer" means a "person engaged in the business of selling firearms at wholesale or retail." 18 U.S.C. § 921(a)(11). The Final Rule amends the definition of "dealer" to mean:

Any person engaged in the business of selling firearms at wholesale or retail; any person engaged in the business of repairing firearms or of making or

14

fitting special barrels, stocks, or trigger mechanisms to firearms; or any person who is a pawnbroker. The term shall include any person who engages in such business or occupation on a part-time basis. **The term shall include such activities wherever, or through whatever medium, they are conducted, such as at a gun show or event, flea market, auction house, or gun range or club; at one's home; by mail order; over the internet (*e.g.*, online broker or auction); through the use of other electronic means (*e.g.*, text messaging service, social media raffle, or website); or at any other domestic or international public or private marketplace or premises.**

89 Fed. Reg. at 29090 (emphasis added) (amending 27 C.F.R. § 478.11 (definition of "Dealer")).

As defined by Congress, the term "engaged in the business" for dealers means "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." 18 U.S.C. § 921(a)(21)(C).

By amending 27 C.F.R. § 478.11 and adding § 478.13, the Final Rule changes the definition of "engaged in the business" to track the new statutory text:

A person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms. The term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of the person's personal collection of firearms.

15

89 Fed. Reg. at 29091 (codified at 27 C.F.R. § 478.13(a)); *see also id.* at 29090 (amending 27 C.F.R. § 478.11's definition of "engaged in the business" to incorporate § 478.13).

The Final Rule replaces the former definition of "principal objective of livelihood and profit" with a new definition for "predominantly earn a profit" that, without any basis in statutory text, dispenses with the requirement to prove a profit:

> The intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided*, that proof of profit, including the intent to profit, shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism. **For purposes of this section, a person may have the intent to profit even if the person does not actually obtain the intended pecuniary gain from the sale or disposition of firearms.**

89 Fed. Reg. at 29091 (codified at 27 C.F.R. § 478.13(d)(1)) (emphasis added); *see also id. at* 29090 (amending 27 C.F.R. § 478.11 to add a definitional provision for "predominantly earn a profit" that incorporates § 478.13(d)).

Then, without any basis in statutory text or common sense, the Final Rule defines "'personal collection' (or 'personal collection of firearms' or 'personal firearms collection')" to, among other things, **exclude** "personal protection" (*i.e.*, self-defense), which nullifies Congress's safe-harbor provision in 18 U.S.C. § 921(a)(21)(C):

> *Personal collection (or personal collection of firearms, or personal firearms collection)—*(1) *General definition.* Personal firearms that a person accumulates for study, comparison, exhibition (*e.g.*, collecting curios or relics,

16

or collecting unique firearms to exhibit at gun club events), or for a hobby (*e.g.*, noncommercial, recreational activities for personal enjoyment, such as hunting, skeet, target, or competition shooting, historical re-enactment, or noncommercial firearms safety instruction). The term shall not include any firearm purchased for the purpose of resale with the predominant intent to earn a profit (*e.g.*, primarily for a commercial purpose or financial gain, as distinguished from personal firearms a person accumulates for study, comparison, exhibition, or for a hobby, but which the person may also intend to increase in value). **In addition, the term shall not include firearms accumulated primarily for personal protection:** *Provided*, that nothing in this definition shall be construed as precluding a person from lawfully acquiring firearms for self-protection or other lawful personal use.

(2) *Personal collection of licensee*. In the case of a firearm imported, manufactured, or otherwise acquired by a licensed manufacturer, licensed importer, or licensed dealer, the term shall include only a firearm described in paragraph (1) of this definition that was—

> (i) Acquired or transferred without the intent to willfully evade the restrictions placed upon licensees under 18 U.S.C. chapter 44;
>
> (ii) Recorded by the licensee as an acquisition in the licensee's acquisition and disposition record in accordance with § 478.122(a), § 478.123(a), or § 478.125(e) (unless acquired prior to licensure and not intended for sale);
>
> (iii) Recorded as a disposition from the licensee's business inventory to the licensee's personal collection or otherwise as a personal firearm in accordance with § 478.122(a), § 478.123(a), or § 478.125(e) (unless acquired prior to licensure and not intended for sale);
>
> (iv) Maintained in such personal collection or otherwise as a personal firearm (whether on or off the business premises) for at least one year from the date the firearm was so transferred, in accordance with 18 U.S.C. 923(c) and 27 CFR 478.125a; and

(v) Stored separately from, and not commingled with the business inventory. When stored or displayed on the business premises, the personal collection and other personal firearms shall be appropriately identified as ''not for sale'' (*e.g.*, by attaching a tag).

*Id.* at 29090 (codified at 27 C.F.R. § 478.11) (emphasis added).

The Final Rule also adds new definitions for several unambiguous terms that Congress left undefined. It adds a definition for "purchase" (and derivative terms thereof) to mean "the act of obtaining a firearm in an agreed exchange for something of value." 89 Fed. Reg. at 29090 (codified at 27 C.F.R. § 478.11(7)(i)). It adds a definition for "something of value" to "include[] money, credit, personal property (*e.g.*, another firearm or ammunition), a service, a controlled substance, or any other medium of exchange or valuable consideration, legal or illegal." *Id.* at 29090 (codified at 27 C.F.R. § 478.11(7)(iii)).

## 2. The Final Rule's Atextual Presumptions

Without any basis in statutory text, the Final Rule creates two sets of "rebuttable" presumptions and another presumption of lawfulness based on hopelessly vague, "non-exhaustive" criteria. 89 Fed. Reg. 29091–92. These provisions trigger presumptions (1) "that a person is engaged in the business as a dealer," (2) "that a person has intent to predominantly earn a profit," or (3) that a person "shall not be presumed to be engaged in the business of dealing in firearms."

Such presumptions unlawfully shift the burden from the ATF to law-abiding citizens to prove their innocence. *Id.*

First, the Final Rule lists five circumstances creating a presumption that a person is engaged in the business as a dealer:

> In civil and administrative proceedings, a person shall be presumed to be engaged in the business of dealing in firearms as defined in paragraph (a) of this section, absent reliable evidence to the contrary, when it is shown that the person—
>
>> (1) Resells or offers for resale firearms, and also represents to potential buyers or otherwise demonstrates a willingness and ability to purchase and resell additional firearms (*i.e.*, to be a source of additional firearms for resale);
>>
>> (2) Repetitively purchases for the purpose of resale, or repetitively resells or offers for resale, firearms—
>>
>>> (i) Through straw or sham businesses, or individual straw purchasers or sellers; or
>>>
>>> (ii) That cannot lawfully be purchased, received, or possessed under Federal, State, local, or Tribal law, including:
>>>
>>>> (A) Stolen firearms (*e.g.*, 18 U.S.C. 922(j));
>>>>
>>>> (B) Firearms with the licensee's serial number removed, obliterated, or altered, or not identified as required by law (*e.g.*, 18 U.S.C. 922(k) or 26 U.S.C. 5861(i));
>>>>
>>>> (C) Firearms imported in violation of law (*e.g.*, 18 U.S.C. 922(l), 22 U.S.C. 2778, or 26 U.S.C. 5844, 5861(k)); or

19

(D) Machineguns or other weapons defined as firearms under 26 U.S.C. 5845(b) that cannot lawfully be possessed (*e.g.*, 18 U.S.C. 922(o); 26 U.S.C. 5861(d));

(3) Repetitively resells or offers for resale firearms—

(i) Within 30 days after the person purchased the firearms; or

(ii) Within one year after the person purchased the firearms if they are—

(A) New, or like new in their original packaging; or

(B) The same make and model, or variants thereof;

(4) As a former licensee (or responsible person acting on behalf of the former licensee), resells or offers for resale to a person (other than a licensee in accordance with § 478.57 or § 478.78) firearms that were in the business inventory of the former licensee at the time the license was terminated (*i.e.*, license revocation, denial of license renewal, license expiration, or surrender of license), whether or not such firearms were transferred to a responsible person of the former licensee after the license was terminated in accordance with § 478.57(b)(2) or § 478.78(b)(2); or

(5) As a former licensee (or responsible person acting on behalf of the former licensee), resells or offers for resale firearms that were transferred to the licensee's personal collection or otherwise as personal firearms in accordance with 18 U.S.C. 923(c) and 27 CFR 478.125a(a) prior to the time the license was terminated, unless:

(i) The firearms were received and transferred without any intent to willfully evade the restrictions placed on licensees by 18 U.S.C. chapter 44; and

(ii) One year has passed from the date of transfer to the licensee's personal collection or otherwise as personal firearms.

