FILED
2025 Jan-16  AM 11:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

DON BUTLER, *et al.*,

        Plaintiffs,

        v.

MERRICK GARLAND, *in his official capacity as Attorney General of the United States*, *et al.*,

        Defendants.

Case No. 1:24-cv-00975-CLM

Judge Corey L. Maze

---

## MOVANT STATES' OPPOSED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO INTERVENE AS DEFENDANTS

---

# <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

ARGUMENT

I.     MOVANT STATES ARE ENTITLED TO INTERVENE AS OF
RIGHT ......................................................................................................4

      A.    Movant States Have Substantial Interests In The Final Rule...............5

      B.    Existing Parties Will No Longer Adequately Represent Movant
States Interests, And Movant States Timely Intervened In Light
Of That Change ..................................................................................12

CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramski v. United States*,
    573 U.S. 169 (2014)............................................................................2

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
    458 U.S. 592 (1982)............................................................................8

*Berger v. N.C. State Conf. of the NAACP*,
    597 U.S. 179 (2022).........................................................................12

*Biden v. Nebraska*,
    600 U.S. 477 (2023)............................................................................7

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
    595 U.S. 267 (2022).........................................................................13

*Chiles v. Thornburgh*,
    865 F.2d 1197 (11th Cir. 1989) ...................................................5, 12

*Clark v. Putnam County*,
    168 F.3d 458 (11th Cir. 1999) .........................................................14

*Cook Cnty. v. Texas*,
    37 F.4th 1335 (7th Cir. 2022) ..........................................................14

*Georgia v. U.S. Army Corps of Eng'rs*,
    302 F.3d 1242 (11th Cir. 2002) .......................................................13

*Haaland v. Brackeen*,
    599 U.S. 255 (2023)............................................................................8

*Kane Cnty. v. United States*,
    928 F.3d 877 (10th Cir. 2019) .........................................................14

*Massachusetts v. EPA*,
    549 U.S. 497 (2007)............................................................................8

*Massachusetts v. Mellon*,
    262 U.S. 447 (1923)............................................................................8

*Oklahoma v. Castro-Huerta*,
  597 U.S. 629 (2022) ..............................................................................8

*Stansell v. Revolutionary Armed Forces of Colombia*,
  45 F.4th 1340 (11th Cir. 2022) ............................................................4

*Thomas v. Henderson*,
  297 F. Supp. 2d 1311 (S.D. Ala. 2003) ...............................................4

*Va. House of Delegates v. Bethune-Hill*,
  587 U.S. 658 (2019) ..............................................................................5

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
  834 F.3d 562 (5th Cir. 2016) ..............................................................14

*Worlds v. Dep't of Health & Rehab. Servs.*,
  929 F.2d 591 (11th Cir. 1991) ..............................................................5

**Statutes**

18 U.S.C. § 922 ...........................................................................................2

18 U.S.C. § 923 ...........................................................................................2

Ariz. Rev. Stat. Ann. § 44-7852, ............................................................11

Ariz. Rev. Stat. Ann. § 13-3109 ..............................................................11

Ariz. Rev. Stat. Ann. § 13-3118 ..............................................................11

Bipartisan Safer Communities Act, Pub. L. 117-159, 136 Stat. 1313
  (2022) .....................................................................................................3

Colo. Rev. Stat. Ann. § 18-12-112 ..........................................................10

Colo. Rev. Stat. Ann. § 18-12-501 ..........................................................10

Colo. Rev. Stat. Ann. § 24-33.5-424 .......................................................10

Conn. Gen. Stat. § 29-36 ...........................................................................10

Del. Code Ann. tit. 11, § 1448A ..............................................................10

N.J. Stat. Ann. § 2C:58-2 ..........................................................................10

N.J. Stat. Ann. § 2C:58-3 ........................................................................10

**Other Authorities**

Erin G. Andrade et al., *Firearm Laws and Illegal Firearm Flow Between U.S. States*, 88 J. TRAUMA & ACUTE CARE SURG. 752 (2020).........................................................................................10

