# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| DON BUTLER, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> PAMELA BONDI, in her official capacity as Attorney General of the United States, *et al.*, <br><br> *Defendants*. | Case No. 1:24-cv-00975-CLM |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.      Plaintiffs Lack Standing ................................................................................ 2

          A.      The Individual Plaintiffs Lack Standing ............................................. 2

          B.      The NRA Lacks Associational Standing ............................................ 6

          C.      Plaintiffs Cannot Challenge Provisions
               of the Rule That Do Not Harm Them.................................................. 6

II.     The Merits .................................................................................................... 8

CONCLUSION ......................................................................................................10

## INTRODUCTION

The Court should grant Defendants' Motion for Summary Judgment. The Court need not and should not reach the merits because Plaintiffs lack standing. The individual Plaintiffs lack standing because, as Defendants have explained and reiterate here, their intended conduct as set forth in their declarations does not violate the Rule at issue in this case.[1] In addition, the individual Plaintiffs do not face a credible threat that the Rule will be enforced against them. Indeed, recent developments since Defendants filed their opening motion further underscore the absence of any threatened enforcement of the Rule. The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Department of Justice ("DOJ") recently announced a comprehensive review of the Rule. While that review plays out, Defendants moved to stay a separate lawsuit challenging the Rule filed by the State of Alabama and others, and in exchange for Alabama's consent, pledged not to enforce the Rule in Alabama for the duration of that stay. This commitment fully protects the individual Plaintiffs from enforcement of the Rule. The Court should accordingly conclude that Plaintiffs lack standing. Should the Court reach the merits, given the ongoing review of the Rule by DOJ and ATF, aspects of the government's motion may no longer align with the government's position. The

---

[1] Final Rule, Definition of "Engaged in the Business" as a Dealer in Firearms, 89 Fed. Reg. 28,968 (Apr. 19, 2024) ("Rule").

1

government nevertheless believes it should prevail on the merits for the reasons discussed below.

## ARGUMENT

### I.    Plaintiffs Lack Standing

### A.    The Individual Plaintiffs Lack Standing

The individual Plaintiffs Butler and Glidewell do not dispute that Defendants have not enforced the Rule against them.  Their claim to standing thus depends on the applicable "*pre-enforcement* review precedents."  Pls.' Closing Br. 3, ECF No. 31 (emphasis added).  Those precedents require Butler and Glidewell to establish that they intend "to engage in a course of conduct" that is "arguably . . . proscribed" by the Rule, and that there "exist[s] a credible threat of prosecution."  *Dream Defs.' v. Gov. of State of Florida*, 57 F.4th 879, 887 (11th Cir. 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).  Plaintiffs fail both of these steps.

*First*, as Defendants have explained, the intended conduct the individual Plaintiffs set forth in their declarations does not amount to the proscribed conduct of "devot[ing] time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms," 27 C.F.R. § 478.13(a), without a license.  *See* Defs.' Opening Br. 21-29, ECF No. 24.  Moreover, as this Court explained in denying Plaintiffs'

preliminary injunction motion, "'some day' intentions" to buy, sell, and trade firearms "fail[] to establish an injury in fact" under case law such as *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992), and *Paxton v. Dettelbach*, 105 F.4th 708 (5th Cir. 2024). Order, ECF No. 17. Plaintiffs attempted to remedy this deficiency by submitting new declarations, but each Plaintiff expressed only a concrete intention to sell a single firearm, *see* Butler Decl. ¶¶ 14-15, ECF No. 22-1; Glidewell Decl. ¶¶ 11-12, ECF No. 22-2, which falls far short of engaging in the business of dealing in firearms. The declarations expressed other potential conduct in vague or uncertain terms — in other words, some day intentions. *See* Butler Decl. ¶¶ 16-17 (stating that Butler has unspecified firearms for which it "would take . . . a couple weeks to find someone" willing to acquire them); Glidewell Decl. ¶ 13 (stating that Glidewell may sell another firearm "under the right circumstances").

Plaintiffs' contrary arguments mostly rehash the arguments in their opening brief, to which Defendants have already responded. Nonetheless, it is worth underscoring that Defendants have taken the position in litigation that the individual Plaintiffs' intended conduct is not subject to the Rule. And Defendants are asking the Court to issue a judicial ruling holding that it lacks subject-matter jurisdiction because the individual Plaintiffs' intended conduct is not subject to the Rule. Such a ruling would grant the individual Plaintiffs significant protection against whatever speculative concern they have of future enforcement. Plaintiffs should take the win.

3

*Second*, the individual Plaintiffs do not face "a credible threat of prosecution." *Dream Defs.*, 57 F.4th at 887 (quoting *Susan B. Anthony List*, 573 U.S. at 159). Because Plaintiffs' intended conduct does not violate the Rule, their mere subjective fear of enforcement is insufficient. Defs.' Opening Br. 27. Several recent developments since Defendants filed their last brief underscore that Plaintiffs lack a credible threat of enforcement.

