UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **DON BUTLER, et al.,**<br>     Plaintiffs,<br><br>**v.**<br><br>**PAMELA BONDI,** *in her official capacity as Attorney General of the United States*, **et al.,**<br>     Defendants. | **Case No. 1:24-cv-975-CLM** |

## ORDER

Plaintiffs Don Butler, David Glidewell, and the National Rifle Association of America ("NRA") challenge ATF regulations promulgated during the Biden administration. Concerned that the Trump administration will no longer defend these regulations in court, the States of New Jersey, Colorado, Hawaii, Michigan, Minnesota, North Carolina, Nevada, Rhode Island, Arizona, Vermont, Washington, Connecticut, Oregon, Delaware, and Maryland move to intervene (doc. 26). For the reasons stated within, the court **DENIES** the States' motion (doc. 26).

## BACKGROUND

It is unlawful for anyone "except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms." 18 U.S.C. § 922(a)(1)(A). On April 19, 2024, ATF, at the direction of President Biden, issued a Final Rule to "clarif[y] what it means for a person to be 'engaged in the business' of dealing in firearms." 89 Fed. Reg. 28968. Three months later, Butler, Glidewell, and the NRA sued the Biden administration, asserting that the Final Rule exceeded ATF's statutory authority, was arbitrary and capricious, and violated several provisions of the U.S. Constitution. Plaintiffs also moved for preliminary injunctive relief. (*See* Doc. 7).

On November 4, 2024, the court denied Plaintiffs' motion for preliminary injunction, finding that Plaintiffs' declarations failed to establish that they had standing to challenge the Final Rule. (Doc. 17). The court also determined that Plaintiffs' irreparable harm argument was undermined by how quickly the court could resolve this case by setting an expedited briefing schedule. (*Id.*, pp. 37–38). On November 5, 2024, Donald Trump was elected the 47th President of the United States.

Plaintiffs did not appeal the court's denial of their motion for preliminary injunction. Instead, Plaintiffs moved for summary judgment on the administrative record on December 6, 2024. (Docs. 21 & 22). On January 3, 2025, Defendants responded and cross-moved for summary judgment. (Docs. 23 & 24). On January 16, 2025, the day before Plaintiffs' opposition and reply brief was due, the States moved to intervene. (Docs. 26 & 27).

According to the States, intervention was necessary because President Trump would likely seek elimination of the Final Rule after his inauguration on January 20, 2025, and the States have an interest in the Final Rule remaining in effect. (Doc. 27, pp. 13–14). To support this argument, the States pointed to statements President Trump made to the NRA during a May 2024 campaign rally in which he said that if he was elected "we will roll back every Biden attack on the Second Amendment." They also pointed to a December 14, 2024, New York Times article that reported that ATF anticipated President Trump would roll back the Biden administration's gun control efforts.

On February 7, 2025, President Trump issued an executive order that directed the Attorney General to examine ATF rules promulgated during the Biden administration "to assess any ongoing infringements of the Second Amendment" and to submit "a proposed plan of action to the President." 90 Fed. Reg. 9503. On April 7, 2025, the Department of Justice and ATF issued a press release that said they were "revisit[ing]" and "comprehensively review[ing]" the "engaged in the business" Final Rule. *See* https://www.atf.gov/news/press-releases/doj-atf-repeal-ffl-inspection-policy-and-begin-review-two-final-rules (last visited September 22, 2025). That review is ongoing. And Defendants have been unable to tell the court when review of the Final Rule will be completed or what the result of this review will be. Thus, to date, the Final Rule remains in full force.

**DISCUSSION**

Under Federal Rule of Civil Procedure 24, there are two types of intervention. Rule 24(a) requires the court to allow someone to intervene as a party if he satisfies the test for intervention of right. *See* Fed. R. Civ. P. 24(a). Rule 24(b) gives the court discretion to allow others to intervene as long as they have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The States assert that the court should let them intervene under either standard.