20

89 Fed. Reg. at 29091 (codified at 27 C.F.R. § 478.13(c)).

Second, the Final Rule lists seven circumstances creating a presumption that

a person has intent to predominantly earn a profit:

> In civil and administrative proceedings, a person shall be presumed to have the intent to predominantly earn a profit through the repetitive purchase and resale of firearms as defined in paragraph (d)(1) of this section, absent reliable evidence to the contrary, when it is shown that the person—
>
> > (i) Repetitively or continuously advertises, markets, or otherwise promotes a firearms business (*e.g.*, advertises or posts firearms for resale, including through the internet or other digital means, establishes a website to offer their firearms for resale, makes available business cards, or tags firearms with sales prices), regardless of whether the person incurs expenses or only promotes the business informally;
> >
> > (ii) Repetitively or continuously purchases, rents, or otherwise exchanges (directly or indirectly) something of value to secure permanent or temporary physical space to display firearms they offer for resale, including part or all of a business premises, a table or space at a gun show, or a display case;
> >
> > (iii) Makes and maintains records to document, track, or calculate profits and losses from firearms repetitively purchased for resale;
> >
> > (iv) Purchases or otherwise secures merchant services as a business (e.g., credit card transaction services, digital wallet for business) through which the person intends to repetitively accept payments for firearms transactions;
> >
> > (v) Formally or informally purchases, hires, or otherwise secures business security services (*e.g.*, a central station-monitored security system registered to a business, or guards for security) to protect firearms assets and repetitive firearms transactions;

(vi) Formally or informally establishes a business entity, trade name, or online business account, including an account using a business name on a social media or other website, through which the person makes, or offers to make, repetitive firearms transactions; or

(vii) Secures or applies for a State or local business license to purchase for resale or to resell merchandise that includes firearms.

89 Fed. Reg. at 29091–92 (codified at 27 C.F.R. § 478.13(d)(2)).

The Final Rule provides that "[t]he rebuttable presumptions in paragraphs (c) and (d)(2) of this section"—that is, the presumptions of unlawfulness—"shall not apply to any criminal case, although they may be useful to courts in criminal cases, for example, when instructing juries regarding permissible inferences." 89 Fed. Reg. 29092 (codified at 27 C.F.R. § 478.13(h)). The ATF feigns an effort to limit the scope of the Final Rule but immediately backtracks by inviting courts to use these presumptions in the criminal prosecution of law-abiding citizens. This provision self-evidently represents the ATF's attempt to circumvent "[t]he presumption of innocence," which is a "basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976).

Third, the Final Rule also creates a presumption of lawfulness that, if the citizen proves certain circumstances exist "by reliable evidence," can either trigger a presumption that the person is not "engaged in the business of dealing in firearms" or be used "to rebut any presumption" of unlawfulness:

22

> A person shall not be presumed to be engaged in the business of dealing in firearms when reliable evidence shows that the person is only reselling or otherwise transferring firearms—
>
> > (1) As bona fide gifts;
> >
> > (2) Occasionally to obtain more valuable, desirable, or useful firearms for the person's personal collection;
> >
> > (3) Occasionally to a licensee or to a family member for lawful purposes;
> >
> > (4) To liquidate (without restocking) all or part of the person's personal collection; or
> >
> > (5) To liquidate firearms—
> >
> > > (i) That are inherited; or
> > >
> > > (ii) Pursuant to a court order; or
> >
> > (6) To assist in liquidating firearms as an auctioneer when providing auction services on commission at an estate-type auction.

89 Fed. Reg. at 29092 (codified at 27 C.F.R. § 478.13(e)); *see also* 27 C.F.R. § 478.13(f) (providing that "reliable evidence of the conduct set forth in paragraph (e) of this section may be used to rebut any presumption in paragraphs (c) or (d)(2) of this section that a person is engaged in the business of dealing in firearms, or intends to predominantly earn a profit through the repetitive purchase and resale of firearms"). This presumption manifests ATF's intention to shift the burden of proof to citizens to prove their innocence.

These presumptions of unlawfulness, which a citizen may rebut only with so-called "reliable" evidence, cannot be squared with the clear statutory text providing that a "dealer in firearms . . . **shall not include** a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." 18 U.S.C. § 921(a)(21)(C) (emphasis added).

The Final Rule also provides that "[t]he activities set forth in the rebuttable presumptions in paragraphs (c) and (d)(2) of this section, and the activities and rebuttal evidence set forth in paragraphs (e) and (f) of this section, are not exhaustive." 89 Fed. Reg. at 29092 (codified at 27 C.F.R. § 478.13(g)). This open-ended provision purports to grant the ATF power to concoct ad hoc presumptions and magnifies the ATF's contravention of Congress's unambiguous statutory text and the unconstitutional vagueness of the Final Rule itself.

## C.    The Final Rule's Other Unlawful Provisions

In addition to the tangible contradictions of statutory text shown above, the Final Rule violates clear congressional will in other ways, including by declaring that there is no minimum number of firearms moved or transactions completed to be "engaged in the business":

> *Fact-specific inquiry*. Whether a person is engaged in the business as a dealer under paragraph (a) of this section is a fact-specific inquiry. Selling large numbers of firearms or engaging or offering to engage in frequent transactions may be highly indicative of business activity. However, there is **no minimum**

> **threshold number of firearms purchased or sold** that triggers the licensing requirement. Similarly, there is **no minimum number of transactions** that determines whether a person is "engaged in the business" of dealing in firearms. For example, **even a single firearm transaction or offer to engage in a transaction**, when combined with other evidence (*e.g.*, where a person represents to others a willingness and ability to purchase more firearms for resale), may require a license; whereas, a single isolated firearm transaction without such evidence would not require a license. At all times, the determination of whether a person is engaged in the business of dealing in firearms is based on the totality of the circumstances.

89 Fed. Reg. at 29091 (codified at 27 C.F.R. § 478.13(b)) (emphasis added). In other words, not only are multiple sales not required, "**no actual sales are required**." *Id.* at 29021 (emphasis added). This provision cannot be squared with Congress's command that a person is engaged in the business only if that person "deal[s] in firearms as a regular course of trade" through "the repetitive purchase and resale" of multiple "firearms." 18 U.S.C. § 921(a)(21)(C). Nor can it be squared with Congress's safe-harbor provision, which protects engaging in "sales, exchanges, or purchases of firearms" without a federal firearms license. *Id.* The ATF is reversing by rule Congress's rejection of the pre-FOPA minority rule that the sale of a single firearm could trigger the licensing provisions.

The Final Rule also contradicts unambiguous statutory text by stating: "actual profit is not a requirement of the statute—it is only the predominant intent to earn a profit through the repetitive purchase and resale of firearms that is required." 89 Fed. Reg. at 29045; *see* 27 C.F.R. § 478.13(d)(1). The ATF says that a person may be

"engaged in the business" if the person "repeatedly advertise[s] and display[s] firearms for sale, and therefore demonstrate[s] a predominant intent to earn a profit from repeatedly reselling the firearms purchased, but never actually find[s] a buyer," or otherwise displays such intent merely from their "words or conduct." *Id.* But Congress excluded the need to show "proof of profit" **only** for those "engage[d] in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism," 18 U.S.C. § 921(a)(22), which demonstrates that Congress "intentionally and purposely" manifested an intent to **require proof of profit** for all other cases, *see, e.g.*, *Collins v. Yellen*, 594 U.S. 220, 248 (2021) (citation omitted).

The Final Rule exceeds the ATF's statutory authority to "prescribe only such rules and regulations as are necessary to carry out the provisions" of the GCA, 18 U.S.C. § 926, contradicts the statutory texts, constitutes unlawful arbitrary and capricious agency action, and violates the Constitution several times over.