Brian Knight, *State Gun Policy & Cross-State Externalities: Evidence from Crime Gun Tracing*, 5 AM. ECON. J.: ECON. POL'Y 200 (2013)...................9

NFCTA: CRIME GUNS – VOLUME II (2023) ...............................................9

NFCTA: CRIME GUNS – VOLUME III (2023)........................................9, 10

Fed. R. Civ. P. 24 .......................................................................1, 4, 5, 15

Final Rule, Definition of "Engaged in the Business" as a Dealer in Firearms, 89 Fed. Reg. 28,968 (Apr. 19, 2024)..........................................*passim*

Ellicott C. Matthay et al., *In-State and Interstate Associations Between Gun Shows and Firearm Deaths and Injuries*, 167 ANNALS INTERNAL MED. 837 (2017) ...............................................10

NRA, *President Donald J. Trump Speaks at 2024 NRA Presidential Forum in Harrisburg, PA*, YOUTUBE (Feb. 10, 2024) .......................................13

Gram Slattery, *Trump pledges to 'roll back' Biden gun rules, fire ATF chief at NRA rally*, REUTERS (May 20, 2024)......................................13

Glenn Thrush, *A.T.F. Braces for a Likely Rollback of Its Gun-Control Efforts*, N.Y. TIMES (Dec. 14, 2024)...................................................13

S. Rep. No. 89-1866 (1966) ........................................................................7

## INTRODUCTION

This case challenges a Final Rule that implements Congress's amendments to the Nation's firearms laws. Among other important changes, the Bipartisan Safer Communities Act expanded the category of firearm dealers who must go through a background-check process before they can sell firearms to a would-be customer, and who must retain records of those sales that law enforcement can use to solve violent crimes. Because federal defendants can no longer be counted on to defend the Final Rule, and because elimination of the Final Rule would impose significant harms on Movant States, these 15 Movant States now move to intervene.[1] As courts have previously explained, putative intervenors should be allowed to participate when their timely participation would promote the greater justice and would not harm existing parties.

The basis for intervention is straightforward. The challengers seek final relief that would prevent implementation of the Final Rule across the country, whether in the form of vacatur or an injunction. But granting the challengers that relief would work enormous harms to Movant States' interests, giving Movant States a right to intervene under Rule 24(a). Although the federal defendants previously defended the Final Rule, there is little doubt that will now change: the President-Elect

---

[1] The Movant States seeking to intervene are: New Jersey, Arizona, Colorado, Connecticut, Delaware, Hawai'i, Maryland, Attorney General Dana Nessel on behalf of the People of Michigan, Minnesota, Nevada, North Carolina, Oregon, Rhode Island, Vermont, and Washington.

promised to rescind this Final Rule. Without intervention, Movant States would have no party to represent their interests—and this Court would be deprived of any adequate defense of the Final Rule on the merits. Additionally, this intervention is neither belated nor premature: this dispute is ongoing and this Court has not issued any final judgment; federal defendants will only now cease their defense of the Final Rule; and Movant States are prepared to litigate in each case challenging the Final Rule. This Court should allow them to intervene here and provide that defense.

## **BACKGROUND**[2]

Federal law requires that all those "engaged in the business" of selling firearms obtain a federal firearms license, and sets forth a number of basic safety measures all federal firearms licensees ("FFLs") must follow, including a requirement to engage in background checks via the National Instant Criminal Background Check System before transferring firearms. *See* 18 U.S.C. § 922(d); § 922(t); *Abramski v. United States*, 573 U.S. 169, 172–73, 181 (2014). Federal law also requires that federal licensees maintain records, and allows for the use of those records in a criminal investigation—including a gun trafficking investigation. *See* 18 U.S.C. § 923(g); *see also Abramski*, 573 U.S. at 173. But because loopholes allowed unlicensed dealers to bypass the Gun Control Act's requirements altogether,

---

[2] Considering this Court's prior order, ECF 17, describing the background and procedural history, Movant's incorporate that information and provide the following relevant to Movant's interests.