It has now been nearly a year since the Rule went into effect, and Plaintiffs have not pointed to a single example of Defendants enforcing the Rule in circumstances remotely resembling the individual Plaintiffs' intended conduct. Additionally, President Trump issued an Executive Order titled *Protecting Second Amendment Rights*. Exec. Order No. 14206, 90 Fed. Reg. 9,503 (Feb. 12, 2025). The Order directed the Attorney General to review all DOJ and ATF regulations from the previous administration "pertaining to firearms and/or Federal firearms licensees," *id.* § 2(b)(ii), which includes the Rule, in order to "assess any ongoing infringements of the Second Amendment rights of our citizens," *id.* § 2(a). Although that overarching review is ongoing, on April 7, 2025, DOJ and ATF issued a press release announcing that DOJ and ATF will conduct a "comprehensive" and "in-depth review over the coming months" of the Rule under review in this case to "revis[e] the guidelines for determining who is considered 'engaged in the business' of selling firearms." *See* ATF Press Release, *DOJ, ATF Repeal FFL Inspection*

4

*Policy and Begin Review of Two Final Rules*, https://www.atf.gov/news/press-releases/doj-atf-repeal-ffl-inspection-policy-and-begin-review-two-final-rules (Apr. 7, 2025).

Furthermore, in another case challenging the Rule, Defendants have specifically pledged not to enforce the Rule in the individual Plaintiffs' home state of Alabama during the pendency of a stay in that case. That case was filed by a group of states, including Alabama, in addition to an organization and several individuals. *See Kansas v. Bondi*, 6:24-cv-1086 (D. Kan.). After the President issued the Executive Order, Defendants moved to stay that case. *See* Defs.' Opposed Mot. to Stay, *Kansas*, ECF No. 218 (Feb. 20, 2025). Defendants then "agreed with Plaintiffs that if the [stay] Motion is granted, the federal government will not enforce the Rule as to the Plaintiffs while the case is stayed," and the *Kansas* plaintiffs accordingly agreed not to oppose the stay motion. Notice Regarding Defs.' Mot. to Stay, *Kansas*, ECF No. 225 (Feb. 27, 2025). The court then granted the motion and stayed the case through June 2, 2025, inviting Defendants to move to extend the stay if they wished. Order, *Kansas*, ECF No. 226 (Feb. 28, 2025). Accordingly, Butler, Glidewell, and every other Alabama resident are protected by the *Kansas* agreement from enforcement of the Rule. Given these developments, it is exceedingly unlikely that the Rule will be enforced against the individual Plaintiffs. Rather, this is a situation where the Rule "has not yet been applied and may never be applied" to the

5

kind of occasional firearms sales or trading in which the individual Plaintiffs wish to engage. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979).

## B. The NRA Lacks Associational Standing

The parties are on common ground that the NRA's claim to associational standing is dependent on, and rises and falls with, the individual Plaintiffs' claimed standing. *See* Defs.' Opening Br. 29; Pls.' Closing Br. 12. If the Court accepts Defendants' argument that the individual Plaintiffs lack standing, then the NRA likewise lacks standing.

## C. Plaintiffs Cannot Challenge Provisions of the Rule That Do Not Harm Them

Although Defendants maintain that Plaintiffs lack standing to challenge any aspects of the Rule, Defendants pointed out in their opening brief that Plaintiffs purport to challenge several provisions of the Rule that Plaintiffs make no colorable argument cause them any harm. Defs.' Opening Br. 30. In response, Plaintiffs do not meaningfully contest that they challenge some provisions that do not harm them. Instead, they argue for "standing through inseverability." Pls.' Closing Br. 12-13. That is, Plaintiffs argue that they can challenge every provision of the Rule, because the Rule is inseverable, and if they succeed in convincing the Court that even a single provision of the Rule is unlawful, that will result in vacatur of the entire Rule. Plaintiffs concede that they base their argument on a dissenting opinion joined by

just two Justices. *See id.* at 13 (citing *California v. Texas*, 593 U.S. 659, 698-703 (2021) (Alito, J., dissenting)).

Apart from any flaws in Plaintiffs' severability analysis, *see* Defs.' Opening Br. 70, Plaintiffs' argument contravenes standing precedents. "[S]tanding is not dispensed in gross," *Murthy v. Missouri*, 603 U.S. 43, 44 (2024) (citation omitted), and a plaintiff "may challenge only" those provisions of a law "that affect it[]." *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006); *see also Davis v. FEC*, 554 U.S. 724, 733-34 (2008); *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1253 (11th Cir. 2010). Plaintiffs have no response to these binding precedents. In addition, Plaintiffs fail to grapple with the fact that standing requires the satisfaction of three elements: injury-in-fact, causation, and redressability. *See Lujan*, 504 U.S. at 561-62. Plaintiffs' "standing through inseverability" addresses only the redressability element. That is, if one unlawful provision of an enactment causes a plaintiff no harm, but another provision of the enactment harms the plaintiff, then invalidating the unlawful provision and vacating the entire enactment on the basis of inseverability would redress the plaintiff's injury. But it would not change the fact that the unlawful provision did not cause the plaintiff any injury. Therefore, a plaintiff's "injury under one provision" of an enactment is not "sufficient to confer standing . . . to challenge all provisions" of the enactment. *CAMP Legal Def. Fund*, 451 F.3d at 1273.