**I.  Intervention of Right (Rule 24(a)(2))**

The States argue that Rule 24(a)(2) gives them the right to intervene as parties to defend the Final Rule. Rule 24(a)(2) says:

> On timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Thus, to establish that they are entitled to intervention of right, the States must satisfy four elements: "(1) that the intervention application is timely; (2) that an interest exists relating to the property or transaction which is the subject of the action; (3) that disposition of the action, as a practical matter, may impede or impair the ability to protect that interest; and (4) the existing parties to the lawsuit inadequately represent the interests." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993). As explained below, the States' motion falls to meet the first, second, and fourth element.

**A.  Untimeliness of motion**

Before addressing the other elements, the court must consider the timeliness of the States' motion to intervene. *See NAACP v. New York*, 413 U.S. 345, 365 (1973). In evaluating timeliness, the court considers four factors:

- The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene;

- The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;

- The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied; and

- The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017). Each factor weighs against the States' motion.

1. *Length of time*: First, the States should have known that President Trump had been elected the 47th President by November 6 and that then-candidate Trump had made campaign statements criticizing several Biden administration firearms regulations months earlier. They also should have known that this court had entered an expedited summary judgment briefing schedule to resolve this case as quickly as possible. But the States didn't move to intervene until January 16, which was near the end of the summary judgment briefing schedule.

The States say that they moved to intervene as soon as possible because the federal government adequately protected their interests until President Trump's inauguration on January 20, 2025. The court disagrees. For starters, the States didn't wait until January 20 to move to intervene. Instead, they asked to intervene four days earlier, on January 16. So the States don't seem to have believed that they were required to wait until noon on January 20 to file their motion. Nor have the States shown any other impediment to filing their motion sooner.

4

Plus, if the States had made their intent to intervene known sooner, the parties and the court would have known of their intent to intervene during summary judgment briefing. But by waiting until January 16 to move for intervention, the States made it virtually certain that summary judgment briefing would be complete by the time the court ruled on their motion. Thus, the court finds that under the circumstances of this case, it was unreasonable for the States to wait until January 16, 2025, to seek to intervene.

2. *Prejudice to parties*: Granting the States' late-filed motion would also prejudice the parties. When the court denied Plaintiffs' motion for preliminary injunction, the court promised the parties that it would "work expeditiously to resolve the case soon after the parties' cross-motions for summary judgment have been fully briefed." (Doc. 17, p. 38). Likely relying on the court's promise, Plaintiffs did not appeal the court's denial of their motion. And allowing intervention would delay this court's goal of resolving this case quickly. For example, the States have suggested that they would like to participate in summary judgment briefing by noting that if permitted to intervene they would "defend the Final Rule in any supplemental briefing, oral argument, potential settlement, or appeal." (Doc. 84, p. 7). And at this stage, allowing 15 new parties to intervene would only complicate and prolong this case. So the prejudice to the existing parties factor weighs against intervention. *See Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991) ("Certainly the adjudication of the rights of the original parties would be unduly delayed here because the lawsuit was filed in June 1989 and is already pending on a motion for summary judgment.").

3. *Prejudice to the States*: Plus, denying the States' motion will not prejudice the States. As explained below, the States do not have a legally protectable interest in this action. Even if they did, their interest has been adequately represented by the federal government. And at this point, it is speculative to say that the States need to intervene to be able to effectuate an appeal should Plaintiffs prevail and Defendants decide not to appeal.

4. *Unusual circumstances*: Finally, this case presents unusual circumstances that support finding that the States' motion to intervene is untimely. As discussed, the court committed to expeditiously resolving this case to ensure that Plaintiffs wouldn't suffer irreparable harm. And allowing intervention would cause a delay that "would upend the Court's stated intent and Plaintiffs' reliance on it." (Doc. 80, p. 11).

—

In sum, all four of the timeliness factors weigh against the States. So the court will deny the States' motion for intervention as of right.