## III.   The Plaintiffs

**A.** Plaintiff Don Butler is an ordinary, law-abiding resident of Talladega, Alabama, who does not hold a federal firearms license. (Butler Decl. at ¶¶ 2–4, 12 (attached as **Exhibit A**)). He is a member of the NRA. (*Id.* ¶ 6). He is eligible to acquire and possess firearms, (*id.* ¶ 4), and he possesses a personal collection of firearms that he has accumulated over his decades of gun ownership, (*id.* ¶ 7). He occasionally buys, trades, and sells firearms through unlicensed private sales to

enhance his personal collection, which he maintains principally for personal protection. (*Id.* ¶ 8). And he has done so many times throughout his decades of gun ownership. (*Id.* ¶ 9). By selling or trading guns, he can free up funding to acquire newer or more advanced models. (*Id.* ¶ 8). Plaintiff Butler also has engaged in informal marketing and advertising conduct typical of any ordinary transaction, including communicating his willingness to trade or sell a firearm in his possession. (*Id.* ¶¶ 11, 16).

Plaintiff Butler intends to continue occasionally participating in private, unlicensed firearms transactions, and he would do so but for his credible fear of enforcement proceedings under the Final Rule. (*Id.* ¶¶ 15, 17). Absent immediate relief, Plaintiff Butler will be forced either to cease his protected conduct or obtain a costly and burdensome federal firearms license. (*Id.* ¶ 17).

**B.** Plaintiff David Glidewell's situation is similar to Plaintiff Butler's. (Glidewell Decl. (attached as **Exhibit B**)). Plaintiff Glidewell is an ordinary, law-abiding resident of Ragland, Alabama, who does not possess a federal firearms license. (*Id.* ¶¶ 2, 12). He also occasionally buys, trades, or sells firearms through unlicensed private sales to enhance his personal collection which he maintains principally for personal protection, (*id.* ¶ 7), and he has done so many times, (*id.* ¶ 8). Plaintiff Glidewell also has engaged in informal marketing and advertising conduct typical of any ordinary transaction, including communicating that he might

be willing to buy, trade, or sell additional firearms in the future. (*Id.* ¶¶ 10, 11, 16). And, like Plaintiff Butler, Plaintiff Glidewell would continue his occasional participation in private, unlicensed firearms transactions but for his credible fear of enforcement proceedings under the Final Rule. (*Id.* ¶¶ 15, 17). Absent immediate relief, Plaintiff Glidewell will be forced either to cease his protected conduct or obtain a costly and burdensome federal firearms license. (*Id.* ¶ 17).

**C.** Plaintiff NRA is America's oldest civil rights organization and is widely recognized as America's foremost defendant of Second Amendment rights and statutory firearms protections. (Doc. 1 ¶ 25).[5] The NRA has been advocating for firearms rights and preserving and defending the rights of its millions of members for decades, including through litigation on behalf of its members. (Doc 1 ¶ 26). Many NRA members, including Plaintiffs Butler and Glidewell among thousands more, engage in private transactions involving firearms that are protected by federal statute and the Second Amendment, and would continue to do so, but for the Final Rule hindering and prohibiting their ability and freedom to do so and the credible threat of facing enforcement proceedings under the Final Rule. (*Id.* ¶¶ 26–30). Protecting the NRA's members against the injuries they are suffering on account of the Final Rule is germane to the NRA's purpose of defending the fundamental rights

---

[5] *See A Brief History of the NRA*, Nat'l Rifle Ass'n [link] (last visited Aug. 13, 2024).

of its members, (*id.* ¶ 26), and the NRA is committed to seeking relief on behalf of its members through this lawsuit, (*id.* ¶ 30).

## LEGAL STANDARD

Plaintiffs are entitled to a preliminary injunction when they establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Id.* at 1232. "Where the balance of the equities weighs heavily in favor of granting the injunction, the movant need only show a substantial case on the merits." *Id.* (cleaned up). The third and fourth elements "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Preliminary injunctions preserve the positions of the parties until a trial on the merits can be held. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). In ruling on a motion for preliminary injunction, "all of the well-pleaded allegations [in the movant's] complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true." *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976); *see also Levi Strauss & Co. v. Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir.

1995) (in considering preliminary injunction motion, courts may "rely on affidavits and hearsay materials" that might not be permitted at later stages of litigation).

## ARGUMENT

### I.     Plaintiffs are likely to succeed on the merits.

#### A.     Plaintiffs have Article III standing to pursue each of their claims.

The individual Plaintiffs and the NRA have standing to pursue their claims. To have standing, a litigant must show "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). Laws "that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements," and in those cases "standing is usually easy to establish." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). The Plaintiffs unquestionably satisfy standing requirements.

#### 1.     The individual Plaintiffs have standing.

Plaintiffs Butler and Glidewell seek to engage in occasional private firearms transactions for the purpose of enhancing their personal collections, which they maintain for personal protection. (Butler Decl. ¶¶ 8, 15, 17; Glidewell Decl. ¶¶ 7, 15, 17). Each also seeks to engage in the informal marketing and negotiation activities typical of such transactions. (Butler Decl. ¶¶ 11, 16; Glidewell Decl. ¶¶ 10, 11, 16). And the Final Rule subjects them to burdensome and costly compliance

costs. (Butler Decl. ¶ 17; Glidewell Decl. ¶ 17). Their intended conduct confers standing to pursue each of Plaintiff's claims.

a. *Injury in Fact.* In a pre-enforcement challenge, "[a] plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct **arguably** affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Baughcum*, 92 F.4th at 1031 (quoting *SBA List*, 573 U.S. at 159) (emphasis added); *see also SBA List*, 573 U.S. at 162 (holding plaintiffs showed injury because their conduct was "arguably . . . proscribed"). Those requirements are met here.

First, Plaintiffs Butler and Glidewell have a protected statutory interest in their proposed conduct because federal statute exempts from the scope of federal dealer regulations "a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." 18 U.S.C. § 921(a)(21)(C). They also have protected constitutional interests in their conduct. *See infra* at 48–58 (demonstrating entitlement to relief on Fifth Amendment, Second Amendment, and separation of powers claims); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) (prohibiting argument that "conflates standing with the merits").

Second, their intended conduct—occasional private transactions for the enhancement of a personal collection maintained for personal protection—is at least "arguably . . . proscribed" by the Final Rule. *SBA List*, 573 U.S. at 162. The Final Rule creates a "fact-specific-inquiry" with "no minimum threshold number of firearms purchased or sold" to trigger dealer requirements, 27 C.F.R. § 478.13(b), which means that "no actual sales are required," 89 Fed. Reg. at 29021. And its redefinition of "engaged in the business," 27 C.F.R. § 478.13(a), when read *in pari materia* with its excluding "personal protection" out of the meaning of personal collection, 27 C.F.R. § 478.11, demonstrates that "occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection" maintained for personal protection triggers liability under the Final Rule. To read all "occasional sales" as falling outside of the Final Rule's scope—as necessary to defeat standing— would render Section 478.13(a)'s language about some "occasional sales" entirely superfluous. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 129 (2018) (rejecting interpretation that would render "an entire subparagraph meaningless"); Antonin Scalia & Bryan Garner, Reading Law 174 (2012). And, under the *expressio unius* canon, the Final Rule's exclusion of some occasional sales from its scope (those not pertaining to personal protection) shows that other occasional sales (those for personal protection, as Plaintiffs Butler and Glidewell seek to do) are prohibited by the Final Rule. *Christian Coal. of Fla. Inc. v. United States*, 662 F.3d 1182, 1193

32

(11th Cir. 2011); Reading Law 107. Additionally, their concomitant marketing and negotiation activities, along with prospective sales, will trigger the Final Rule's "presumptions" of liability. 27 C.F.R. § 478.13(c); 27 C.F.R. § 478.13(d)(2). Their conduct is proscribed by the Final Rule.

Third, there is a credible threat of enforcement of the Final Rule against Plaintiffs Butler and Glidewell, which is a "quite forgiving" test. *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1305 (11th Cir. 2017) (*en banc*) (citation omitted). The federal government has "vigorously defended" the Final Rule in court, which raises an inference of "intent to enforce." *Id.*; *see* No. 2:24-cv-00089-Z (N.D. Tex.) (vigorously defending the Final Rule). The federal government has generally announced its "intent to enforce the Final Rule." *Texas*, 2024 WL 2967340, at *4. And, indeed, the federal government **has** enforced it against a citizen who surrendered his federal firearms license, transferred his business inventory to his personal collection, and then sold his firearms to others to liquidate his collection and recoup his investment. *See* Decl. of Erich M. Pratt, ECF No. 16-4 ¶¶ 31–40, No. 2:24-cv-00089-Z (N.D. Tex.). The individual Plaintiffs hold an "objectively reasonable" fear of facing enforcement proceedings under the Final Rule. *Wollschlaeger*, 848 F.3d at 1306. The Plaintiffs have shown an imminent prospective injury through anticipated enforcement. *SBA List*, 573 U.S. at 159.