2

and sell firearms without running background checks or maintaining any federally-required records of these sales, Congress decided to expand the number of dealers who must become FFLs, and therefore be subject to these background-check and recordkeeping requirements, by broadening the GCA's definition of entities "engaged in the business" of dealing firearms. Bipartisan Safer Communities Act, Pub. L. 117-159, 136 Stat. 1313, 1324–25 (2022).

Considering that statutory change, the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") proposed updating its regulations to reflect the new definition. Twenty States—including Movant States—filed a comment letter supporting the proposed rule. Ex. 3 at 3 (Multistate Comment on Proposed Rule (Dec. 7, 2023)). On April 19, 2024, the ATF published the Final Rule, Definition of "Engaged in the Business" as a Dealer in Firearms, 89 Fed. Reg. 28,968 (Apr. 19, 2024) ("Final Rule"). ATF estimates that anywhere from 25,563 to 95,505 previously unlicensed individuals would now require federal licensees, and therefore would be subject to the various requirements applicable to FFLs. *See id.* at 29,071–73. Because that means 25,563 to 95,505 entities would now be subject to federal background check and recordkeeping requirements, the Final Rule will "help[] prevent firearms from being sold to felons or other prohibited persons," *id.* at 29,085, and "help Federal, State, local, and Tribal law enforcement solve crimes involving firearms through crime gun tracing," *id.* at 28,988.

Plaintiffs filed this action on May 1, 2024, ECF 1, and sought a preliminary injunction against the enforcement of the Final Rule, ECF 7. This Court denied Plaintiffs' motion, ECF 17. The Federal Government answered the complaint, ECF 19, and both parties filed motions for summary judgment, ECF 21; ECF 23. Briefing is underway on both motions, and this Court has not yet heard oral argument or issued a decision on summary judgment.

## ARGUMENT

## I.     MOVANT STATES ARE ENTITLED TO INTERVENE AS OF RIGHT.

Under Rule 24(a), a movant has the right to intervene where it "has an interest relating to . . . the subject of the action" and the outcome of the suit might "impair or impede [their] ability to protect that interest"; the existing parties cannot or will not adequately represent movant's interest; and the motion is timely. *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1362 (11th Cir. 2022). "Rule 24 is to be construed liberally," so courts resolve all doubts "in favor of the proposed intervenor." *Thomas v. Henderson*, 297 F. Supp. 2d 1311, 1326 (S.D. Ala. 2003). Each consideration compels granting Movant States a right to intervene: this suit threatens to impair Movant States' substantial pocketbook and quasi-sovereign interests; federal defendants no longer adequately represent those interests; and Movant States' motion is swift and timely.

4

### A.    Movant States Have Substantial Interests In The Final Rule.

The Eleventh Circuit has required an intervenor to have a "direct, substantial, legally protectable interest in the proceedings." *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 594 (11th Cir. 1991); *see also* Fed. R. Civ. P. 24(a)(2). The Eleventh Circuit has emphasized that it will assess the interest requirement with flexibility, evaluating "the particular facts and circumstances surrounding each [motion for intervention]." *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989). Movant States have a right to intervene here because the final relief the challengers seek would harm Movant States' interests in two ways: it would reduce the availability of records on which state and local law enforcement consistently rely to solve crimes, and it would increase prohibited persons' access to and use of guns in crime in Movant States.[3]

1. Because the invalidation of the Final Rule will make it more difficult for Movant States to solve gun crimes, thus imposing direct and substantial financial and quasi-sovereign burdens on Movant States, Movant States have a protectible interest in defending the Final Rule.

---

[3] Beyond establishing sufficient interests to justify their Rule 24(a) intervention, Movant States do not also need to independently establish their Article III standing. As the Supreme Court has held, there is no need to establish standing where Movant States ask only that this Court reject Plaintiffs' claims. *See Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019). That makes sense: only a party who invokes a court's jurisdiction has to prove standing, and a party does not affirmatively "invok[e] a court's jurisdiction" by defending a suit. *See id.* at 663.