7

## II.  The Merits

**1.** The Court should reject Plaintiffs' argument that a firearms business does not need to become licensed if it does not earn "actual profit." Pls.' Closing Br. 21. This argument runs contrary to statutory text, which defines "to predominantly earn a profit" to "mean[] that *the intent underlying* the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection." 18 U.S.C. § 921(a)(22) (emphasis added). Plaintiffs attempt to infer an actual profit requirement via negative implication from the definition's proviso, which clarifies that "proof of profit shall not be required" for those who deal in firearms "for criminal purposes or terrorism." *Id.* But the negative implication canon cannot bear that weight because Plaintiffs' interpretation would cause the proviso to conflict with the main definition's clear statement that it refers to intent to profit. Plaintiffs' construction would therefore violate the "Harmonious-Reading Canon," that "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 180 (1st ed. 2011) (stating that this canon "is more categorical than most other canons of construction because it is invariably true that intelligent drafters do not contradict themselves (in the absence of duress)").

8

Plaintiffs also do not dispute that their reading of the statute would be difficult to administer given that, in their view, Congress "impose[d] an actual-profit requirement" but did not "articulat[e] the exact manner of calculating profit." Pls.' Closing Br. 23-24. Thus, if actual profit were required, a firearms store that does substantial business could argue that it does not need to become licensed because it is unprofitable under some plausible accounting measure. The Court should reject this view, which would allow felons, domestic abusers, and other dangerous individuals to purchase firearms at unprofitable firearms stores without background checks.

    **2.** The Court should also reject Plaintiffs' argument that ATF has no authority to define any statutory terms other than "curios or relics." Pls.' Closing Br. 29-30. If accepted, this argument would call into question not just the Rule's definition of "engaged in the business of dealing in firearms," but also many regulatory definitions that ATF has promulgated over the past several decades. *See generally* 27 C.F.R. § 478.11 (regulatory section collecting definitions). Plaintiffs argue that because Congress provided that "the Attorney General shall by regulation define" the term "curios or relics," 18 U.S.C. § 921(a)(13), ATF lacks authority to define any other terms. Pls.' Closing Br. 30. That is incorrect. The most natural reading of that provision is that it specifically *requires* a regulatory definition of curios or relics, not that it *precludes* all other definitions. Of course, a regulation

9

must be consistent with the Gun Control Act and cannot impose duties backed by criminal law that go beyond what the statute requires. Yet ATF nonetheless has the authority to issue regulatory definitions that clarify terms in the GCA, *see* 18 U.S.C. § 926, so long as they are consistent with the statute.

3. Plaintiffs' facial vagueness argument rests on a misunderstanding of the governing standard. Plaintiffs argue that the Rule is facially vague because some aspects of it are complex, even though Plaintiffs do not dispute that the Rule clearly regulates some conduct. Pls.' Closing Br. 33. But the Eleventh Circuit recently explained that "'[f]or a facial' void-for-vagueness challenge to succeed, 'the challenger must establish that no set of circumstances exists under which the Act would be valid.' We have explained that '[f]acial vagueness occurs when a statute is utterly devoid of a standard of conduct so that it simply has no core and cannot be validly applied to any conduct.'" *SisterSong Women of Color Reproductive Justice Collective v. Gov. of Ga.*, 40 F.4th 1320, 1327 (11th Cir. 2022) (quoting *Indigo Room v. City of Fort Myers*, 710 F.3d 1294, 1302 (11th Cir. 2013)). This Court should not adopt a facial vagueness analysis that erodes the high bar for such challenges set by the Eleventh Circuit.

## CONCLUSION

For the reasons set forth above, the Court should grant Defendants' Motion for Summary Judgment.

Dated: May 16, 2025                    Respectfully submitted,

                                       YAAKOV M. ROTH
                                       Acting Assistant Attorney General
                                       Civil Division

                                       ANDREW I. WARDEN
                                       Assistant Director
                                       Federal Programs Branch

                                       */s/ Zachary W. Sherwood*
                                       ZACHARY W. SHERWOOD
                                       (Indiana Bar No. 37147-49)
                                       JEREMY S.B. NEWMAN
                                       KERI L. BERMAN
                                       Trial Attorneys
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street NW
                                       Washington, DC 20005
                                       zachary.w.sherwood@usdoj.gov
                                       (202) 616-8467

                                       *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

On May 16, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Alabama, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Zachary W. Sherwood*
Zachary W. Sherwood
Trial Attorney
U.S. Department of Justice