### B. No interest related to this action

Even if the States' motion were timely, they haven't shown that they have "an interest relating to the property or transaction that is the subject of [this] action." *See* Fed. R. Civ. P. 24(a)(2). "[A] party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24 as long as there exists a justiciable case or controversy between the parties already in the lawsuit." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). But the States still must show that they have "a direct, substantial, *legally protectable* interest in the proceedings." *See Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1509 (11th Cir. 1988). And the claimed interest cannot be "purely economic," a mere "generalized grievance," or "speculative." *See Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 292 (11th Cir. 2020).

The States allege two kinds of interest. First, they assert that they have financial and quasi-sovereign interests at stake because enjoining the Final Rule "would make it more difficult for ATF to provide helpful leads to state and local law enforcement that they could use in solving crimes." (Doc. 27, p. 12). Second, the States argue that they also have financial and quasi-sovereign interests in preventing the trafficking and use of unlawful firearms within their borders. (*See id.*, p. 14).

That invalidation of the Final Rule *may* make it tougher to trace guns and thus increase the costs of solving crimes doesn't give the States a legally protectable interest in this action. Nor do the States have a legally protectable interest in lowering costs related to crimes committed by those prohibited from possessing firearms. Again, a proposed intervenor's claimed interest cannot be "purely economic." *See Burke*, 833 F. App'x at 292. And while "federal policies will inevitably have an economic impact on local governments[,] . . . more than an incidental economic impact" is required "to establish a cognizable injury." *El Paso Cty. v. Trump*, 982 F.3d 332, 340 (5th Cir. 2020). Thus, the mere potential for increased law enforcement costs doesn't give the States a right to intervene.

The States' claim that elimination of the Final Rule will increase law enforcement costs is also speculative. The States have presented no evidence that in the months since the Final Rule's enactment their law enforcement costs related to tracing firearms and investigating illegal possession of firearms have decreased. The States instead ask the court to infer that the Final Rule has decreased costs because it has increased the number of federal firearms licensees required to keep records and conduct background checks. The States also point out that one justification ATF gave for the Final Rule was that it would enhance public safety by allowing more gun crimes to be traced. But the States have not shown that enforcement of the Final Rule has resulted in any identifiable cost reductions at any specific place or time. Nor would the States likely be able to trace any identifiable cost reductions to the Final Rule. Instead, law enforcement costs of investigating gun crimes inherently rely on the conduct of third parties—*i.e.*, those who have committed gun-related offenses. Thus, the court finds that the States' claim that the Final Rule will decrease law enforcement costs is speculative.

The court also rejects the States' argument that they have a quasi-sovereign interest in enforcement of the Final Rule because they have an interest in public safety and protecting their citizens from violence. To assert a valid quasi-sovereign interest, a state must show that an action "implicate[s] the State's *own* interests in addition to and apart from the interests of particular private parties." *Paxton v. Dettelbach*, 105 F.4th 708, 715 (5th Cir. 2024) (quotations omitted). And the States' asserted quasi-sovereign interest is derivative of their citizens' personal interest in being free from gun violence.

7

Plus, like the States' asserted financial interest, their alleged quasi-sovereign interest is speculative. Again, the States have provided no data to back up their claim that the Final Rule has reduced gun violence or the number of prohibited persons possessing firearms. And whether the States' citizens are subjected to gun violence depends on third parties not before the court—those who commit gun-related offenses. Thus, this asserted interest is both speculative and non-cognizable.

In short, an intervenor must have "a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). And the States have failed to show that they have any legally, protectable interest that would be impeded if the court denied their motion to intervene.

### C.    Adequacy of representation

Finally, even if the States do have some legally protected interest in the Final Rule, their interest has been adequately protected by Defendants. Absent collusion, an interest adverse to the intervenor, or the failure to fulfill its duty as a representative, the court "presume[s] that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." *Fed. Sav. & Loan*, 983 F.2d at 215.