Plaintiffs Butler and Glidewell also have shown prospective injuries through compliance costs. The "lost time" and money associated with trying to obtain a federal firearms license is a concrete, tangible, and certainly impending injury. *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021); *see also Texas v. United States*, 945 F.3d 355, 381 (5th Cir. 2019) ("[T]he time and money spent complying with the statute . . . constitutes the plaintiffs' injury."), *reversed on other grounds*, 593 U.S. 659 (2021). Similarly, the Final Rule's forcing the Plaintiffs to undergo the burdens of obtaining and maintaining a federal firearms license is also sufficient for standing, just as "imposition of [a] burden" associated with casting a vote suffices. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351–52 (11th Cir. 2009).

**b. *Traceability.*** The Plaintiffs' showing that the Final Rule "forbid[s] some action by" them also satisfies traceability. *FDA*, 602 U.S. at 382. The Defendants promulgated the Final Rule and are charged with its enforcement. 18 U.S.C. § 926; 28 U.S.C. § 599A(b)(1), (c)(1); 28 C.F.R. § 0.130(a)(1)–(2) (authority to administer and enforce federal firearms laws delegated to the ATF). The Plaintiffs' injuries thus "result[] from the defendant[s'] action." *Baughcum*, 92 F.4th at 1032.

**c. *Redressability.*** The Plaintiffs' injuries would be "redressed by the requested judicial relief": injunctive relief preliminarily and permanently barring enforcement of the Final Rule and a later order setting aside the Final Rule under the

Administrative Procedure Act. *Thole v. U.S. Bank, N.A.*, 590 U.S. 538, 540 (2020); *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 213–14 (4th Cir. 2020) (holding redressability satisfied "if a favorable outcome would repeal the 'burdens' on" protected conduct).

### 2.    The NRA has associational standing.

The NRA has standing to enforce the rights of its members because "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to [the NRA's] purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Greater Birmingham Ministries v. Sec'y of State*, 992 F.3d 1299, 1316 (11th Cir. 2021) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

The standing of Plaintiffs Butler and Glidewell (both NRA members) satisfies the NRA's membership-standing inquiry. *See Baughcum*, 92 F.4th at 1031 (holding that firearms rights organization had standing to sue on behalf of its members based on the standing of "the individual plaintiffs" in the case). As the Supreme Court and Eleventh Circuit have repeatedly recognized, plaintiffs need only show that "at least one identified member" has standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1163 (11th

Cir. 2008). And, of course, many other NRA members face credible threats of enforcement under the Final Rule. (Doc. 1 ¶ 26–30).

Plaintiffs also easily satisfy the other elements of associational standing. Protecting the statutory and constitutional firearms rights of its members are germane to the NRA's purpose. (*Id.* ¶ 26). And there is no basis to require its other members to participate in this case that raises administrative and constitutoinal challenges and seeks declaratory and injunctive relief. *See Greater Birmingham Ministries*, 992 F.3d at 1316; *Baughcum*, 92 F.4th at 1031. The individual Plaintiffs and the NRA have standing to assert each of their claims and to seek both individualized and membership-based relief.

### B.   Plaintiffs are likely to succeed on the merits of their APA claim that the ATF exceeded its statutory authority (Count I).

Plaintiffs are likely to prevail on their claim that the Final Rule exceeds the ATF's statutory authority and jurisdiction. Courts must "hold unlawful and set aside agency action" that is "in excess of statutory . . . authority." 5 U.S.C. § 706(2)(A); *see, e.g.*, *Cargill*, 602 U.S. at 429 (affirming judgment of the Fifth Circuit setting aside the ATF's bump-stock rule). The ATF must operate within the statutory text's existing limits—any regulation that conflicts with unambiguous statutory text is unlawful. *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 325 (2014) ("An agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting

36

unambiguous statutory terms.").[6] And in all cases, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority," *Loper Bright Enters.*, 144 S. Ct. at 2273, and a regulation that does not reflect "the best reading of the statute" is unlawful, *id.* at 2266.

The Northern District of Texas has already determined that "the Final Rule clashes with the text of" Congress's unambiguous statutory enactments and exceeds the ATF's authority. *Texas*, 2024 WL 2967340, at *7. That court's analysis is correct and should be followed here. The Final Rule contradicts unambiguous statutory text in six distinct ways.

**1.** The Final Rule conflicts with unambiguous statutory text by its assertion that "there is no minimum threshold number of firearms purchased or sold that triggers the licensing requirement." 27 C.F.R. § 478.13(b); *see also id.* § 478.13(d)(1). Indeed, under the Final Rule, "a single firearm transaction, or offer to engage in a transaction," could be sufficient to require a federal firearms license. 89

---

[6] "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *see also City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) (explaining that "for agencies charged with administering congressional statutes," "their power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires").

Fed. Reg. at 28976. The ATF goes so far as to say that "no actual sales are required if the intent element is met." *Id.* at 29021.

Congress disagreed. It defined "engaged in the business" to require "the **repetitive** purchase **and resale** of firearms." 18 U.S.C. § 921(a)(21)(C) (emphasis added). It included safe-harbor language that protects engagement even multiple transactions by exempting "a person who makes **occasional sales**, **exchanges**, or **purchases** of firearms for the enhancement of a personal collection or for a hobby." *Id.* (emphasis added). And it repeatedly used plural terms or phrases that contemplate habitual, repetitive conduct. *Id.* Even the ATF acknowledged in its 1979 Notice of Proposed Rulemaking that "[t]he phrase ['engaged in the business'] clearly connotes an element of continual or habitual practice." 44 Fed. Reg. at 75186. And Congress's 1986 enactment of the FOPA rejected earlier judicial interpretations that affirmed convictions based on single sales. *See Swinton*, 521 F.2d at 1258. Under Congress's manifest legislative will, only repeated and habitual purchasing and reselling can evince an intent "to predominantly earn a profit," 18 U.S.C. § 921(a)(21)(C), and the ATF violated unambiguous statutory text by providing that a single sale, **or no sale at all**, triggers licensing requirements.

**2.** The Final Rule nullifies the government's statutory burden to prove "actual profit." According to the ATF, "actual profit is not a requirement of the statute," and mere "intent to earn a profit" is enough to require a license. 89 Fed. Reg. at 29045.

So, ATF says, "a person may repeatedly advertise and display firearms for sale, and therefore demonstrate a predominant intent to earn a profit from repeatedly reselling the firearms purchased, but never actually find a buyer." *Id.*; 27 C.F.R. § 478.13(d)(1) (no "pecuniary gain" needed to have "intent to profit").

That nullification contradicts unambiguous statutory text. In the definition of "to predominantly earn a profit," Congress legislated "that proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for **criminal purposes or terrorism**." 18 U.S.C. § 921(a)(22) (emphasis added). Under the *expressio unius* cannon, "[t]he expression of one thing implies the exclusion of others." Reading Law 107. The express exemption of the need to prove profit in some contexts implies that, in all other contexts, proof of profit is required. The Court must presume "that Congress acts intentionally and purposely in the disparate inclusion or exclusion," *Collins*, 594 U.S. at 248, including its exclusion of only **some** contexts from the proof-of-profit requirement. That is confirmed by the canon against surplusage: if proof of profit **never** was required, then Congress's excluding the need to prove profit in cases involving "repetitive purchase and disposition of firearms for criminal purposes or terrorism" would be mere surplusage. Reading Law 174; *see also United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used.").

**3.** The Final Rule also eradicates the safe-harbor provision found in Section 921(a)(21)(C), which provides that "[t]he term 'engaged in the business' . . . shall not include a person who makes occasional sales, exchanges, or purchases of firearms **for the enhancement of a personal collection** or for a hobby, or who sells all or part of his personal collection of firearms." (emphasis added).

When Congress added this provision in 1986, it expressly sought "to reaffirm the intent of the Congress" not to unduly burden "the acquisition, possession, or use of firearms" for "the purpose of hunting, trapshooting, target shooting, **personal protection**, or any other lawful activity." 100 Stat. at 449 (emphasis added). While nothing in the statute limits the scope of the statutory term "personal collection," the Final Rule arbitrarily excludes "firearms accumulated . . . for personal protection" from the definition of a "personal collection." 27 C.F.R. § 478.11 (definition of "Personal collection"). An individual "who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection" maintained for personal protection is acting unlawfully under the Final Rule, even though that conduct is indisputably protected by the governing statutory text and even though (as ATF acknowledged) "two-thirds of Americans report owning firearms primarily for 'defense' or 'protection.'" 89 Fed. Reg. at 29036. The ATF has thus rewritten the safe-harbor provision to **not apply** to a majority of gun owners.

40

The contextually proper, ordinary meaning of the term "personal collection" naturally encompasses firearms accumulated for protection and defense. *Collection*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993) ("[A] number of objects or persons or a quantity of a substance that has been collected or has collected often according to some unifying principle . . . ."). Congress unambiguously intended "occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection" to include accumulation and transactions of firearms for the purposes of self-defense and personal protection, which is why it enacted the FOPA in 1986 to protect "the rights of citizens . . . to keep and bear arms." 100 Stat. at 449. The Final Rule does not reflect a permissible reading—much less "the best reading"—of federal law. *Loper Bright Enters.*, 144 S. Ct. at 2266.

The Final Rule does say that "nothing in this definition shall be construed as precluding a person from lawfully **acquiring** firearms for self-protection or other lawful personal use." 27 C.F.R. § 478.11 (definition of personal collection). But that does not save the Final Rule because the federal statute protects more than just "acquiring" firearms for the enhancement of a personal collection—it protects "sales, exchanges, [and] purchases." 18 U.S.C. § 921(a)(21)(C). In addition to the confusion caused by the Final Rule's contradictory language that will deter even acquisitions, the Plaintiffs and the NRA's members cannot sell or trade firearms for

the purpose of enhancing a personal collection maintained for personal protection, even though Congress protected those acts.

**4.** The Final Rule also violates unambiguous statutory text by creating three sets of presumptions based on non-exhaustive criteria that doubtlessly will infect administrative, civil, **and** criminal proceedings. *See* 27 C.F.R. § 478.13(c), (d)(2), (e); *see also id.* § 478.13(g) (providing that "the activities" supporting presumptions are "not exhaustive").

As for the two presumptions of guilt, *id.* § 478.13(c), (d)(2), which the ATF says a civilian can "rebut" only with "reliable evidence," *id.* § 478.13(f), the ATF violates Congress's obvious intention to uphold "the presumption of innocence," which is a "basic component of a fair trial under our system of criminal justice," *Estelle*, 425 U.S. at 503, especially because any other reading places the statute's "constitutionality in doubt," Reading Law 247. And the presumption of lawfulness, 27 C.F.R. § 478.13(e), violates the text of the safe-harbor provision, which declares that covered acts are conclusively lawful, 18 U.S.C. § 921(a)(21)(c).

The presumptions also contradict statutory text in other ways. First, they trigger presumptive liability based on lawful conduct. One of the "engaged in the business" presumption criteria triggers liability if the person even once "[r]esells or offers for resale firearms" with "a willingness to purchase and resell additional firearms," 27 C.F.R. § 478.13(c)(1), despite Congress's requirement of multiple,

"repetitive" transactions. 18 U.S.C. § 921(a)(21)(C). Many of the "intent to predominantly earn a profit" presumption criteria trigger liability in the absence of actual profit or actual transactions, which violates Congress's requirements of proof of profit in most contexts and actual, repetitive "sale[s] or disposition[s]." *Compare, e.g.*, 27 C.F.R. § 478.13(d)(2)(i) (referencing "advertise[ment]," "market[ing]," and "promot[ion]" without regard to profit), *with* 18 U.S.C. § 921(a)(22).

The Final Rule also says that these presumptions of guilt "shall not apply to any criminal case." 27 C.F.R. § 478.13(h). If so, the Final Rule violates the "chameleon" canon barring construction of a statute that "acquire[s] different meanings when presented in different contexts." *Maryland v. EPA*, 958 F.3d 1185, 1202 (D.C. Cir. 2020). But the ATF immediately invites courts to "use[]" the presumptions "in criminal cases, for example, when instructing juries regarding permissible inferences," 27 C.F.R. § 478.13(h), thus begging courts to violate the presumption of innocence in a way that Congress cannot have intended. Either way, the ATF's reading cannot be squared with the unambiguous statutory text of the GCA as amended by the FOPA and the BSCA.

**5.** The Final Rule's fifth conflict is the ATF's ultra vires choice to redefine unambiguous terms that Congress already defined, such as "dealer," "engaged in the business," and "to predominantly earn a profit." *Contrast* 18 U.S.C. § 921(a)(11)(a), (21)(C), (22), *with* 27 C.F.R. §§ 478.11, 478.13. The Supreme Court has held that a

43

"statute's unambiguous . . . definition . . . precludes [an agency] from more expansively interpreting that term." *Dig. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 169 (2018). Nobody can question that the ATF's provisions are more expansive. The ATF itself has long acknowledged that Congress's definition of "engaged in the business" is "adequate for enforcement purposes" 44 Fed. Reg. at 75187 (Dec. 19, 1979), and "adequately . . . delineat[es] the activity requiring licensing," 53 Fed. Reg. at 10481 (Mar. 31, 1988). The ATF expansively redefined these terms not to administer the statute or to resolve ambiguity, but rather to radically expand the scope of federal criminal law to achieve administrative policy preferences. Legislation by executive fiat violates the Constitution's separation of powers. U.S. Const. Art. I, § 1 (vesting "[a]ll legislative powers" exclusively in Congress). It also violates precedent. *See Cargill*, 602 U.S. at 429 (Alito, J., concurring) ("There is a simple remedy . . . . Congress can act."). This Court should say so.

**6.** The Court should apply the "major questions doctrine," which requires the ATF to show "clear congressional authorization" to promulgate the Final Rule. *West Virginia v. EPA*, 597 U.S. 697, 723 (2022). The Final Rule acknowledges that its evisceration of the safe-harbor provision will affect "about two-thirds of Americans," and the Final Rule risks making all of them felons. 89 Fed. Reg. at 29036. It also acknowledges that the Final Rule will impose, at a minimum, over one-hundred million dollars of costs on private citizens forced to acquire and

maintain licenses and on public entities administering the licensing system. *Id.* at 29074–82. Commenters more accurately estimate that these costs could exceed one billion annually. Public Comment of Gun Owners of America, *et al.*, on the ATF's Proposed Rule 2022R-17 at 79 (Dec. 11, 2023) [link]. These are precisely the questions of "vast economic and political significance" that trigger the need for clear authorization and, more appropriately, should be addressed by Congress in the first instance. *West Virginia*, 597 U.S. at 716. Although the Final Rule exceeds the ATF's authority without regard to the major questions doctrine, application of the doctrine further demonstrates that Plaintiffs are likely to succeed on the merits of their claim.

* * *

The statutory text is not ambiguous: ordinary, law-abiding citizens can occasionally engage in private firearms transactions without risking prosecution as unlicensed "dealers." The Final Rule violates the statutory text and exceeds the ATF's statutory authority.

Even if the statutory text were ambiguous in some way that could support the ATF's (mis)readings, the rule of lenity would compel the Court to conclude that the ATF exceeded its statutory authority. *United States v. Phifer*, 909 F.3d 372, 383–84 (11th Cir. 2018) (explaining that the rule requires courts to "resolve doubts in favor of the defendant"). The Final Rule imposes civil and criminal penalties, and thus only statutory text **unambiguously supporting** the ATF's reading could sustain it.

*Id.*; *see also VanDerStok*, 86 F.4th at 196 n.26 (holding that even if the ATF were interpreting an ambiguous statute "we would nevertheless reach the same conclusion here because under the rule of lenity, we construe ambiguous statutes against imposing criminal liability—precisely what ATF has done here"). Under no circumstance is the ATF's interpretation entitled to deference. *Loper Bright Enters.*, 144 S. Ct. at 2273. Nor does the ATF wield "the power to write new federal criminal laws." *United States v. Davis*, 588 U.S. 445, 448 (2019). Plaintiffs are thus likely to succeed on the merits of their APA claim that the ATF exceeded its statutory authority and jurisdiction by promulgating the Final Rule.

### C.  The Plaintiffs are likely to succeed on the merits of their APA claim that the Final Rule is arbitrary and capricious (Count II).

The Plaintiffs are likely to prevail on the merits of their claim that the Final Rule constitutes arbitrary and capricious agency action because the ATF radically departed from its prior practice. Just as when an agency exceeds its statutory authority, courts must "hold unlawful and set aside agency action . . . found to be . . . arbitrary [and] capricious." 5 U.S.C. § 706(a)(2).

Departure from prior practice renders agency action arbitrary and capricious unless the agency can show: (1) "awareness that it *is* changing [its] position," (2) that "the new policy is permissible under the statute," (3) that the agency "*believes*" the new position is better, and (4) "good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009). Moreover, agency action is

arbitrary and capricious if the agency fails to account for legitimate interests in reliance on the legal framework it altered. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 32–33 (2020). The Final Rule violates both of these limitations on the rulemaking power of an executive agency.

The Final Rule represents a radical, 180-degree change in the ATF's longstanding position regarding the legality of private, non-commercial transactions involving firearms and when a private citizen must obtain a federal firearms license. The ATF has long-since declared that Congress's "definition" of "engaged in the business" in the FOPA needed no "examples" because the statute itself "expressly delineat[ed] the activity requiring licensing from that of a firearms collector not subject to licensing." 53 Fed. Reg. at 10481 (Mar. 31, 1988). Even before the FOPA, the ATF's position was that the phrase "engaged in the business" was "adequate for enforcement purposes," without further definition. 44 Fed. Reg. at 75187 (Dec. 19, 1979). The ATF has now retracted its position that Congress's enactments adequately defined the scope of federal licensing requirements, and the ATF failed to provide a sufficiently reasoned explanation for this arbitrary shift. And because the Final Rule constitutes departure from prior practice, the ATF must demonstrate that "the new policy is permissible under the statute." *FCC*, 556 U.S. at 515. For the reasons explained in Section II(B), *supra*, the Final Rule is not a permissible construction of Congress's unambiguous statutory enactments.

Nor has the ATF meaningfully accounted for legitimate interests in reliance on the existing legal landscape. *See Dep't of Homeland Sec.*, 591 U.S. at 32–33. For example, the ATF acknowledged that "about two-thirds of Americans report owning firearms primarily for 'defense' or 'protection,'" 89 Fed. Reg. at 29036, but then failed to address why its disruption of all those collectors' reliance interests in ATF's prior position is suitable or permissible, merely claiming (wrongly) that its "definition is consistent with how the GCA views a 'collection,'" *id.* at 29038. The Court should also hold that Plaintiffs are likely to succeed on their claim that the Final Rule constitutes unlawfully arbitrary and capricious agency action.

### D.     The Plaintiffs are likely to succeed on the merits of their claim that the Final Rule violates the void-for-vagueness doctrine (Count III).

Plaintiffs are similarly likely to succeed on the merits of their claim that the Final Rule is unconstitutionally void for vagueness under the Fifth Amendment. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of the conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see also id.* (indicating that unconstitutional vagueness applies to agency regulations). A law imposing criminal liability is unconstitutionally vague if "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Grounded in both due process and separation of powers, the void-for-vagueness doctrine rests on the ground that

48

"[o]nly the people's elected representatives in the legislature are authorized to 'make an act a crime.'" *Davis*, 588 U.S. at 451 (2019). Vague laws "hand responsibility for defining crimes to" those who are not politically "[]accountable." *Id.*

The Final Rule imposes presumptions of criminal liability based on criteria that are "not exhaustive," "rebut[able]," and ultimately based on an indeterminate "fact-specific inquiry," 27 C.F.R. § 478.13(b)–(f), and thus creates "more unpredictability and arbitrariness than the Due Process Clause tolerates," *Sessions v. Dimaya*, 584 U.S. 148, 162 (2018) (citation and quotation marks omitted). The Final Rule is unconstitutionally vague because its various sets of rebuttable presumptions, based on non-exhaustive criteria, that ultimately inform a fact-specific inquiry, and only on a case-by-case basis, do not provide fair notice of when a citizen acts in violation of the federal criminal laws governing firearms dealers.

The ATF has announced that a law-abiding citizen **might** be unlawfully engaged as a dealer based on statutorily legal conduct—such as offering to sell a firearm, advertising the firearm, or establishing a business entity—unless the citizen rebuts the presumption with so-called "reliable evidence," which is no standard at all. The ATF acknowledged the "general sentiment from commenters" that the Final Rule's presumptions are "overbroad, would capture too many permissible sales by collectors, and are not valid indicators of unlawful activity or activity showing the person is an unlicensed gun dealer." 89 Fed. Reg. at 29023. And it responds to those

well-founded concerns only by retreating to the presumptions being "rebuttable" through "reliable evidence to the contrary," *id.* at 29024, which only further entrenches the Final Rule in vagueness and uncertainty.

The Final Rule fails to provide "ordinary people fair notice of the conduct it punishes." *Johnson*, 576 U.S. at 595. Based on the same indeterminacies, it also unconstitutionally grants "arbitrary enforcement" power to administrative and prosecutorial officials. *Id.* "The law exists to tell both the people *and* government officials what they can do." *VanDerStok*, 86 F.4th at 209 (Oldham, J., concurring) (concluding that the ATF's "eight-factor balancing test" for unfinished frames and receivers was unconstitutionally vague). When the law "provides no guidance to anyone," as is the case here, it "is void for vagueness." *Id.*

### E.    The Plaintiffs are likely to succeed on the merits of their claim that the Final Rule violates the Second Amendment (Count IV).

The Plaintiffs are likely to succeed on the merits of their claim that the Final Rule violates the Second Amendment. In *Bruen*, the Supreme Court reiterated the "standard for applying the Second Amendment": "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and a law burdening protected conduct is unconstitutional unless the government "demonstrate[s] that the regulation is consistent with this Nation's historical tradition of firearm regulation." 597 U.S. at 17, 24. The Court reaffirmed this standard in *United States v. Rahimi*, 144 S. Ct. 1889, 1898–99 (2024), upholding

50

a "narrow" federal criminal statute supported by comparable Founding Era laws, *id.* at 1902–03. The only way for the government to meet its burden is to "affirmatively prove"—with "historical evidence"—that an "enduring," "representative," and "comparable tradition of regulation" justifies the challenged law. *Bruen*, 597 U.S. at 19, 24, 27, 30, 69. The plain text of the Second Amendment covers the unlicensed buying, trading, and selling of firearms, and the ATF cannot meet its burden to justify the law based on a Founding Era historical tradition.

The Second Amendment's plain text covers the Plaintiffs' proposed conduct: to buy, sell, trade, and accumulate arms for purposes of self-defense without a federal firearms license.[7] The Second Amendment's text "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). That guarantee "implies a corresponding right to acquire" arms for self-defense. *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011); *Drummond v. Robinson*, 9 F.4th 217, 227 (3d Cir. 2021) (following *Ezell*); *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (*en banc*) (same). It also implies the right to engage in non-commercial sales,

---

[7] The ATF cannot dispute that Plaintiffs are part of "the people." *Heller*, 554 U.S. at 570, 587 (explaining that the Second Amendment "unambiguously refers to all members of the political community, not an unspecified subset"). Nor can the ATF dispute that "firearms" the Plaintiffs seek to acquire are covered "arms." *Bruen*, 597 U.S. at 28 ("[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms.").

transfers, trades, or disposals of firearms for the purpose of acquiring other arms, because the right "to keep . . . Arms" is "infringed" by even a temporary or non-total deprivation such as the burden of acquiring a federal firearms license. 1 Samuel Johnson, Dictionary of the English Language 1101 (4th ed. 1773) (defining "infringe" as "[t]o destroy; to **hinder**" (emphasis added)), *id.* at 1007 (defining "to hinder" as "to cause impediment"); 1 Noah Webster, American Dictionary of the English Language 116 (1828) (defining "infringe" as "[t]o destroy or **hinder**" (emphasis added)); *id.* at 99 (defining "hinder" as "to obstruct" and "[t]o interpose obstacles or impediments"); *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022) (relying on similar definitions). The Second Amendment textually forbids the hindrance of protected conduct "in the smallest degree." *Heller*, 554 U.S. at 612 (quoting *Nunn v. State*, 1 Ga. 243, 251 (1846)).[8]

Because the Final Rule prohibits textually protected conduct, the Final Rule is unconstitutional unless the ATF "demonstrate[s] that the regulation is consistent with this Nation's historical tradition of [arms] regulation." *Bruen*, 597 U.S. at 17. It must do so by pointing to a "comparable tradition of regulation" from the

---

[8] The question of whether the Second Amendment protects the right to "acquire" firearms for self-defense is squarely before the *en banc* Eleventh Circuit in *NRA v. Comm'r, Fla. Dep't of Law Enforcement*, No. 21-12314. Even the since-vacated panel opinion in that case assumed that the Second Amendment "covers 18-to-20-year-olds when they buy firearms." 61 F.4th 1317, 1325 (11th Cir. 2023).

Founding Era. *See id.* at 27; *see also id.* at 37 (observing that the meaning of the Second Amendment is "pegged to the public understanding of the right when the Bill of Rights was adopted in 1791"). In the Final Rule, the ATF tried to justify its prohibitions with a motley assortment of incomparable historical laws that do not support the Final Rule. This Court should conclude that the ATF's purported analogues are insufficient under *Bruen* and cannot justify the Final Rule.

This is a "straightforward" case. *Bruen*, 597 U.S. at 26. The Final Rule is a self-evident effort to "reduce gun violence." 89 Fed. Reg. at 28971, 28984–85. Because firearm violence is an age-old societal problem and the Final Rule's licensure requirements are rules that "the Founders themselves could have adopted to confront that problem," the absence "of a distinctly similar historical regulation" is strong evidence of the Final Rule's unconstitutionality. *Bruen*, 597 U.S. at 26–27. Yet, the ATF points to no Founding Era historical evidence prohibiting private citizens from engaging in private, non-commercial firearms transactions unless they comply with strict licensing, recordkeeping, and background-check requirements. Nor does the ATF point to evidence of such a tradition even for commercial transactions. Instead, they point to a few examples of dissimilar regulations that cannot justify the Final Rule.

**1.** The ATF begins its preemptory defense by citing *Heller*'s dicta that the Court was not "cast[ing] doubt" on "laws imposing conditions and qualifications on

the commercial sale of arms." 89 Fed. Reg. at 28990 (quoting *Heller*, 554 U.S. at 626–27 & n.26). Neither *Heller*, nor *Bruen*, nor *Rahimi* permit the upholding of a burdensome firearm regulation without regard to historical justification. *See Heller*, 554 U.S. at 635 (reserving opportunity to "expound upon the historical justifications" for any exceptions to the right to keep and bear arms); *Bruen*, 597 U.S. at 24 (explaining that the text-and-history standard governs all Second Amendment challenges); *Rahimi*, 144 S. Ct. at 1896 (same). The ATF must "affirmatively prove" their case based on "historical evidence." *Bruen*, 597 U.S. at 19, 24. The private transactions burdened by the Final Rule, in any event, are not "commercial." *Commercial*, Black's Law Dictionary (12th ed. 2024) ("Of, relating to, or involving the selling of goods or services for profit."). And *Heller*'s dicta does not apply to the private, noncommercial buying or trading of firearms. *Hirschfeld v. ATF*, 5 F.4th 407, 416 (4th Cir. 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021).

The Eleventh Circuit has upheld a federal law preventing unlicensed interstate transfers, relying in part on *Heller*'s commercial dicta. *United States v. Focia*, 869 F.3d 1269, 1286 (11th Cir. 2017) (upholding 18 U.S.C. § 922(a)(5) because it "only minimally affects the ability to acquire a firearm"). But *Focia*'s continuing vitality is questionable after *Bruen* and *Rahimi*—which make clear that "the severity of the

law's burden" is irrelevant, *Bruen*, 597 U.S. at 18; *Rahimi*, 144 S. Ct. at 1898–99—and *Focia* should not control here.[9]

**2.** None of the ATF's cited historical evidence demonstrates a "comparable tradition of regulation" from the Founding Era. *Bruen*, 597 U.S. at 27.

First, the ATF cites a 1794 law that, "for a limited period," prohibited the "export" of weapons out of the United States. 89 Fed. Reg. at 29002 (citing Act of May 22, 1794, 1 Stat. 369, ch. 33, § 1). But this law does not impose comparable burdens because, unlike the Final Rule, it did not prohibit domestic transfers, did not prohibit the acquisition of arms, and it only applied for a one-year period. It also has an incomparable justification: its purpose was economic, to increase the number of arms in America. The Final Rule serves a different purpose: to reduce gun violence by restricting private transactions in firearms.

---

[9] The Eleventh Circuit recently held that *Bruen* did not abrogate prior caselaw upholding the felon-in-possession ban as presumptively lawful. *See United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024) (holding that *Bruen* did not abrogate *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010)). *Dubois* relied in large part on the mistaken, pre-*Rahimi* assumption that the Second Amendment protects only "law-abiding," "qualified," and "responsible" individuals. *Id.* at 1292–94. And since *Dubois*, the Supreme Court decided *Rahimi*, which rejected the principle underlying *Dubois* and *Rozier* that the Second Amendment is limited to "responsible" citizens. *Rahimi*, 144 S. Ct. at 1903; *id.* at 1944 (Thomas, J., dissenting) ("Not a single Member of the Court adopts the Government's theory . . . that the Second Amendment allows Congress to disarm anyone who is not 'responsible' and 'law-abiding.'"). *Dubois* does not help the ATF.

55

Second, the ATF cites the Ninth Circuit's historical analysis in *Teixeira*, 873 F.3d at 685. *See* 89 Fed. Reg. at 69003. But *Teixeira* cited only (1) racist laws banning sales of "firearms or ammunition to Indians" in response to the "threat posed by Indian tribes" and (2) laws that sought to "ensur[e] that the populace was well armed, not on restricting individual stocks of weapons." *Id.* at 685. Neither imposed comparable burdens, as the Final Rule prohibits two-thirds of Americans from engaging in private transactions merely because the firearms in their collections are held for self-defense. Nor do these have a comparable justification: neither sought to "restrict[] individual stocks of weapons" like the Final Rule. *Id.*

Third, the ATF cites some early 1800s firearm barrel "proving" laws. 89 Fed. Reg. at 29003. These laws were product quality and safety measures that sought merely "to ensure that a firearm was adequately manufactured." *Boland v. Bonta*, 662 F. Supp. 3d 1077, 1087 (C.D. Cal. 2023) (rejecting reliance on proving laws), *appeal filed*, No. 23-55276 (9th Cir. Mar. 27, 2023). They cannot justify a broad ban on private firearm transactions seeking to reduce gun violence.

Fourth, the ATF cites various gunpowder storage restrictions, 89 Fed. Reg. at 29003 n.151, which again served the "very different" purpose of "prevent[ing] fire." *Boland*, 662 F. Supp. 3d at 1088. They were rejected by the Supreme Court in *Heller*, 554 U.S. at 632, and likewise cannot justify the burdensome restrictions imposed by the Final Rule here.

And fifth, the ATF cites two laws from 1875 and 1879 that imposed a licensing requirement on dealers of pistols and certain knives. 89 Fed. Reg. at 29003 n.152. But these outlier "late-19th-century" laws are too few and too distant from the Founding to establish a justifying tradition. *Bruen*, 597 U.S. at 66. Nor are they comparable to the Final Rule, which potentially would treat two-thirds of all American citizens as "dealers" should they decide to buy, trade, or sell firearms collected and held personal protection.

The Final Rule burdens textually protected conduct, and the ATF has failed to prove a justifying historical tradition of regulation. The practice of broadly requiring licenses to engage in private transactions involving firearms and imposing strict requirements on those private transactions is a uniquely modern invention "that our ancestors would never have accepted." *Bruen*, 597 U.S. at 30 (citation omitted). The Final Rule is unconstitutional under the Second Amendment.

### F.    Plaintiffs are likely to succeed on the merits of their claim that the Final Rule violates Article I and Article II of the Constitution (Count V).

The Final Rule is legislation by executive fiat, which defies our Nation's system of governance and violates Article I and Article II of the Constitution.

Article I, § 1 of the Constitution provides that "All legislative Powers herein granted shall be vested in a Congress of the United States." Article II, § 1 vests "[t]he Executive power" in the President, whom it directs in § 3 to "take Care that the Law

be faithfully executed." The Final Rule violates these provisions by usurping legislative power and prohibiting conduct protected by congressional enactment and the Constitution. The Supreme Court has made clear that "[o]nly the people's elected representatives in Congress have the power to write new federal criminal laws." *Davis*, 588 U.S. at 447–48. But that is precisely what the ATF has done here— drastically expanding the scope of federal criminal laws governing firearms dealers to include private citizens engaged in constitutionally and statutorily protected conduct. The Court should conclude that the ATF's promulgation of the Final Rule violates our fundamental principles of separation of powers and non-delegation.

* * *

For the reasons above, the Court should conclude that Plaintiffs have demonstrated a substantial likelihood of success on the merits of each of their claims.

## II. Plaintiffs face irreparable harm in the absence of immediate relief.

The individual Plaintiffs and the NRA's members are suffering and will continue to suffer irreparable harm in the forms of unnecessary deprivations of liberty, the loss of other constitutional rights, and unrecoverable compliance costs. Although the injury varies depending on the chosen course of conduct, irreparable harm is unavoidable absent immediate relief.

**A.** The Eleventh Circuit has squarely held that "unnecessary deprivation[s] of liberty clearly constitute[] irreparable harm." *Bogle*, 855 F.2d at 710–11; *see also*

*Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). In other words, a Plaintiff suffering "threat" of "prosecution for crimes that conflict with federal law," such as federal statutory protections or the Constitution, is an irreparable harm. *Ga. Latino All. for Human Rights v. Gov. of Ga.*, 691 F.3d 1250, 1269 (11th Cir. 2012); *see also Farmworker Ass'n of Fla., Inc. v. Moody*, --- F. Supp. 3d ----, 2024 WL 2310150, at *17 (S.D. Fla. 2024) (holding that "a kind of Hobson's choice—between engaging in conduct she views as unconstitutionally proscribed (and facing a credible threat of prosecution under [the challenged law]) and refraining from conduct she believes to be lawful" is "sufficient to establish irreparable harm").

Through enforcement of the Final Rule, the Plaintiffs and NRA's members face imprisonment, fines up to $250,000, or both. 18 U.S.C. § 922(a)(1)(A); *id.* § 924(a)(1)(D); *id.* § 3571(b)(3). They also face administrative and civil penalties, including seizure or forfeiture. 18 U.S.C. § 924(d)(1). By continuing to engage in protected conduct, they are threatened with the loss of liberty. *See* Butler Decl. ¶ 17; Glidewell Decl. ¶ 17. That is irreparable harm.

**B.** Separately from imprisonment, the Final Rule irreparably harms the Plaintiffs and NRA's members by depriving them of other statutory and constitutional rights. Several circuits have held that the loss of Second Amendment rights is presumed to be irreparable harm. *See Baird v. Bonta*, 81 F.4th 1036, 1046

(9th Cir. 2023); *Ezell*, 651 F.3d at 699. The Supreme Court and the Eleventh Circuit have both held that ongoing First Amendment violations always constitute irreparable harms. *Elrod*, 427 U.S. at 373; *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1128 (11th Cir. 2022). Those holdings must also apply to the Second Amendment, which is "not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen*, 597 U.S. at 70 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010)). Absent immediate relief, the Plaintiffs and NRA's members cannot buy, sell, or trade firearms in private transactions despite both statutory and constitutional protections. These deprivations are irreparable harms.

**C.** The Plaintiffs and NRA's members also face irreparable harm in the form of unrecoverable compliance costs. The Eleventh Circuit has long "recognized that unrecoverable monetary loss is an irreparable harm." *Georgia*, 46 F.4th at 1302. And monetary harms caused by the Final Rule are unrecoverable due to federal agencies' sovereign immunity. *See, e.g.*, *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013) (involving Eleventh Amendment immunity of state agency). In fact, "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring in part and in the judgment); *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) (same).

After all, the federal government cannot be sued later for damages incurred now. *W.V. ex rel. Morrisey v. Dep't of the Treasury*, 59 F.4th 1124, 1149 (11th Cir. 2023).

The Final Rule threatens the Plaintiffs and NRA's members with non-speculative, unrecoverable compliance costs. They currently cannot sell any of their firearms in private transactions without threat of enforcement proceedings and presumptions of unlawfulness, which necessarily cause the irreparable harm of lost business opportunities. *See BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (explaining that the "loss of customers" was irreparable harm). The Final Rule also imposes the substantial costs and burdens associated with obtaining a federal firearms license and maintaining compliance with federal regulations governing dealers. To obtain a federal firearms license, an applicant must pay about $230 in item costs for the application, fingerprinting, photograph, and postage. 89 Fed. Reg. at 29075. According to the ATF's figures, an applicant will then spend at least $435.00 during the first year of maintaining a federal firearms license, *id.* at 29076, and up to $926 more each year maintaining that license. *Id.* at 29077. Commenters have shown that these figures are underestimated. *See* GOA Comment, *supra*, at 70–80. But even the ATF's figures demonstrate substantial, unrecoverable compliance costs, which constitute irreparable harm for purposes of a preliminary injunction.

The Plaintiffs and NRA's members certainly face irreparable harm in the forms of imprisonment, penalties, deprivations of freedoms, and compliance costs in the absence of immediate relief.

### III.   The balance of the equities and public interest favor granting Plaintiffs' requested relief.

The equities and public-interest factors merge when the federal government is the defendant. *Nken*, 556 U.S. at 435. Both favor immediate relief here.

There is no public interest in "permit[ting] agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors*, 594 U.S. at 766; *see also, e.g.*, *League of Women Voters of U.S.*, 838 F.3d at 12 ("There is generally no public interest in the perpetuation of unlawful agency action."); *Texas*, 10 F.4th at 560 (same). It likewise is in the public interest to protect citizens' statutory and constitutional rights. *See, e.g.*, *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001) ("civil rights actions vindicate [the] public interest"). And "[c]ongressional intent and statutory purpose can be taken as a statement of public interest," *Johnson v. U.S. Dep't of Agric.*, 734 F.2d 774, 788 (11th Cir. 1984), such that Congress's manifest intent to protect private firearms transactions supports the issuance of immediate relief. The balance of the equities and the public interest unequivocally support granting the Plaintiffs' request for a preliminary injunction to preserve the status quo of their statutory and constitutional rights.

**IV.    Relief should be issued to Plaintiffs and the NRA's members.**

The Plaintiffs respectfully request that the Court enjoin the Defendants from enforcing the Final Rule against the Plaintiffs and the NRA's members. "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017) (declining to stay injunction in non-class case "with respect to respondents and those similarly situated"). The NRA has demonstrated that it has associational standing to seek relief for its members in this case. The Supreme Court has held that, if a membership association has standing "to bring suit on behalf of its members," then "the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Hunt*, 432 U.S. at 343 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (authorizing "an association . . . to invoke the court's remedial powers on behalf of its members")). As the Eleventh Circuit put it, the NRA can "sue on behalf of [its] members." *Baughcum*, 92 F.4th at 1031.

Injunctive relief that covers the NRA's plaintiffs is "necessary to provide complete relief to the *plaintiffs*." *Trump*, 582 U.S. at 579 (Thomas, J., concurring). And federal courts regularly grant or affirm injunctive relief on behalf of an association's members. *See, e.g.*, *Nat'l Ass'n for Gun Rights, Inc. v. Garland*, 697 F. Supp. 3d 601, 634 (N.D. Tex. 2023) ("[T]his injunction covers the Individual

Plaintiffs and their families, the Organizational Plaintiffs and their members, and the downstream customers of any commercial member of an Organizational Plaintiff."); *see also Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023) (referencing that motions panel injunction "covered the customers and members of Maxim Defense and the Firearms Policy Coalition").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter a preliminary injunction that enjoins the Defendants from enforcing the Final Rule against the Plaintiffs and the NRA's members.

Dated: August 15, 2024                    Respectfully submitted,

*/s/ James W. Porter, III*
James W. Porter, III
W. Chadwick Lamar, Jr.
BRADLEY ARANT BOULT CUMMINGS LLP
1819 5th Avenue N.
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
jporter@bradley.com
clamar@bradley.com

John Parker Sweeney (admitted *pro hac vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Telephone: (202) 393-7150
Facsimile: (202) 347-1684
jsweeney@bradley.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2024, the foregoing was served by Federal Express to the following:

Merrick Garland
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530-0001

United States Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530-0001

Steven Dettelbach
Director of the Bureau of Alcohol,
Tobacco, Firearms and Explosives
99 New York Avenue Northeast
Washington, D.C. 20002

Bureau of Alcohol, Tobacco, Firearms
and Explosives
99 New York Avenue Northeast
Washington, D.C. 20002

Prim F. Escalona
United States Attorney for the Northern
District of Alabama
1801 Fourth Avenue North
Birmingham, AL 35203

*/s/ James W. Porter, III*
*Counsel for Plaintiffs*