Invalidation of the Final Rule will reduce the number of entities that maintain firearms transaction records by tens of thousands, making it harder for Movant States to solve crimes involving firearms. Whenever state or local law enforcement recovers a firearm that was used in a crime, that firearm can provide important evidence as to the identity of the perpetrator, or help to identify gun trafficking networks that got the gun to the criminal. *See* Ex. 1 at 3–8. Where law enforcement can identify the manufacturer and serial number of the firearm, they can submit that information to ATF so that ATF can identify at least some previous retailers and purchasers of the weapon. *Id.* at 3–4; Ex. 2 at 3; *see also* 89 Fed. Reg. at 28,988.

The ease with which ATF can track the crime gun to prior purchasers and identify persons who may be the perpetrator of the crime, or involved as a straw-purchaser or member of an illegal firearms trafficking network, depends on whether the retailers involved were licensed and subject to GCA recordkeeping requirements. As the Final Rule explains:

> When a firearm is recovered in a criminal investigation and submitted for tracing, ATF is often able to identify the last known purchaser through records maintained by the licensee, providing crucial leads in the underlying criminal investigation. When a firearm is transferred by an unlicensed person, however, such records rarely exist and, if such records do exist, they are not accessible to ATF through the tracing system.

89 Fed. Reg. at 29,083; *see also id.* at 28,988; Ex. 1 at 3–4; Ex. 2 at 2–4.

A court order invalidating the Final Rule, especially one with nationwide effect, would make it more difficult for ATF to provide helpful leads to state and local law enforcement that they could use in solving crime. ATF has confirmed that the Final Rule would "enhance the capacity of the Department to successfully complete crime-gun traces for law enforcement partners globally." 89 Fed. Reg. at 29,083; *see also id.* at 28,698, 28,988.

That the Final Rule results in greater evidentiary leads to state law enforcement confirms that Movant States have a direct and substantial interest in its defense. The States are important intended beneficiaries of the Final Rule and the GCA.[4] And that interest is substantial, too: asking ATF to trace a crime gun to generate leads, in order to identify suspects in a violent crime or to identify those serving as straw purchasers or firearms traffickers, is a routine part of state and local law enforcement investigations, and has repeatedly allowed law enforcement to solve crime—just as the GCA and Final Rule intend. *See* Ex. 1 at 3–4.

Movant States have other financial interests that will be impacted. *See Biden v. Nebraska*, 600 U.S. 477, 490 (2023) (emphasizing that a State's "financial harm"

---

[4] Congress found that its licensed dealer requirements—including its recordkeeping requirements—would aid state and local law enforcement in their fight against violent crime. S. Rep. No. 89-1866 at 19 (1966). The Final Rule repeatedly finds that the expansion of who must qualify as an FFL and the expansion of who must retain purchaser records serves state and local law enforcement by improving ATF's capacity to generate evidentiary leads. *See, e.g.*, 89 Fed. Reg. at 28,988; *see also id.* at 28,994; *id.* at 28,989; *id.* at 29,063; *id.* at 29,070; *id.* at 29,083–85.

is an Article III injury—a higher burden than the showing Movant States must make). Increasing the number of dealers that retain records allows ATF to provide evidentiary leads to state and local law enforcement who "can use this information to better target limited resources" to solve crime—including "to pursue illicit firearms traffickers." 89 Fed. Reg. at 28,989.[5]

Movant States also have related quasi-sovereign interests that support their defense of the Final Rule. *See*, *e.g.*, *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 603–4, 607 (1982) (finding States have quasi-sovereign interests in the health and safety of their residents, and the State can "represent and defend them").[6] Few interests matter more to States than protecting their residents from violence. *See, e.g.*, *Oklahoma v. Castro-Huerta,* 597 U.S. 629, 651 (2022). And when ATF is able to provide fewer evidentiary leads from a gun trace, it reduces the chance that state law enforcement can solve that crime—let alone find the gun traffickers or straw purchasers who facilitated the offense. *See* Ex. 1 at 4. If state law

---

[5] The experience of state law enforcement bears this out: where trace records do not reveal the firearm's most recent purchaser, state officers must take additional investigative steps to identify the current owner. *See* Ex. 1 at 6–8. Those investigative steps can be burdensome and demand significant monetary and personnel resources. *See* Ex. 1 at 1–6.

[6] Although Movant States acknowledge that "[a] State does not have standing as *parens patriae* to bring an action *against* the Federal Government" based upon these interests, *Haaland v. Brackeen*, 599 U.S. 255, 295 (2023) (emphasis added) (quoting *Snapp*, 458 U.S. at 610 n.16 (citing *Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923))), the so-called "*Mellon* bar" is no obstacle to a State's assertion of standing to *defend* federal action based on its quasi-sovereign interests in the health and well-being of its residents. *Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007).

enforcement cannot trace the criminal offender or straw purchaser because they evaded the GCA recordkeeping system by approaching an unlicensed dealer, that straw purchaser or criminal will likely remain on the street and able to recidivate. *See* Ex. 1 at 8–9; 89 Fed. Reg. at 29,083.

2. Movant States have a second protectable—and profound—interest in defending the Final Rule: elimination of the Final Rule will increase the tide of unlawful firearms within and into their borders, again imposing direct and substantial financial and quasi-sovereign harms.

Eliminating the Final Rule will increase the trafficking and use of unlawful firearms in Movant States by increasing the number of firearms sales that avoid background checks. Between 2017 and 2021, "the most frequent types of trafficking channels identified in ATF investigations were unlicensed firearm dealing"—at 40.7%.[7] Transactions in which the firearms purchaser does not undergo a background check tend to have a shorter time-to-crime, suggesting the firearms "were rapidly diverted from lawful firearms commerce into criminal hands."[8] *Id.* at 35; *see* 89 Fed. Reg. at 29,084.[9]

---

[7] DOJ, ATF, NATIONAL FIREARMS COMMERCE AND TRAFFICKING ASSESSMENT (NFCTA): CRIME GUNS – VOLUME III, pt. 3, at 1–4 (2023) (hereinafter "NFCTA VOL. III").

[8] DOJ, ATF, NATIONAL FIREARMS COMMERCE AND TRAFFICKING ASSESSMENT (NFCTA): CRIME GUNS – VOLUME II, pt. 3, at 35 (2023).

[9] Studies estimate extending licensure requirements to these dealers will decrease interstate trafficking of firearms into Movant States. *See* Brian Knight, *State Gun Policy & Cross-State*

9

Elimination of the Final Rule will increase prohibited persons' access to firearms even in the States that maintain more stringent licensing requirements, given the nature of illegal interstate firearms trafficking.[10] Crime guns are rarely purchased at a retail firearm dealer just prior to their use in crime. Instead, many people who are prohibited from possessing a firearm turn to purchasing firearms without a background check from unlicensed dealers. These guns acquired by unlicensed dealing are frequently used in crimes, including shooting incidents. NFCTA VOL. III pt. 4, at 5. While some states do strictly regulate the transfer of firearms under state law to require background checks, crime guns can still flow in from states that have little to no regulation of firearms transfers. *See* NFCTA VOL. III, pt. 3, at 1–4, *see* Ex. 1 at 6–10.[11]

Conversely, for Movant States with little to no regulation of firearms transfers other than compliance with federal law, the Final Rule will help reduce the intrastate

---

*Externalities: Evidence from Crime Gun Tracing*, 5 AM. ECON. J.: ECON. POL'Y 200, 224 (2013). Conversely, allowing traffickers to acquire firearms while avoiding background checks exposes Movant States to increased firearms trafficking. *See* Ex. 1 at 8.

[10] Movant States lack the power unilaterally to avoid these harms themselves. *See, e.g.*, Ellicott C. Matthay et al., *In-State and Interstate Associations Between Gun Shows and Firearm Deaths and Injuries*, 167 ANNALS INTERNAL MED. 837, 842 (2017); Erin G. Andrade et al., *Firearm Laws and Illegal Firearm Flow Between U.S. States*, 88 J. TRAUMA & ACUTE CARE SURG. 752, 758 (2020).

[11] This means that states like New Jersey which passed state laws that require every in-state transfer to go through a state licensed dealer are powerless to resolve this issue on their own. *See* N.J. Stat. Ann. § 2C:58-2, -3; *see also* Colo. Rev. Stat. Ann. §§ 18-12-112(2)(a), 18-12-501(1)(a), 24-33.5-424(3)(a); Conn. Gen. Stat. §§ 29-36*l*(f)(2); Del. Code Ann. tit. 11, § 1448A(a) (similar state laws). The nature of this problem demands a solution at the federal level.

transfer of firearms to criminals. For example, Arizona law does not require background checks, permits, or the registration of firearms sold in private sales. *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 44-7852, 13-3109(B), 13-3118. In other words, if a firearms sale in Arizona is not regulated by the GCA, it is not regulated at all. This makes it incredibly easy for criminals to purchase or obtain firearms from unlicensed dealers without documentation. According to ATF data, of the 39,771 crime guns recovered in Arizona between 2017 and 2021 and successfully traced to a known purchaser, the purchaser and the person who used the gun in a crime were the same individual in only 14% of cases.[12] Ex. 2 at 4. In Arizona in particular, the trafficking of firearms presents an immense public safety risk. Indeed, the ATF Phoenix field division generated the highest percentage of trafficking investigations involving unlicensed dealers (14.0% of 3,404 investigations) and involving straw purchasers (14.1% of 3,305 investigations). NFCTA Vol. III, pt. 3, at 4. The Final Rule makes it more difficult for criminals to access firearms in Arizona, furthering the State's interest in public safety.

Movant States thus have substantial financial and quasi-sovereign interests in defending a federal regulation that ensures more firearms transfers will involve

---

[12] Of the 39,771 crime guns recovered in Arizona and traced to a known purchaser, the vast majority of those guns (32,771) were purchased within Arizona. *See* Ex. 2 at 5. Meaning the majority of crime guns recovered in Arizona were purchased in the state and later transferred without documentation to someone else within the state.

background checks. State law enforcement expends significant resources on investigating and prosecuting prohibited persons in possession of firearms that originate out of state that were acquired without background checks. *See* Ex. 1 at 6–8. Although the Final Rule would not eliminate all unlicensed dealing, requiring tens of thousands of new licensees to conduct background checks lowers the costs that the Movant States directly sustain related to crimes committed by prohibited persons that would be rejected by a simple background check. *See* Ex. 1 at 8–10.

Given the "possibility" that Movant States' interests in the expansion of recordkeeping and background-checks enshrined in the Final Rule would be "practically impaired or impeded" by a court order in this case, *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 191, 199 (2022), Movant States maintain a right to intervene so the court may consider their "legally protectable interest in the litigation" before making potentially adverse decisions, *Chiles*, 856 F.2d at 1212.

### B.    Existing Parties Will No Longer Adequately Represent Movant States Interests, And Movant States Timely Intervened In Light Of That Change.

This Court should allow Movant States to intervene to defend their interests because there are no longer parties adequately defending them, and because Movant States timely filed as soon as that representation become inadequate. As to the representation of Movant States' interests, they bear only a "minimal" burden at this step—to show that the representation by existing parties "*may* be inadequate." *Id.* at

1214 (emphasis added). Although federal defendants were defending this Final Rule, and protecting Movant States' interests in it, that will change after the January 20, 2025 inauguration.[13] Because federal defendants will now likely seek elimination of this Final Rule, federal defendants can no longer adequately defend Movant States' interests in its survival.

Movant States' intervention is also timely—as they are filing promptly upon their interests no longer being adequately represented in this case. *See Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259–60 (11th Cir. 2002). Movant States are filing this motion as soon as it became necessary, and denial of their motion would leave their interests unrepresented given the incoming change in Administration. By contrast, granting the motion would prejudice no party, and instead ensure adversarial presentation.

Movant States have acted swiftly and diligently. *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279–80 (2022). When this litigation began, Movant States had no reason to intervene as their interest in defending the Final Rule

---

[13] The President-Elect has promised to quickly reverse the ATF rules adopted by the Biden Administration, even citing this Final Rule. *See, e.g.*, Gram Slattery, *Trump pledges to 'roll back' Biden gun rules, fire ATF chief at NRA rally*, REUTERS (May 20, 2024), https://tinyurl.com/5n8asdf8; NRA, *President Donald J. Trump Speaks at 2024 NRA Presidential Forum in Harrisburg, PA*, YOUTUBE (Feb. 10, 2024), https://www.youtube.com/watch?v=v_RBnl1vIjs; *A.T.F. Braces for a Likely Rollback of Its Gun-Control Efforts*, N.Y. TIMES (Dec. 14, 2024), https://tinyurl.com/j385b7dc.

was aligned with federal defendants' own. *See supra* at 12–13 (discussing adequacy). But since that will change after Inauguration on January 20, 2025, *see supra* at 13 n.13, Movant States have swiftly filed their papers, so that there will be a seamless transition from one government's defense of the Final Rule (federal defendants) to other governments with interests in it (Movant States).[14]

By contrast, granting Movant States' request to intervene would not prejudice the existing parties at all. By intervening, Movant States do "not seek to delay or reconsider phases of the litigation that ha[ve] already concluded." *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). Instead, Movant States seek to continue defending the Final Rule after the anticipated abandonment by Defendants, including at the summary-judgment stage. *See generally Kane Cnty. v. United States*, 928 F.3d 877 (10th Cir. 2019). It is appropriate here: there has been limited administrative discovery to date, and motion for summary judgment proceedings are ongoing, *see* ECF 18.[15]

---

[14] Just as Movant States have not brought this motion to intervene too late (for timeliness purposes), Movant States have also not filed too early (for adequacy purposes)—because they are not required to wait until the incoming Administration in fact terminates its defense of this Final Rule. *Cook Cnty. v. Texas*, 37 F.4th 1335, 1342 (7th Cir. 2022). Even though Movant States may be justified in waiting to ascertain what position federal defendants will take after the change in administration before intervening in other cases, federal defendants' forthcoming position in *this* case is clear. *See supra* at 13.

[15] Nor is the possibility that Movant States will oppose a potential settlement between Plaintiffs and federal defendants prejudicial. *Clark v. Putnam County*, 168 F.3d 458, 461-62 (11th Cir. 1999).

Finally, because Movant States satisfy the standard for mandatory intervention, this Court need not consider permissive intervention under Rule 24(b). But to the extent this Court reaches that issue, it should allow intervention under Rule 24(b). Such intervention is appropriate when the proposed intervenor can show: (1) the applicant "has a claim or defense that shares with the main action a common question of law or fact"; (2) the motion is timely; and (3) intervention will not delay or prejudice adjudication of the existing parties' rights. Fed. R. Civ. P. 24(b)(1)(B), (b)(3). For the reasons articulated *supra*, that standard is easily met here. Not only would Movant States be able to defend the Final Rule absent a federal defense, but they can provide briefing on the impact of any decision on other States, and they can brief the impact on this litigation of a future decision by the ATF to reverse course and decide to rescind this Final Rule. Because Movant States satisfy the standard for permissive intervention, and would provide useful briefing to the Court, this Court should exercise its discretion to grant the motion to intervene.

## **CONCLUSION**

This Court should grant Movant States' motion to intervene as defendants.

Dated: January 16, 2025

Respectfully submitted,

**JON C. GOLDFARB**
*Specially Designated Local Counsel*

By: */s/ Jon C. Goldfarb*

Jon C. Goldfarb (asb-5401-f58)
Wiggins Childs Pantazis Fisher Goldfarb
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0548
jcg@wigginschilds.com

**MATTHEW J. PLATKIN**
*Attorney General, State of New Jersey*
JEREMY M. FEIGENBAUM*
*Solicitor General, State of New Jersey*

By: /s/ *Monica E. Finke*

Monica E. Finke*
Deputy Attorney General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, New Jersey 07101
(609) 696-5363
Monica.Finke@law.njoag.gov

*Attorneys for State of New Jersey*

**KRISTIN K. MAYES**
Attorney General of Arizona

By: /s/ *Emma H. Mark*

Hayleigh S. Crawford*
Deputy Solicitor General
Emma H. Mark*
Assistant Attorney General
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, Arizona 85004
(602) 542-3333
Hayleigh.Crawford@azag.gov
Emma.Mark@azag.gov
ACL@azag.gov

*Attorneys for State of Arizona*

**PHILIP J. WEISER**
Attorney General of Colorado

By: */s/ Shannon Stevenson*

Shannon Stevenson*
Solicitor General
Office of the Colorado State Attorney
General
1300 Broadway, Denver, CO 80203
(720) 508-6000
Shannon.Stevenson@coag.gov

*Attorneys for State of Colorado*

16

**WILLIAM TONG**
Attorney General of Connecticut

By: */s/ James M. Belforti*

James M. Belforti*
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06105
(860) 808-5450
james.belforti@ct.gov

*Attorneys for State of Connecticut*


**KATHLEEN JENNINGS**
Attorney General of Delaware

By: /s/ *Vanessa L. Kassab*

Ian R. Liston*
Director of Impact Litigation
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Attorneys for State of Delaware*


**ANNE E. LOPEZ**
Attorney General of Hawai'i

By: */s/ Thomas J. Hughes*

Thomas J. Hughes*
Deputy Solicitor General
Department of the Attorney General, State of Hawai'i
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
Thomas.J.Hughes@hawaii.gov

*Attorneys for State of Hawai'i*


**ANTHONY G. BROWN**
Attorney General of Maryland

By: */s/ Jessica M. Finberg*

Jessica M. Finberg*
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6921
jfinberg@oag.state.md.us

*Attorneys for State of Maryland*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Adam R. de Bear*

Adam R. de Bear*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 335-7573
debeara@michigan.gov

*Attorneys for Attorney General Dana Nessel on behalf of the People of Michigan*

**KEITH ELLISON**
Attorney General of Minnesota

By: */s/ Liz Kramer*

Liz Kramer*
Solicitor General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1010
liz.kramer@ag.state.mn.us

*Attorneys for State of Minnesota*

**AARON D. FORD**
Attorney General of Nevada

By: */s/ Heidi Parry Stern*

Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Attorneys for State of Nevada*

**JEFF JACKSON**
Attorney General of North Carolina

By: */s/ Daniel P. Mosteller*

Daniel P. Mosteller*
Associate Deputy Attorney General
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
dmosteller@ncdoj.gov

*Attorneys for State of North Carolina*

**DAN A. RAYFIELD**
Attorney General of Oregon

By: */s/ Brian Simmonds Marshall*

Brian Simmonds Marshall*
Oregon Bar No. #196129
Senior Assistant Attorney General
Trial Attorney
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Brian.S.Marshall@doj.oregon.gov

*Attorneys for State of Oregon*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ Sarah W. Rice*

Sarah W. Rice*
Deputy Chief, Civil Division
Office of the Rhode Island Attorney
General
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 x2054
srice@riag.ri.gov

*Attorneys for State of Rhode Island*

**CHARITY R. CLARK**
Attorney General of Vermont

By:  */s/ Jonathan T. Rose*

Jonathan T. Rose*
Solicitor General
Rosemary M. Kennedy*
Assistant Attorney General
109 State Street
Montpelier, VT 06509
(802) 828-3171
jonathan.rose@vermont.gov
rosemary.kennedy@vermont.gov

*Attorneys for State of Vermont*

*Pro Hac Vice* Motions Forthcoming

**NICHOLAS W. BROWN**
Attorney General of Washington

By: */s/ William McGinty*

William McGinty*
Assistant Attorney General
Washington State Office of the
Attorney General
P.O. Box 4011
Olympia, WA 98504-0111
(360) 709-6027
William.McGinty@atg.wa.gov

*Attorneys for State of Washington*

19