Like the States, Defendants have asked this court to reject Plaintiffs' claims and dismiss this case. And the States concede that Defendants protect their interests as long as they are "defending this Final Rule." (Doc. 28, p. 18). Defendants have done just that. Under the Biden administration, Defendants filed a 70-page brief in support of their cross motion for summary judgment that comprehensively explained why Defendants were asking the court to reject Plaintiffs' claims. (Doc. 24). The Trump administration then filed a reply brief that defended the Final Rule on both jurisdictional and merits grounds. (Doc. 78). True, the reply brief stated that "aspects of the government's [original] motion may no longer align with the government's position." (*Id.*, p. 3). But Defendants did not abandon any argument that they made in their opening brief. And Defendants stated that "[t]he government nevertheless believes it should prevail on the merits." (*Id.*, pp. 3–4).

The Final Rule also remains in effect. And while the federal government is conducting a comprehensive review of the Final Rule, the court has no way of knowing what the result of that review will be. Nor is it apparent that any changes in ATF's regulations will be to those aspects of the Final Rule that Plaintiffs challenge here. And courts "require putative intervenors to produce something more than speculation as to the purported inadequacy of representation." *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 475 (1st Cir. 2015) (quotations omitted).

The court rejects the States' argument that Defendants do not represent their interests because they didn't brief certain issues in their summary judgment reply brief and will possibly not appeal an adverse judgment if the court rules in Plaintiffs' favor. A party preserves an argument by raising it in the party's initial brief. *See United States v. Britt*, 437 F.3d 1103, 1104 (11th Cir. 2006). So Defendants didn't forfeit the arguments they made in their initial brief by failing to reiterate some of these arguments in their reply brief. Instead, those arguments remain before the court and adequately represent the States' interest in defending the Final Rule. Plus, it is speculative to say Defendants wouldn't appeal any adverse ruling when Defendants have continued to urge the court to grant them summary judgment on Plaintiffs' claims.

In sum, Defendants and the States are pursuing "the same ultimate objective"—dismissal of Plaintiffs' claims. *See Fed. Sav. & Loan*, 983 F.2d at 215. And there is no evidence of collusion, adverse interests, or nonfeasance on the part of Defendants. Thus, Defendants adequately represent any interest the States have in this action. *See id.*

—

Because the States' motion to intervene is untimely, the States have no legally protectable interest in this action, and any interest that the States could have is adequately represented by Defendants, the court will deny the States' motion for intervention of right.

## II.   Permissive Intervention (Rule 24(b)(1))

The States alternatively ask the court to grant them permissive intervention under Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention requires "a two-stage process. First, the district court must decide whether the applicant's claim or defense and the main action have a question of law or fact in common. If this threshold requirement is met, then the district court must exercise its discretion in deciding whether intervention should be allowed." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977) (internal quotations and citations omitted). And "[w]hether leave to intervene is sought under section (a) or (b) of Rule 24, the application must be timely." *Id.* at 263.

As explained, the States' motion to intervene wasn't timely. And the court agrees with Plaintiffs that the States' participation in this lawsuit would be duplicative of Defendants. The court also agrees with Defendants that allowing the States to intervene would create federalism concerns. As Defendants note, "[i]n an APA case challenging the legality of a federal agency rule, the federal government should control the course of litigation and any future appeals, not state governments." (Doc. 81, p. 10). And the benefits of the States' participation in this case are far outweighed by the complications and delays that their participation would likely create. The court thus finds that allowing the States to permissively intervene isn't warranted.

## CONCLUSION

For these reasons, the court **DENIES** the States' motion to intervene (doc. 26). The court **DIRECTS** the Clerk of Court to **TERMINATE** the States of New Jersey, Colorado, Hawaii, Michigan, Minnesota, North Carolina, Nevada, Rhode Island, Arizona, Vermont, Washington, Connecticut, Oregon, Delaware, and Maryland as parties to this action.

**Done** and **Ordered** on September 22, 2025.

_/s/ Corey L. Maze_
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE